IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **SUZANNE GREENE,** | : |
| **Plaintiff,** | : |
| vs. | : JURY TRIAL DEMANDED |
| **TYLER TECHNOLOGIES, INC.,** | : |
| **Defendant.** | : |

**COMPLAINT**

## Introduction

1.

In this FLSA overtime action, Plaintiff Suzanne Greene ("Greene") alleges that she was misclassified as exempt from the FLSA's maximum hour provisions by her former employer, Defendant Tyler Technologies, Inc. ("Tyler Technologies") and as a result was not paid the legally required overtime premium in workweeks in which she worked more than 40 hours.

**Jurisdiction and Venue**

2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, 29 U.S.C. § 216(b) and 28 U. S.C. § 1331, because this case arises under the FLSA, a federal statute.

3.

Venue properly lies in the Northern District of Georgia pursuant to 28 U.S.C. § 1391 because Tyler Technologies resides within this judicial district and division and is subject to this Court's personal jurisdiction, and because a substantial portion of the events giving rise to the claims herein arose in this judicial district and division.

**The Parties**

4.

Greene is a natural person who resides in Henry County, Georgia.

5.

Tyler Technologies is a foreign corporation organized under the laws of the State of Delaware and registered to do business in the State of Georgia.

6.

Tyler Technologies is subject to the personal jurisdiction of this Court.

7.

Tyler Technologies may be served with process through its registered agent, Capitol Corporate Services, Inc., at 3675 Crestwood Parkway, Suite 350, Duluth, GA 30096.

**Employment Relationship and Successor Liability**

8.

Greene was employed by ExecuTime Software, LLC as a "project manager" beginning in February 2016.

9.

Tyler Technologies acquired ExecuTime in June 2016.

10.

Following its acquisition of ExecuTime, Tyler Technologies continued to employ Greene, but changed her title to "implementation consultant."

11.

Greene has continued working for Tyler Technologies as an implementation consultant through the present.

12.

Greene's job duties as an ExecuTime "project manager" and as a Tyler Technologies "implementation consultant" are substantially identical.

13.

At the time Tyler Technologies acquired ExecuTime, Tyler Technologies had notice of potential FLSA liability for non-payment of overtime wages to implementation consultants because Tyler Technologies had previously been sued for non-payment of overtime to its own implementation consultants.

14.

ExecuTime is now defunct and lacks the means to satisfy any judgment in this action.

15.

Tyler Technologies has the ability to provide the relief sought in this action.

16.

There was a substantial continuity in the business of ExecuTime following its acquisition by Tyler Technologies.

17.

Tyler Technologies continued to service most if not all of ExecuTime's customers after its acquisition of ExecuTime.

18.

Tyler Technologies continued to employ most of ExecuTime's managerial employees after its acquisition of ExecuTime.

19.

Tyler Technologies continued to employ most of ExecuTime's non-managerial employees after its acquisition of ExecuTime.

20.

At all times relevant to this action, either Tyler Technologies and/or ExecuTime was Greene's "employer" within the meaning of 29 U.S.C. § 203(d).

21.

Tyler Technologies is Executime's successor in interest with respect to any FLSA liability of ExecuTime to Greene accruing prior to Tyler Technologies' acquisition of ExecuTime.

**Non-Exempt Employee**

22.

At all relevant times, Greene's primary duties included training customers on the use of ExecuTime time-tracking software and providing customers with post-training support relating to the use of ExecuTime software.

23.

At all relevant times, Greene was not compensated at a regular hourly rate of at least $23.29.

24.

At all relevant times, Greene's primary duties did not include the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications.

25.

At all relevant times, Greene's primary duties did not include the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications.

26.

At all relevant times, Greene's primary duties did not include the design, documentation, testing, creation, or modification of computer programs related to machine operating systems.

27.

At all relevant times, Greene's primary duties did not include a combination of duties described in the three preceding paragraphs, and requiring the same level of skills.

28.

At all relevant times, Greene did not have the primary duty of managing the enterprise in which she was employed or a customarily recognized department or subdivision thereof.

29.

At all relevant times, Greene did not customarily and regularly direct the work of two or more other employees.

30.

At all relevant times, Greene did not have the authority to hire or fire other employees and her suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were not given particular weight.

31.

At all relevant times, Greene did not have authority to formulate, affect, interpret, or implement management policies or operating practices of her employer or her employer's customers.

32.

At all relevant times, Greene's primary duties did not include carrying out major assignments in conducting the operations of the business of her employer or her employer's customers.

33.

At all relevant times, Greene's primary duties did not include work that affected the business operations of her employer or her employer's customers to a substantial degree.

34.

At all relevant times, Greene did not have authority to commit her employer or her employer's customers in matters that have significant financial impact.

35.

At all relevant times, Greene did not have authority to waive or deviate from established policies and procedures without prior approval.

36.

At all relevant times, Greene did not have authority to negotiate and bind her employer or her employer's customers on significant matters.

37.

At all relevant times, Greene did not have a primary duty of providing consultation or expert advice to the management of her employer or her employer's customers.

38.

At all relevant times, Greene was not involved in planning the long- or short-term business objectives of her employer or her employer's customers.

39.

At all relevant times, Greene did not investigate and resolves matters of significance on behalf of the management of her employer or her employer's customers.

40.

At all relevant times, Greene did not represent the company in handling complaints, arbitrating disputes or resolving grievances.

41.

At all relevant times, Greene did not have the authority to make independent choices, free from immediate direction or supervision.

42.

At all relevant times, Greene's primary duties consisted of applying well-established techniques, procedures. or specific standards described in manuals or other sources.

43.

Throughout the Relevant Time Period, Greene did not have the primary duty of performing office or non-manual work directly related to the management or general business operations of her employer or her employer's customers.

44.

Throughout the Relevant Time Period, Greene did not have a primary duty that included the exercise of discretion and independent judgment with respect to matters of significance.

45.

Throughout the Relevant Time Period, Greene was not employed in a bona fide professional capacity within the meaning of 29 USC § 213(a)(1).

46.

At all relevant times, Greene was not employed in a bona fide administrative capacity within the meaning of 29 USC § 213(a)(1).

47.

At all relevant times, Greene was not employed in a bona fide executive capacity within the meaning of 29 USC § 213(a)(1).

48.

At all relevant times, Greene was not employed as a "computer professional" within the meaning of 29 USC § 213(a)(17).

49.

At all times during the Relevant Time Period, Greene was not exempt from the maximum hour requirements of the FLSA by reason of any FLSA exemption.

**Failure to Pay Overtime**

50.

At all relevant times, Greene was compensated on a salary basis.

51.

At all relevant times, Greene regularly worked in excess of 40 hours per seven-day workweek.

52.

At all relevant times, Greene was not compensated at one-and-one-half times her regular hourly rate for all hours worked in excess of forty hours per workweek.

**Willfulness and Lack of Good Faith**

53.

Tyler Technologies knew or should have known that the FLSA applied to Greene and that she was not subject to any exemption from the maximum hour provisions of the FLSA.

54.

Upon information and belief, in failing or refusing to compensate Greene overtime wages as required by the FLSA, ExecuTime did not rely on any letter ruling from the Department of Labor indicating that Greene was subject to any exemption from the overtime pay provisions of the FLSA.

55.

Upon information and belief, in failing or refusing to compensate Greene overtime wages as required by the FLSA, Tyler Technologies did not rely on any letter ruling from the Department of Labor indicating that Greene was subject to any exemption from the overtime pay provisions of the FLSA.

56.

Upon information and belief, in deciding to treat Greene as exempt from the maximum hour requirements of the FLSA, ExecuTime did not rely on any legal advice indicating that such practice was permissible.

57.

Upon information and belief, in deciding to treat Greene as exempt from the maximum hour requirements of the FLSA, Tyler Technologies did not rely on any legal advice indicating that such practice was permissible.

58.

ExecuTime's failure to compensate Greene at one-and-one-half times her regular hourly rate for each hour worked in excess of 40 hours in each workweek was "willful" within the meaning of 29 U.S.C. § 255.

59.

Tyler Technologies' failure to compensate Greene at one-and-one-half times her regular hourly rate for each hour worked in excess of 40 hours in each workweek was "willful" within the meaning of 29 U.S.C. § 255.

60.

ExecuTime's failure to compensate Greene at one-and-one-half times her regular hourly rate for each hour worked in excess of 40 hours in each workweek was not done in "good faith" within the meaning of 29 U.S.C. § 259.

61.

Tyler Technologies' failure to compensate Greene at one-and-one-half times her regular hourly rate for each hour worked in excess of 40 hours in each workweek was not done in "good faith" within the meaning of 29 U.S.C. § 259.

62.

ExecuTime's failure to compensate Greene at one-and-one-half times her regular hourly rate for each hour worked in excess of 40 hours in each workweek was not done in "good faith" within the meaning of 29 U.S.C. § 260.

63.

Tyler Technologies' failure to compensate Greene at one-and-one-half times her regular hourly rate for each hour worked in excess of 40 hours in each workweek was not done in "good faith" within the meaning of 29 U.S.C. § 260.

**Count I - Failure to Pay Overtime Pursuant to 29 U.S.C. §§ 207 and 215(a)(2)**

64.

The allegations in paragraphs 1 through 62 are incorporated by reference as if fully set out in this paragraph.

65.

At all relevant times, Greene was an employee covered by the FLSA and entitled to the maximum hour protections set forth in 29 U.S.C. § 207(a).

66.

Throughout her employment by ExecuTime and Tyler Technologies, Greene regularly worked in excess of 40 hours per workweek.

67.

Throughout her employment by ExecuTime and Tyler Technologies, both companies failed to compensate Greene for each hour worked in excess of 40 hours per workweek.

68.

Tyler Technologies, as the successor-in-interest of ExecuTime, is liable for all of ExecuTime's FLSA liabilities to Greene.

69.

Greene is entitled to recover from Tyler Technologies all her unpaid overtime wages that she earned but that were not paid within the three years prior to the filing of this action, in an amount to be determined at trial, pursuant to with 29 U.S.C. § 216(b).

70.

Greene is entitled to recover from Tyler Technologies liquidated damages in an amount equal to her unpaid overtime wages, in accordance 29 U.S.C. § 216(b).

71.

Greene is entitled to recover from Tyler Technologies her litigation costs, including her reasonable attorney's fees, in accordance with 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff Greene respectfully prays that this Court:

1. Take jurisdiction of this matter;

2. Issue a judgment declaring that Greene was covered by the FLSA and were therefore entitled to be paid an overtime premium for each hour worked in excess of 40 in each workweek;

3. Issue a judgment declaring that ExecuTime and Tyler Technologies failed to comply with the maximum hour provisions of the FLSA;

4. Award Greene her due but unpaid overtime compensation calculated at one-and-one-half times her regular hourly rate, plus an equal amount in liquidated damages from three years prior to the filing of this complaint;

5. Award Greene prejudgment interest on all amounts owed to the extent that liquidated damages are not awarded;

6. Award Greene nominal damages

7. Award Greene her costs of litigation, including reasonable attorney's fees, pursuant to 29 U.S.C. § 216(b);

8. Grant a trial by jury as to all matters properly triable to a jury; and

9. Grant such other and further relief as the Court deems necessary, just and proper.

This 26th day of March 2019,

                                                    Respectfully submitted,

                                                    **DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC**

|  |  |
|---|---|
|  | */s/ Matthew W. Herrington* |
| 3100 Centennial Tower | Mitchell D. Benjamin |
| 101 Marietta Street | Ga. Bar No. 049888 |
| Atlanta, Georgia 30303 | Matthew W. Herrington |
| (404) 979-3150 | Georgia Bar No. 275411 |
| (404) 979-3170 (f) | |
| benjamin@dcbflegal.com | Counsel for Plaintiff |
| matthew.herrington@dcbflegal.com | |