**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**SUZANNE GREENE,**

       **Plaintiff,**

   **vs.**

**TYLER TECHNOLOGIES, INC.,**

       **Defendant.**

      **Civil Action No. 1:19-cv-01338-AT**

**CONSOLIDATED/JOINT DISCOVERY STATEMENT**

Plaintiff Greene alleges that Defendant, her former employer, failed to pay her overtime wages required by the Fair Labor Standards Act. Defendant maintains that Plaintiff was properly classified as an exempt administrative employee.

On September 23, 2019, Plaintiff noticed the 30(b)(6) deposition of Defendant, noticing 25 different topics of examination. The Parties conferred on several disputed topics and have resolved a number of disputes. Several issues remain disputed, however, and the Parties therefore seek the Court's assistance.

**I.**     **TOPIC DESIGNATION NOS. 11 AND 14**

      11.    The terms of all settlement agreements that the Company has entered into involving claims under the Fair Labor Standards Act or state wage and hour laws, including the identities of the parties involved, the dates of execution of such settlement agreements, and the substance of any documents memorializing such settlement agreements.

-1-

US_ACTIVE-149367441.9

14.     Each instance of litigation or arbitration in which the Company or ExecuTime have been parties that involved claims under the Fair Labor Standards Act or state wage and hour laws, including the forum of each, any case number, the identities of all parties, the resolution, the amount of any judgment entered, and the material substance of any dispositive orders or arbitrator decisions entered.

## A.     Defendant's Position

Defendant contends that information regarding previous litigation is not relevant to Plaintiff's claims that she was improperly classified under the FLSA. Moreover, the terms of the above-referenced topic designations are overly broad with respect to time and scope in that they request company-wide information as opposed to litigation involving the division in which Plaintiff was employed.

## B.     Plaintiff's Position

Previous litigation is relevant to the question of whether Defendant was on notice that it might be violating the FLSA by classifying Plaintiff as exempt. The Parties to past litigation or settlements may have evidence that Defendant knew it was in violation of the FLSA. The topics are not overbroad on their face, and Defendant has not provided Plaintiff with any factual basis for its boilerplate overbreadth objection, despite an explicit request to do so. Because Defendant will not confirm that advice it received about the proper classification of implementation consultants was specific to consultants working with ExecuTime software, Plaintiff

-2-

must explore its knowledge regarding misclassification of any of its implementation consultants. The Court should give no effect to the confidentiality provision in the 2011 settlement referenced by Defendant (below) because it is contrary to public policy and unenforceable.

### C.   **Defendant's Reply**

Defendant's overbreadth objection is based on the fact that there may be actions under the FLSA that involve employees in positions other than that in which Plaintiff was employed.  Moreover, the terms of settlement agreements themselves do not relate to Defendant's "good faith" defense and, contrary to Plaintiff's representations, would not address the supposed issue that "… Defendant knew it was in violation of the FLSA." The fact that Defendant may have settled previous disputes involving claims under the FLSA does not support an inference that it "knew" it was in violation of the statute.  Moreover, the only settlement agreement that Defendant has entered into as to a claim under the FLSA occurred in 2011 and was submitted "*in camera*" pursuant to confidentiality provisions.  Plaintiff cites no authority for the notion that confidentiality provisions in settlement agreements are per se contrary to public policy, and district courts are free to assess confidentiality considerations on a case-by-case basis.  Moreover, and more importantly, the terms of the previous settlement have simply no relevance to this litigation.

US_ACTIVE-149367441.9

## II.    TOPIC DESIGNATION NO. 19

19.    The percentage of Plaintiff's work time devoted to FLSA-exempt versus non-exempt job duties.

### A.    Defendant's Position

Defendant objects to this topic designation on the grounds that it calls for a legal conclusion and would require a company representative to opine as to what particular work functions Plaintiff performed may have been "exempt" versus "non-exempt."   Moreover, the test under the FLSA for exempt status requires a determination of the "primary duty" of the Plaintiff and the percentage of time spent working in particular job functions is not directly relevant to that inquiry.  Finally, it would be practically impossible for a company representative to testify as to how Plaintiff spent each and every hour of her work day during her employment. Defendant has agreed to produce a corporate representative to testify as to Plaintiff's various job functions and responsibilities during her employment.   The representative will be able to provide at least general estimates of the amount of time likely spent on particular functions.

### B.    Plaintiff's Position

Defendant misstates the law. While the old percentage limitations of the primary duty "long test" no longer apply, the amount of time spent on exempt vs. non-exempt duties is still *relevant* to the primary duty inquiry. *See* 29 C.F.R.

-4-

US_ACTIVE-149367441.9

§ 541.700 ("Factors to consider when determining the primary duty of an employee include . . . the amount of time spent performing exempt work . . . .").

The topic does not call for a legal conclusion. It presents a mixed question of law and fact. Defendant (through its representative) has listed the exempt duties it contends that Plaintiff performed. Plaintiff is entitled to discover how much time Defendant contends she spent on the purportedly exempt duties and how it came to know that information. If it can apprise its representative of the law sufficiently to allow it to name exempt duties in interrogatory responses, it can do the same for the purpose of a deposition.

### C.   **Defendant's Reply**

Defendant's objection is simply that it is improper to request a corporate representative to discern what particular functions qualify as "exempt" versus "non-exempt." Such assessments require legal conclusions that are improper in the context of a corporate representative deposition.   As such, a question to a corporate representative that requires that representative to determine whether or not a particular job function is "exempt" or "non-exempt" is improper as calling for a legal conclusion.   Plaintiff is free to ask, and Defendant will produce a corporate representative to answer, questions that relate to the percentage of time Plaintiff is likely to have spent on particular job functions during the course of her employment.

US_ACTIVE-149367441.9

Whether those functions are "exempt" or "non-exempt" are determinations of law ultimately for the Court.  The fact that Defendant fully answered an interrogatory on this question does not mean that it should be required to prepare a corporate representative to be in a position to identify which of Plaintiff's job functions were "exempt" and which are "non-exempt."

## III.   TOPIC DESIGNATION NO. 21

> 21.   The content and circumstances of creation of all job descriptions for Implementation Consultant or Project Manager positions that ExecuTime and/or the Company created, published, or transmitted to third parties at any time from January 2016 through March 2019.

### A.   Defendant's Position

Defendant objects to this topic designation because it is overly broad to the extent it seeks testimony regarding job descriptions other than that which applied to Plaintiff.  Moreover, other divisions of Tyler may have utilized job descriptions different from the ExecuTime division in which Plaintiff was employed and such job descriptions are not relevant to the parties' claims and defenses in this case. Defendant is willing to produce a corporate representative to testify about the job descriptions that apply to Plaintiff and which have been produced in this case.

### B.   Plaintiff's Position

Defendant will not confirm that the advice it received and its investigations

US_ACTIVE-149367441.9

relating to the classification of ExecuTime Implementation Consultants were limited only to ExecuTime IC's rather than IC's generally. Without such confirmation, Plaintiff must understand the job duties of all IC's who worked for Defendant so that she can evaluate whether the decision to classify Plaintiff as exempt was based on job duties actually performed by Plaintiff and other ExecuTime IC's rather than by IC's working with different software. It is precisely because Defendant's IC's who worked with other software may have had different job duties than Plaintiff that this inquiry is highly relevant to the question of good faith. The need for this discovery is compounded by the fact that Defendant has refused to identify any other implementation consultants who Plaintiff might call as a witness.

### C.   **Defendant's Reply**

Defendant can confirm that the advice it received regarding classification did not exclusively relate to ExecuTime implementation consultants.  In any event, the job duties of other implementation consultants in other divisions of Defendant are irrelevant to Plaintiff's classification or whether Defendant had a good faith belief as to *her* classification.  Moreover, the content and/or creation of job descriptions for divisions other than the one in which Plaintiff was employed have nothing to do with Defendant's assertion of a good faith defense as to Plaintiff's classification. Finally, Defendant is not aware of any "refusal" to identify potential witnesses in

-7-

this case or the context in which such a "refusal" may have occurred.

## IV.     TOPIC DESIGNATION NO. 24

24.    The material terms of all contracts between the Company and any of its customers on whose projects Plaintiff performed any work.

### A.     Defendant's Position

Defendant objects to this topic designation because it is overly broad and irrelevant.  The terms of the company's contracts with particular customers do not relate to Plaintiff's job duties or other matters relevant to Plaintiff's classification as an exempt employee.  Moreover, it would be overly broad and unduly burdensome to require Defendant to prepare a corporate representative witness as to the terms of each and every contract on which Plaintiff may have worked during her employment.  Finally, the topic designation is vague and ambiguous as to the phrase "material terms."  Defendant would be willing to produce a corporate representative to testify generally as to the different type of contracts, and the different types of payment terms, it typically enters into with its government sector clientele.

### B.     Plaintiff's Position

Defendant claims that Plaintiff's "primary duty involved the performance of office or non-manual work directly related to the general business operations of Tyler's customers." The contracts for the projects that Plaintiff worked on will shed

US_ACTIVE-149367441.9

light on the exact scope of her role in the "general business operations" of Defendant's customers, if any. Defendant has not identified how many contracts are at issue (there is no basis for assuming that each project has a separate contract), stated whether the scope of services in each contract varies (there is no basis for assuming that the contracts are not all materially identical in scope), or otherwise supported its overbreadth objection with facts. Plaintiff would accept production of all the contracts in lieu of deposing a representative on the topic.

### C.   **Defendant's Reply**

There simply is no basis for Plaintiff's assertion that the contractual terms between Defendant and its clients somehow will shed light on the scope of her role with Defendant's customers.  Significantly, Plaintiff has not requested copies of these contracts during the course of the litigation.  Plaintiff is now simply speculating, with no basis whatsoever, that those documents might include some description of the services that she would provide.  In fact, as would be expected in client-facing contracts in the software industry, such contracts do not delineate particular job functions associated with Plaintiff's position (or any other position). Moreover, Defendant anticipates that Plaintiff worked on around 300 projects during her employment with Defendant, which is the basis for Defendant's overbreadth objection.  Plaintiff has not previously requested production of customer contracts

US_ACTIVE-149367441.9

before, and the belated willingness to request production of the contracts as a supposed compromise has nothing to do with the proper scope of a corporate representative deposition topic.  In any event, such a request for customer contracts would not lead to the discovery of relevant evidence for the reasons set forth above.

-10-

Respectfully submitted this 2nd day of October, 2019.

**DELONG, CALDWELL, BRIDGERS,**
**FITZPATRICK & BENJAMIN, LLC**

*/s/ Matthew W. Herrington*
Mitchell D. Benjamin
Georgia Bar No. 049888
Matthew W. Herrington
Georgia Bar No. 275411

3100 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
(404) 979-3150
(404) 979-3170 (facsimile)
benjamin@dcbflegal.com
matthew.herrington@dcbflegal.com

Counsel for Plaintiff

**DENTONS US LLP**

*/s/ Paulo B. McKeeby*
R. Daniel Beale
Georgia Bar No. 043880
dan.beale@dentons.com
Maxwell R. Jones
Georgia Bar No. 451289
max.jones@dentons.com

303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308
Telephone: +1.404.527.4000
Facsimile: +1.404.527.4198

**REED SMITH LLP**

Paulo B. McKeeby
Texas Bar No. 00784571
pmckeeby@reedsmith.com
Amanda E. Brown
Texas Bar No. 24087839
aebrown@reedsmith.com

2501 N. Harwood St., Suite 1700
Dallas, TX 75201
Telephone: +1.469.680.4200
Facsimile: +1.469.680.4299

Counsel for Defendant

US_ACTIVE-149367441.9