```
 1          IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF GEORGIA
 2                 ATLANTA DIVISION

 3

 4   SUZANNE GREENE,          )
                              )
 5          Plaintiff,        )  CIVIL ACTION NO.
                              )
 6      vs.                   )  1:19-cv-01338-AT
                              )
 7   TYLER TECHNOLOGIES, INC.,)
                              )
 8          Defendant.

 9

10

11      30(B)(6) DEPOSITION OF TYLER TECHNOLOGIES

12         BY WITNESS: ABIGAIL DIAZ-PEDROSA

13              October 9, 2019

14                 4:15 p.m.

15             Dentons US, LLP

16          303 Peachtree Street, NE

17                Suite 5300

18          Atlanta, Georgia  30308

19

20   Reported By: Judith L. Leitz Moran, RPR, RSA,

21             Certified Court Reporter CCR-B-2312

22             Job No. 538

23

24

25
```



```
 1    APPEARANCES:

 2

 3    On behalf of the Plaintiff:

 4         MATTHEW W. HERRINGTON, ESQUIRE

 5         DELONG, CALDWELL, BRIDGERS,

 6         FITZPATRICK & BENJAMIN, LLC

 7         3100 Centennial Tower

 8         101 Marietta Street

 9         Atlanta, Georgia  30303

10

11    On behalf of the Defendant:

12         PAULO B. McKEEBY, ESQUIRE

13         REED SMITH LLP

14         2501 N. Harwood Street

15         Suite 1700

16         Dallas, Texas  75201

17

18    ALSO PRESENT:

19         HILLARY PASCH, CORPORATE REPRESENTATIVE

20         TYLER TECHNOLOGIES

21

22

23

24

25
```



Greene vs Tyler Technologies        30(b)(6) Abigail Diaz-Pedrosa        10/09/2019

```
 1    INDEX OF EXAMINATION                          PAGE

 2         BY MR. HERRINGTON ......................    4

 3

 4

 5

 6                   E X H I B I T S

 7    EXHIBIT NOS.                                   PAGE

 8    Exhibit 31     Second Joint Motion for Order    13

 9                   Approving Settlement and Motion

10                   to Present Settlement Papers in

11                   Camera

12

13

14    PREVIOUSLY MARKED                              PAGE

15    Exhibit 1      .............................    5

16

17

18

19

20

21

22

23

24

25
```



```
 1                 MR. HERRINGTON:  This is the deposition
 2    by cross-examination of Tyler Technologies, Inc.,
 3    pursuant to 30(b)(6) of the Federal Rules of Civil
 4    Procedure.
 5                 The deposition is taken for the purposes
 6    of discovery and for all other purposes allowed by
 7    the Federal Rules of Civil Procedure.
 8                 My name is Matthew Herrington.  I'm
 9    counsel for the Plaintiff in this case, Suzanne
10    Greene.
11                 Also present is Paulo McKeeby, counsel of
12    record for the Defendant.  And Hillary Pasch, who
13    is a corporate representative.
14                 Ms. Moran, will you please swear the
15    witness.
16                      ABIGAIL DIAZ-PEDROSA
17    being first duly sworn, was examined as follows:
18                 THE WITNESS:  I do.
19                        EXAMINATION
20    BY MR. HERRINGTON:
21        Q     Please state your full legal name.
22        A     Abigail Diaz-Pedrosa, P-E-D-R-O-S-A.
23        Q     Okay.  And you go by Abby Diaz?
24        A     Yes, I do.
25        Q     Now, you've been designated by Tyler
```



 1    Technologies to speak today on several topics in

 2    this 30(b)(6) deposition; is that correct?

 3        A    Yes.

 4        Q    So referring back to what was previously

 5    marked as Exhibit 1, my understanding is that

 6    you're going to talk to me about Topics 11 through

 7    15?

 8              MR. McKEEBY:  No.  Not Topic 11.

 9              MR. HERRINGTON:  No.

10              MR. McKEEBY:  Because it relates to

11    settlement agreements.

12              MR. HERRINGTON:  It's limited to the

13    identities of the parties.

14              MR. McKEEBY:  Well, that's covered in

15    Topic 14.

16              MR. HERRINGTON:  Okay.

17              MR. McKEEBY:  So I don't see why there's

18    the need to discuss Topic 11.  And Topic 12, she's

19    not been designated.  Just 13, 14 and 15.  With the

20    understanding that 14 is going to encompass part of

21    what's included in Topic 11.

22              MR. HERRINGTON:  All right.

23    BY MR. HERRINGTON:

24        Q    Would you please look at the topic

25    numbers and confirm that that's accurate?



```
 1        A    As Paulo just summarized it, that is my

 2   understanding.

 3        Q    Have you been deposed before?

 4        A    No.

 5        Q    Have you taken a deposition?

 6        A    Yes.

 7        Q    Okay.  So you're very familiar with how

 8   depositions work?

 9        A    Yes.

10        Q    And I can skip all the preliminaries with

11   you?

12        A    Yes.

13        Q    Okay.  Would you tell me about your

14   educational background?

15        A    Sure.  I graduated from Georgetown

16   University in Washington, D.C.  And after college,

17   I went to Cornell Law School and I graduated from

18   Cornell in 2004.

19        Q    And where do you currently reside?

20        A    Falmouth, Maine.

21        Q    How do you spell that?

22        A    F-A-L-M-O-U-T-H.

23        Q    And do you have any relatives in Georgia?

24        A    Yes.

25        Q    And who are they?
```



```
 1          A     My sister, brother-in-law, and two

 2    nephews.

 3          Q     What is their last name?

 4          A     Ryan.

 5          Q     R-Y-A-N?

 6          A     Yes.

 7          Q     Okay.  Do they live in the Northern

 8    District of Georgia?

 9          A     They live in Atlanta.

10          Q     Okay.

11          A     Is that in the Northern District of

12    Georgia?

13          Q     Yes.

14          A     Okay.

15          Q     Where does -- what are their names?

16          A     Matt Ryan, Sarah Ryan.

17          Q     The nephews are minors?

18          A     Yes.

19          Q     Okay.  What do they do for a living?

20          A     Matt is an athlete and Sarah is a

21    stay-at-home mother.

22          Q     Is he an athlete that I would have heard

23    of if I followed sports?

24          A     Yes.

25          Q     Okay.  What kind of sport?
```



```
 1      A    He is a quarterback for the Atlanta
 2  Falcons.
 3      Q    Okay.  That's funny.  Yeah, I had no
 4  clue.
 5           Have you ever been a party to a lawsuit
 6  individually?
 7      A    No.
 8      Q    Okay.  No criminal history?
 9      A    No.
10      Q    And where did you begin working after law
11  school?
12      A    I began -- well, I clerked for a judge on
13  the Third Circuit --
14      Q    Uh-huh.
15      A    -- for one year.  And after that, I
16  became a litigation associate at Kirkland & Ellis.
17      Q    I'm sorry.
18      A    Excuse me?
19      Q    I said I'm sorry.
20      A    Yes, thank you for your sympathies.
21           Kirkland & Ellis in their New York City
22  office.
23      Q    Okay.  And what practice group are you
24  in?
25      A    Litigation.
```



```
 1        Q     Okay.  And how long were you there?

 2        A     I was there about six and a half years.

 3        Q     And after Kirkland?

 4        A     My next job was at Tyler.

 5        Q     Okay.  And you've been with Tyler ever

 6   since?

 7        A     From 2012 to the present.

 8        Q     Okay.  And what was your first position

 9   with Tyler?

10        A     Contract specialist.

11        Q     Okay.  So drafting contracts with the

12   customers?

13        A     Drafting and negotiating contracts and

14   related documents.

15        Q     Okay.  And what position did you have

16   after contract specialist?

17        A     Associate general counsel.

18        Q     Okay.  And when did that happen, that

19   change?

20        A     As best as I can remember, it was in

21   2014.

22        Q     Okay.  And how long did you hold that

23   position?

24        A     For about three years, I think.

25        Q     And you became general counsel?
```



```
 1        A    Yeah, we call it chief legal officer.
 2        Q    Chief legal officer.  And that change
 3   happened when?
 4        A    I believe January of 2017.
 5        Q    Okay.  Who was the chief legal officer
 6   before you?
 7        A    At that time we called it general
 8   counsel, and it was Lynn Moore.
 9        Q    And how long had Lynn Moore been the
10   general counsel?
11        A    More than 10 years.
12        Q    Okay.
13        A    More than 15 years, I think.
14        Q    So Lynn Moore was general counsel at the
15   time of the Beall litigation?
16        A    Yes.
17        Q    And you were not with Tyler at that time?
18        A    Correct.
19        Q    Is Lynn Moore still with the company?
20        A    Yes.
21        Q    In what position?
22        A    President and CEO.
23        Q    What I have referred to as the Beall
24   litigation, was an FSLA collective action filed
25   against Tyler Technologies?
```



```
 1       A    Tyler was one of the Defendants, yes.
 2       Q    Okay.  What is the other defendant, was
 3  it EDP Enterprises, Inc.?
 4       A    I think that's the correct name of the
 5  corporate entity.  I know it as EDP.
 6       Q    And is that a company that's owned by
 7  Tyler Technologies?
 8       A    Tyler acquired EDP, yes.
 9       Q    When did it acquire EDP?
10       A    I believe it was sometime in 2007.
11       Q    Was it in an acquisition structurally
12  similar to the acquisition of ExecuTime?
13            MR. McKEEBY:  Object to the scope of the
14  question as outside -- or rather, object to the
15  question as outside the scope of the topic
16  designation.
17            But I'll allow you to answer if you know.
18       A    I don't know.
19  BY MR. HERRINGTON:
20       Q    Do you know if they took on employees
21  from EDP?
22       A    It is my understanding that they did.
23       Q    Okay.  And they acquired software from
24  EDP?
25       A    Yes.
```



```
 1        Q     Okay.  So it does share that in common
 2    with the acquisition of ExecuTime?
 3        A     Yes.
 4        Q     Okay.  Now, it was an FLSA collective
 5    action for implementation consultants among others?
 6        A     Implementation consultants, not by that
 7    name.  By that role and other roles, yes.
 8        Q     Okay.  So by -- at least some of the
 9    Plaintiffs were performing the work that would be
10    described in the job description for an
11    implementation consultant that Ms. Pasch examined
12    earlier?
13             MR. McKEEBY:  Object to the form of the
14    question.
15             You can answer.
16        A     I believe they would have performed some
17    of those functions, yes.  Whether it translated
18    line by line, I do not know.
19    BY MR. HERRINGTON:
20        Q     All right.  Do you know how many
21    plaintiffs there ultimately were in that case
22    before it settled?
23        A     How many opt-in plaintiffs?
24        Q     Opt-in plus named plaintiffs.
25        A     I think opt-in plus named settled
```



1   somewhere just north of 20.  And by settled, I

2   don't mean settled in the litigation sense, I mean

3   the number hovered somewhere just north of 20.

4       Q    I see.

5            So were there opt-outs at some point?

6       A    Yes, sir.

7       Q    So at the highest, it was over 20 and

8   then somewhat lower at the end?

9       A    It might have always remained over 20

10  even at the end, but there were opt-outs.

11      Q    And it was alleging overtime violations,

12  correct?

13      A    It alleged that the roles had been

14  misclassified as exempt under FLSA, and that,

15  therefore, they were entitled to be reclassified as

16  nonexempt and paid overtime wages.

17      Q    Okay.  Can you tell me about -- that case

18  was ultimately settled, correct?

19      A    Correct.

20      Q    Okay.

21           (Deposition Exhibit 31 marked.)

22  BY MR. HERRINGTON:

23      Q    Would you agree that Exhibit No. 31,

24  which has just been given to you, is a copy of the

25  Motion to Approve Settlement that was filed in that



1    case?  The final Motion to Approve Settlement that

2    was filed in that case?

3         A    I don't know if it was the final motion

4    for settlement approval.

5         Q    Do you know how many motions there were?

6         A    No.

7         Q    Okay.  Do you have any reason to believe

8    there were more than two?

9         A    No reason to believe, no.

10        Q    All right.  So this was filed and then

11   the case was settled at some point, correct?

12        A    Given the case caption and docketing

13   information at the top, I would agree with you that

14   this was filed.

15             I am generally aware that a motion for an

16   order approving settlement was filed.  And I am

17   also generally -- and I do know that the case was

18   ultimately resolved through settlement.

19        Q    Okay.  Now, following this -- well, back

20   up.

21             In the Beall litigation, there were

22   employees who shared the job duties of what

23   implementation consultants now perform, correct?

24        A    At least at a general level, yes.

25        Q    What were they called in the -- in the



```
 1   Beall litigation, what were they referred to as?
 2       A    As best I can recall, there were actually
 3   three different references.  Trainer, customer
 4   liaison, and something along the lines of education
 5   specialist.  That last one I can't remember
 6   exactly, but it had the word "education" in the
 7   title.
 8       Q    I see.
 9            Do you know anything about the specific
10   roles that those different people played?
11       A    At EDP, I do not.
12       Q    Were they reclassified after the
13   acquisition of EDP or did Tyler continue to use the
14   preexisting job titles?
15            MR. McKEEBY:  Object to the form of the
16   question as beyond the scope of the topic
17   designation.
18            You can answer if you know.
19       A    I don't know specifically.  I can only
20   speak to what Tyler's general practice would be.
21   BY MR. HERRINGTON:
22       Q    So after the company was sued in that
23   case, did it investigate whether the administrative
24   exemption was appropriately applied or not?
25            MR. McKEEBY:  Object to the form of the
```



```
 1    question as vague and ambiguous.

 2             You can answer.

 3       A    I think Tyler investigated multiple

 4    aspects of the allegations and I -- yes, as part of

 5    the reaction to the lawsuit, Tyler looked to

 6    confirm whether implementation consultants or folks

 7    in an implementation role are properly classified

 8    as exempt under the administrative exception.

 9    BY MR. HERRINGTON:

10       Q    And who performed that review?

11       A    It was a group of internal Tyler

12    resources and outside counsel.

13       Q    Who were the internal resources?

14       A    They at least included Lynn Moore; our

15    former head of HR, Bob Sansone, S-A-N-S-O-N-E; and

16    other HR leaders.

17       Q    Lynn Moore was an attorney, though?

18       A    Lynn Moore at the time was in-house

19    counsel for Tyler, yes.

20       Q    So he was the only internal attorney to

21    review that question?

22       A    Yes.

23       Q    Okay.  What about outside counsel?

24       A    That was Paulo McKeeby and his law firm.

25       Q    Do you know if other lawyers besides
```

1   Mr. McKeeby worked on that case -- or worked on the
2   review?

3        A    I know Paulo had assistance from other
4   lawyers at his firm.  I cannot remember their
5   names.

6        Q    Okay.  And did the company at any time
7   solicit an opinion from Mr. McKeeby about the
8   applicability of the administrative exemption to
9   the employees who were at issue in Beall?

10            MR. McKEEBY:  Object to the form of the
11   question.

12            You can answer.

13        A    I believe that soliciting Mr. McKeeby's,
14   Paulo's, opinion was something that the Tyler team
15   regularly did.

16   BY MR. HERRINGTON:

17        Q    You say you believe rather than that they
18   did.  What investigation did you do to learn what
19   actions were taken back then?

20        A    I spoke with Lynn, I spoke with Bob, and
21   I spoke with other members from the HR team who
22   were employed by Tyler at the time of the Beall
23   lawsuit as well.

24        Q    All right.  And what did Mr. McKeeby tell
25   them?



1        A    He confirmed that Tyler was properly

2    classifying implementation consultants as exempt

3    from the FLSA overtime wage provisions under the

4    administrative exemption.

5        Q    And he told you that that was certain?

6        A    He didn't tell me that was certain.  He

7    told Tyler.

8        Q    Might be the company?

9        A    Yeah, he told Tyler that that

10   classification was correct.

11       Q    What information was given to Mr. McKeeby

12   prior to him making that determination?

13       A    The information would have included job

14   descriptions for those individuals or for that type

15   of role, information about training for that role,

16   information about Tyler's business and the business

17   of our clients that the implementation consultants

18   are used to advance.

19            At least each of those three buckets of

20   information would have been provided and discussed.

21       Q    Are there any document -- is there any

22   documentary evidence showing that that -- you know,

23   what was actually conveyed to him in writing?

24       A    In writing?

25       Q    Uh-huh.

```
 1        A     No.

 2        Q     So all of this was oral?

 3              MR. McKEEBY:  I need to object to the

 4     question as it's outside the scope of the corporate

 5     designation.

 6              You didn't ask about what information was

 7     provided to me, you only asked about the substance

 8     of my communications with the company.

 9              MR. HERRINGTON:  Are you telling her not

10     to answer?

11              MR. McKEEBY:  I'm not.  I'm advising that

12     I don't think she can answer on behalf of the

13     corporation on the topic -- or rather, on the

14     question because it's not properly identified as a

15     topic designation.

16              I'll let her continue and answer the

17     question.

18     BY MR. HERRINGTON:

19        Q     What information -- is there any

20     documentary evidence of Tyler Technologies giving

21     Mr. McKeeby information?

22        A     I don't know.

23        Q     Have you made a search for that?

24        A     No.

25        Q     And by "you," I mean Tyler?
```



```
 1        A    And my answer doesn't change.
 2        Q    And the advice that Mr. McKeeby gave to
 3   Tyler that they were properly classified, was that
 4   reduced to writing at any time?
 5        A    No.
 6        Q    How do you know that it wasn't reduced to
 7   writing?
 8        A    Through conversations I had preparing for
 9   this deposition.
10        Q    Conversations with whom?
11        A    Lynn.
12        Q    Tyler Technologies has over a hundred
13   implementation consultants, correct?
14        A    Yes.
15        Q    Did it have over a hundred implementation
16   consultants in 2009?
17             MR. McKEEBY:  Object to the form of the
18   question.  It's outside of the scope of the topic
19   designation.
20             If she knows, she can answer.  I don't
21   know that she does.
22        A    I don't know.
23   BY MR. HERRINGTON:
24        Q    Did it solicit any legal advice about the
25   classification of implementation consultants at any
```



 1    time after Mr. McKeeby's representation in the

 2    Beall litigation?

 3        A    I am not aware of specific instances

 4    where we asked Paulo to advise us on that again.

 5        Q    Or any attorney?

 6        A    No other attorney.

 7        Q    Is it typical for Tyler Technologies to

 8    obtain legal advice that is not reduced to writing?

 9        A    Yes.

10        Q    Even on issues that have -- could

11    potentially have a large financial impact on the

12    company?

13             MR. McKEEBY:  Object to the form of the

14    question as outside the scope of the topic

15    designation.

16             I'll let you answer.

17        A    Yes, I regularly receive, on behalf of

18    Tyler, legal advice from outside counsel that is

19    verbal.

20    BY MR. HERRINGTON:

21        Q    And you take action on verbal advice that

22    could potentially have a large financial impact on

23    the company --

24             MR. McKEEBY:  Same objection.

25    BY MR. HERRINGTON:



```
 1        Q     -- without reducing it to writing?
 2             MR. McKEEBY:  Same objection as outside
 3   the scope of the corporate designation.  You're not
 4   asking -- you said nothing that would suggest that
 5   you would ask questions about legal advice.
 6             MR. HERRINGTON:  You've made your
 7   objections.  Speaking objections are not proper.
 8   Make your objection and finish.
 9             MR. McKEEBY:  Well, I was about to tell
10   her not to answer, but I'll let her answer if she
11   knows or she will know, but you need to stay within
12   the confines of the notice.
13             MR. HERRINGTON:  You need to stop making
14   speaking objections.
15             MR. McKEEBY:  I'm not.  I'm asking you to
16   stay within the confines of the notice.
17             MR. HERRINGTON:  Are you done?
18             MR. McKEEBY:  I am done.
19             MR. HERRINGTON:  Please answer my
20   question.
21        A     I need it repeated, please.
22             (Whereupon, the requested portion of
23             the record was read by the reporter.)
24             MR. McKEEBY:  Same objection.
25        A     So do I take action based on legal advice
```



```
 1    that's verbally given to me without requiring that

 2    it be followed up in written form?

 3    BY MR. HERRINGTON:

 4        Q    On issues that could have significant

 5    financial impacts on the company.

 6        A    Yes, I do.

 7        Q    Okay.  Can you give me other examples?

 8             MR. McKEEBY:  No.  Object to the form of

 9    the question.  It's outside the scope of the topic

10    designation and it invades attorney/client

11    privilege, so I'm going to instruct her not to

12    answer that one.

13    BY MR. HERRINGTON:

14        Q    After the employees in the Beall

15    litigation, trainers, customer liaisons and

16    education specialists were reclassified, at least

17    partially into implementation consultants, did the

18    company get any advice at that point about whether

19    the exemption was still appropriate?

20             MR. McKEEBY:  Object to the form of the

21    question.

22             You can answer.

23        A    I'm not sure I can answer.

24    BY MR. HERRINGTON:

25        Q    They weren't performing the exact same
```



```
 1    duties anymore, were they?

 2         A    I don't know.

 3         Q    Can you tell me what the job duties of a

 4    trainer were?

 5              MR. McKEEBY:  Object to the form of the

 6    question as outside the scope of the corporate

 7    representative -- or the corporate topic

 8    designations.

 9              You can answer if you know.

10         A    I do not know the job description of EDP

11    trainers.

12    BY MR. HERRINGTON:

13         Q    Or any of them?  Any of the three

14    categories?

15         A    I don't know how EDP described any of the

16    functions.

17         Q    Those categories continued to be used by

18    Tyler after the acquisition, didn't they?

19         A    I think we talked about this.  I don't

20    know if and when those titles were changed; and if

21    they were changed, what they were changed to.

22         Q    Can you tell me exactly how the job

23    duties of trainers, customer liaisons and education

24    specialists overlapped with implementation

25    consultants?
```



```
 1              MR. McKEEBY:  Object to the form of the
 2    question.  It's outside the scope of the corporate
 3    deposition notice.
 4              You can answer, if you know.
 5        A    Did you say exactly how?
 6    BY MR. HERRINGTON:
 7        Q    Yeah.
 8        A    No.
 9        Q    Did Mr. McKeeby tell you why they were
10    properly classified as exempt?
11              MR. McKEEBY:  "You" being Tyler?
12              MR. HERRINGTON:  Yes.
13        A    Yes.
14    BY MR. HERRINGTON:
15        Q    Why?
16        A    They satisfied the three prongs of the
17    administrative exemption.
18        Q    And what were those?
19        A    Meeting or exceeding the salary
20    threshold, having primary duties that directly
21    related to the general business operations of
22    either EDP or Tyler, depending on the period of
23    time that the work was performed in and who was the
24    employing entity at that time.  And then the fact
25    that that exercised discretion and/or independent
```

```
 1   judgment in performing their primary duties.
 2        Q    So Mr. McKeeby told you that they were
 3   involved in the general business operations of EDP
 4   and Tyler rather than their customers?
 5        A    Both.
 6             Thank you, yes, both.
 7        Q    Was Mr. McKeeby's compliance advice
 8   billed to the company?
 9        A    Yes.
10        Q    Okay.  So there are billing records for
11   providing that advice?
12        A    There would have been at the time.
13        Q    As opposed to simple representation in
14   litigation?
15        A    I don't understand your question.
16        Q    Did Mr. McKeeby bill the company
17   separately for doing a review of -- for perspective
18   purposes about whether implementation consultants
19   should be classified as exempt or nonexempt --
20             MR. McKEEBY:  Objection.
21   BY MR. HERRINGTON:
22        Q    -- versus simply providing representation
23   in a lawsuit?
24             MR. McKEEBY:  Object to the form of the
25   question as outside the scope of the topic
```



 1   designations.

 2              You can answer, if you know.

 3       A    The work he performed was in connection

 4   with his representation of Tyler in the Beall

 5   litigation.  The advice he provided was in that

 6   same context and it would have been billed as such.

 7   BY MR. HERRINGTON:

 8       **Q    I believe the company expressed in the**

 9   **Motion for Settlement Approval that it was settling**

10   **to avoid the expense of litigation rather than a**

11   **belief that it had acted illegally; is that**

12   **correct?**

13              MR. McKEEBY:  Where is that?

14              MR. HERRINGTON:  Footnote, second or

15   third page.

16              MR. McKEEBY:  Okay.  What's the question?

17   BY MR. HERRINGTON:

18       **Q    I'm asking her to confirm that the**

19   **company stated that it settled because of**

20   **litigation expenses rather than a belief that it**

21   **had acted illegally?**

22       A    I don't think that's a correct summary of

23   Footnote 1.

24       **Q    "Tyler is agreeing to resolve part of**

25   **this case only to avoid the fees and costs**



 1   **associated with continued litigation."**

 2          MR. McKEEBY:  Yes, you read that

 3   correctly.

 4       A    You read that correctly.

 5          MR. HERRINGTON:  I'm not deposing you.

 6          MR. McKEEBY:  Beg your pardon?

 7          MR. HERRINGTON:  I'm not deposing you.

 8          MR. McKEEBY:  I'm here as a

 9   representative -- I'm here representing a -- as an

10   attorney, a company representative.  If you have a

11   question, ask her.

12   BY MR. HERRINGTON:

13       **Q    Ms. Diaz, did I read that correctly?**

14       A    You read that portion of Footnote 1

15   correctly.

16       **Q    It did express that it was resolving this**

17   **part of the case only to avoid fees and costs**

18   **associated with continued litigation.**

19       A    You read that portion of Footnote 1

20   correctly.  That is not how you had previously

21   summarized Footnote 1.

22       **Q    How much did Tyler spend on its**

23   **representation in Beall?**

24       A    I do not know.

25       **Q    I may have asked you this already, but**



 1    **I'm going to ask you again to refresh my memory.**

 2        A    Uh-huh.

 3        **Q    Can you provide any more information**

 4    **about what was provided to Mr. McKeeby about the**

 5    **job duties of implementation consultants other than**

 6    **that their job duties satisfied the second and**

 7    **third prongs of the administrative exemption test?**

 8            MR. McKEEBY:  Object to the form of the

 9    question as outside the scope of the topic

10    designations.

11            You can answer.

12            MR. HERRINGTON:  We were directed to try

13    to replace your deposition with this one and I'm

14    trying to do that.

15            MR. McKEEBY:  No, there was no direction

16    necessarily to do that.

17            We're presenting her, as you identified

18    at the beginning of this deposition, on the topic

19    designations.

20            I'll let her answer that question.  I

21    don't think it's one that I was properly advised

22    that I needed to prepare a corporate representative

23    on, and that's the basis of my objection.

24            MR. HERRINGTON:  I'm trying to find out

25    if I can get enough information from her or whether

1    I need to tell Judge Totenberg, sorry, Judge, the

2    corporate representative couldn't tell me enough,

3    so I need to depose Mr. McKeeby.

4          MR. McKEEBY:  I understand that, but

5    nonetheless, we prepared her to speak on the topic

6    designations as stated.

7          And so I'm not in a position to present

8    her to provide company testimony on matters outside

9    of those designations.

10          So she can -- as she's done in the past

11   in this deposition, I'm going to allow her to

12   answer the question.  I'm not going to instruct her

13   not to answer.

14          But I haven't prepared her to answer that

15   question on behalf of the company.  That's all I'm

16   saying.  She can answer the question.

17          MR. HERRINGTON:  Please read my question

18   to her again.

19          (Whereupon, the requested portion of

20          the record was read by the reporter.)

21          MR. McKEEBY:  Same objection.

22          You can answer.

23    A    I can't answer the question because of

24   the way you phrased it.

25   BY MR. HERRINGTON:



1        Q     What's wrong with the way I phrased it?

2        A     You asked -- semantically, the trouble is

3    any more information.  I'm trying to remember what

4    I answered the first time.

5              The second problem with the semantics of

6    the question is that it acts as though what I said

7    by way of information we provided was that we

8    satisfy the second and third prongs of the test.

9              We did not tell Paulo we satisfied the

10   second and third prongs of the test.  That was part

11   of the advice he provided to us.

12       Q     So exactly what information was provided

13   to Mr. McKeeby about the job duties of

14   implementation consultants?

15             MR. McKEEBY:  Objection, asked and

16   answered.

17             And objection, it goes outside the scope

18   of the corporate representative designation topics.

19             You can answer.

20       A     I don't know exactly what was

21   communicated.  I know the substance of what was

22   communicated.

23   BY MR. HERRINGTON:

24       Q     And how do you know that?

25       A     By talking with Lynn, Bob, and other



```
 1    members of the HR team that were employed by Tyler

 2    at the time of the lawsuit.

 3        Q    And did you find out from them whether

 4    the information given to Mr. McKeeby was in

 5    writing?

 6        A    Did I find out from them whether the

 7    information was provided in writing?  No, I asked

 8    for information about the substance of the

 9    communications.

10        Q    And Tyler has not performed any search of

11    its records to determine whether it possesses the

12    information -- the communications to -- any

13    communications to Mr. McKeeby describing the work

14    that implementation consultants performed?

15             MR. McKEEBY:  Object to the form of the

16    question as outside the scope of the topic

17    designations.

18             You can answer if you know.

19        A    Not to my knowledge.

20             MR. HERRINGTON:  All right.  That's it.

21    Thank you.

22             MR. McKEEBY:  No further questions from

23    me.

24             Thank you, Matt.

25             (Deposition concluded at 4:56 p.m.)
```



Greene vs Tyler Technologies          30(b)(6) Abigail Diaz-Pedrosa          10/09/2019

```
 1    (Signature reserved.)

 2

 3           *   *   *   *   *

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1              C E R T I F I C A T E

 2    STATE OF GEORGIA:

 3    COUNTY OF DEKALB:

 4

 5              I hereby certify that the

 6         foregoing transcript was taken down, as

 7         stated in the caption, and the questions

 8         and answers thereto were reduced to

 9         typewriting under my direction; that the

10         foregoing Pages 1 through 33 represent a

11         true and correct transcript of the

12         evidence given upon said hearing, and I

13         further certify that I am not of kin or

14         counsel to the parties in the case; am not

15         in the regular employ of counsel for any

16         of said parties; nor am I in anywise

17         interested in the result of said case.

18         The witness did reserve the right

19         to read and sign the transcript.

20              This, the 25th day of October 2019.

21

22         _____

           Judith L. Leitz Moran, CCR-B-2312
23         Certified Court Reporter

24

25    Job No. 538
```



Greene vs Tyler Technologies        30(b)(6) Abigail Diaz-Pedrosa        10/09/2019

```
 1                      DISCLOSURE

 2

 3        Pursuant to Article 10.B of the Rules and
     Regulations of the Board of Court Reporting of the
 4   Judicial Council of Georgia, I make the following
     disclosure:

 5

        I am a Georgia Certified Court Reporter.  I am
 6   here as a representative of IST Reporting.

 7        I am not disqualified for a relationship of
     interest under the provisions of O.C.G.A.
 8   9-11-28(c).

 9        I was contacted by the office of IST Reporting
     to provide court reporting services for this
10   deposition.

11        I will not be taking this deposition under any
     contract that is prohibited by O.C.G.A. Section
12   15-14-37 (a) and (b).

13        I have no exclusive contract to provide
     reporting services with any party to the case, any
14   counsel in the case, or any reporter or reporting
     agency from whom a referral might have been made to
15   cover this deposition.

16        I will charge my usual and customary rates to
     all parties in the case, and a financial discount
17   will not be given to any party to this litigation.

18

19        This, the 25th day of October 2019.

20

21

22   _____
     Judith L. Leitz Moran, CCR-B-2312
23   Certified Court Reporter

24

25   Job No. 538
```



Greene vs Tyler Technologies          30(b)(6) Abigail Diaz-Pedrosa          10/09/2019

```
 1                    DISCLOSURE OF FIRM

 2

 3        I, IST Reporting, do hereby disclose pursuant
      to Article 10.B. of the Rules and Regulations of
 4    the Board of Court Reporting of the Judicial
      Council of Georgia that IST Reporting was contacted
 5    by DELONG, CALDWELL, BRIDGERS, FITZPATRICK &
      BENJAMIN, LLC, to provide court reporting services
 6    for this deposition and there is no contract that
      is prohibited by O.C.G.A. 15-14-37(a) and (b) or
 7    Article 7.C. of the Rules and Regulations of the
      Board for the taking of this deposition.
 8
          There is no contract to provide reporting
 9    services between IST Reporting or any person with
      whom IST Reporting has a principal and agency
10    relationship nor any attorney at law in this
      action, party to this action, party having a
11    financial interest in this action, or agent for an
      attorney at law in this action, party to this
12    action, or party having a financial interest in
      this action.  Any and all financial arrangements
13    beyond our usual and customary rates have been
      disclosed and offered to all parties.
14

15        This, the 25th day of October 2019.

16

17                _____

18

19        _____
          FIRM REPRESENTATIVE
20        IST REPORTING

21

22

23

24

25    Job No. 538
```



```
 1              ERRATA PAGE

 2          Pursuant to Rule 30(e) of the Federal
     Rules of Civil Procedure and/or Georgia Code
 3   Annotated 9-11-30(e), any changes in form or
     substance which you desire to make to your
 4   deposition testimony shall be entered upon the
     deposition with a statement of the reasons given
 5   for making them.  To assist you in making any such
     corrections, please use the form below.  If
 6   supplemental or additional pages are necessary,
     please finish same and attach them to this errata
 7   sheet.

 8          I, the undersigned, ABIGAIL DIAZ-PEDROSA,
     hereby certify that I have read or have had read to
 9   me the foregoing, and that to the best of my
     knowledge said is true and accurate with the
10   exception of the following corrections.

11

12   Page/Line/      Change     /    Reason

13   _____/_____/_____/_____

14   _____/_____/_____/_____

15   _____/_____/_____/_____

16   _____/_____/_____/_____

17   _____/_____/_____/_____

18   _____/_____/_____/_____

19   _____/_____/_____/_____

20   _____/_____/_____/_____

21   _____/_____/_____/_____

22   _____/_____/_____/_____

23   _____/_____/_____/_____

24   _____/_____/_____/_____

25   _____/_____/_____/_____
```



```
 1   Page/Line/       Change    /    Reason

 2   _____/_____/_____/_____

 3   _____/_____/_____/_____

 4   _____/_____/_____/_____

 5   _____/_____/_____/_____

 6   _____/_____/_____/_____

 7   _____/_____/_____/_____

 8   _____/_____/_____/_____

 9   _____/_____/_____/_____

10   _____/_____/_____/_____

11   _____/_____/_____/_____

12   _____/_____/_____/_____

13   _____/_____/_____/_____

14   _____/_____/_____/_____

15   _____/_____/_____/_____

16

17

18                    _____
                       ABIGAIL DIAZ-PEDROSA
19

20   Sworn to and subscribed before me
     this _____ day of _____, 20___.
21

22   _____
     Notary Public.
23   My Commission Expires _____.

24

25   Job No. 538
```

**1**

**1** 5:5 27:23 28:14,19,21
**10** 10:11
**11** 5:6,8,18,21
**12** 5:18
**13** 5:19
**14** 5:15,19,20
**15** 5:7,19 10:13

**2**

**20** 13:1,3,7,9
**2004** 6:18
**2007** 11:10
**2009** 20:16
**2012** 9:7
**2014** 9:21
**2017** 10:4

**3**

**30(b)(6)** 4:3 5:2
**31** 13:21,23

**4**

**4:56** 32:25

**A**

**Abby** 4:23
**Abigail** 4:16,22
**accurate** 5:25
**acquire** 11:9
**acquired** 11:8,23
**acquisition** 11:11,12 12:2 15:13 24:18
**acted** 27:11,21
**action** 10:24 12:5 21:21 22:25

**actions** 17:19
**acts** 31:6
**administrative** 15:23 16:8 17:8 18:4 25:17 29:7
**advance** 18:18
**advice** 20:2,24 21:8,18, 21 22:5,25 23:18 26:7, 11 27:5 31:11
**advise** 21:4
**advised** 29:21
**advising** 19:11
**agree** 13:23 14:13
**agreeing** 27:24
**agreements** 5:11
**allegations** 16:4
**alleged** 13:13
**alleging** 13:11
**allowed** 4:6
**ambiguous** 16:1
**and/or** 25:25
**anymore** 24:1
**applicability** 17:8
**applied** 15:24
**appropriately** 15:24
**approval** 14:4 27:9
**Approve** 13:25 14:1
**approving** 14:16
**aspects** 16:4
**assistance** 17:3
**associate** 8:16 9:17
**athlete** 7:20,22
**Atlanta** 7:9 8:1
**attorney** 16:17,20 21:5, 6 28:10
**attorney/client** 23:10
**avoid** 27:10,25 28:17
**aware** 14:15 21:3

**B**

**back** 5:4 14:19 17:19
**background** 6:14
**based** 22:25
**basis** 29:23
**Beall** 10:15,23 14:21 15:1 17:9,22 21:2 23:14 27:4 28:23
**Beg** 28:6
**began** 8:12
**begin** 8:10
**beginning** 29:18
**behalf** 19:12 21:17 30:15
**belief** 27:11,20
**bill** 26:16
**billed** 26:8 27:6
**billing** 26:10
**Bob** 16:15 17:20 31:25
**brother-in-law** 7:1
**buckets** 18:19
**business** 18:16 25:21 26:3

**C**

**call** 10:1
**called** 10:7 14:25
**caption** 14:12
**case** 4:9 12:21 13:17 14:1,2,11,12,17 15:23 17:1 27:25 28:17
**categories** 24:14,17
**CEO** 10:22
**change** 9:19 10:2 20:1
**changed** 24:20,21
**chief** 10:1,2,5
**Circuit** 8:13

**City** 8:21
**Civil** 4:3,7
**classification** 18:10 20:25
**classified** 16:7 20:3 25:10 26:19
**classifying** 18:2
**clerked** 8:12
**clients** 18:17
**clue** 8:4
**collective** 10:24 12:4
**college** 6:16
**common** 12:1
**communicated** 31:21, 22
**communications** 19:8 32:9,12,13
**company** 10:19 11:6 15:22 17:6 18:8 19:8 21:12,23 23:5,18 26:8, 16 27:8,19 28:10 30:8, 15
**compliance** 26:7
**concluded** 32:25
**confines** 22:12,16
**confirm** 5:25 16:6 27:18
**confirmed** 18:1
**connection** 27:3
**consultant** 12:11
**consultants** 12:5,6 14:23 16:6 18:2,17 20:13,16,25 23:17 24:25 26:18 29:5 31:14 32:14
**context** 27:6
**continue** 15:13 19:16
**continued** 24:17 28:1, 18
**contract** 9:10,16
**contracts** 9:11,13



**conversations** 20:8, 10

**conveyed** 18:23

**copy** 13:24

**Cornell** 6:17,18

**corporate** 4:13 11:5 19:4 22:3 24:6,7 25:2 29:22 30:2 31:18

**corporation** 19:13

**correct** 5:2 10:18 11:4 13:12,18,19 14:11,23 18:10 20:13 27:12,22

**correctly** 28:3,4,13,15, 20

**costs** 27:25 28:17

**counsel** 4:9,11 9:17,25 10:8,10,14 16:12,19,23 21:18

**covered** 5:14

**criminal** 8:8

**cross-examination** 4:2

**customer** 15:3 23:15 24:23

**customers** 9:12 26:4

**D**

**D.C.** 6:16

**defendant** 4:12 11:2

**Defendants** 11:1

**depending** 25:22

**depose** 30:3

**deposed** 6:3

**deposing** 28:5,7

**deposition** 4:1,5 5:2 6:5 13:21 20:9 25:3 29:13,18 30:11 32:25

**depositions** 6:8

**describing** 32:13

**description** 12:10 24:10

**descriptions** 18:14

**designated** 4:25 5:19

**designation** 11:16 15:17 19:5,15 20:19 21:15 22:3 23:10 31:18

**designations** 24:8 27:1 29:10,19 30:6,9 32:17

**determination** 18:12

**determine** 32:11

**Diaz** 4:23 28:13

**Diaz-pedrosa** 4:16,22

**directed** 29:12

**direction** 29:15

**directly** 25:20

**discovery** 4:6

**discretion** 25:25

**discuss** 5:18

**discussed** 18:20

**District** 7:8,11

**docketing** 14:12

**document** 18:21

**documentary** 18:22 19:20

**documents** 9:14

**drafting** 9:11,13

**duly** 4:17

**duties** 14:22 24:1,3,23 25:20 26:1 29:5,6 31:13

**E**

**earlier** 12:12

**EDP** 11:3,5,8,9,21,24 15:11,13 24:10,15 25:22 26:3

**education** 15:4,6 23:16 24:23

**educational** 6:14

**Ellis** 8:16,21

**employed** 17:22 32:1

**employees** 11:20 14:22 17:9 23:14

**employing** 25:24

**encompass** 5:20

**end** 13:8,10

**Enterprises** 11:3

**entitled** 13:15

**entity** 11:5 25:24

**evidence** 18:22 19:20

**exact** 23:25

**EXAMINATION** 4:19

**examined** 4:17 12:11

**examples** 23:7

**exceeding** 25:19

**exception** 16:8

**Excuse** 8:18

**Executime** 11:12 12:2

**exempt** 13:14 16:8 18:2 25:10 26:19

**exemption** 15:24 17:8 18:4 23:19 25:17 29:7

**exercised** 25:25

**Exhibit** 5:5 13:21,23

**expense** 27:10

**expenses** 27:20

**express** 28:16

**expressed** 27:8

**F**

**F-A-L-M-O-U-T-H** 6:22

**fact** 25:24

**Falcons** 8:2

**Falmouth** 6:20

**familiar** 6:7

**Federal** 4:3,7

**fees** 27:25 28:17

**filed** 10:24 13:25 14:2, 10,14,16

**final** 14:1,3

**financial** 21:11,22 23:5

**find** 29:24 32:3,6

**finish** 22:8

**firm** 16:24 17:4

**FLSA** 12:4 13:14 18:3

**folks** 16:6

**Footnote** 27:14,23 28:14,19,21

**form** 12:13 15:15,25 17:10 20:17 21:13 23:2, 8,20 24:5 25:1 26:24 29:8 32:15

**FSLA** 10:24

**full** 4:21

**functions** 12:17 24:16

**funny** 8:3

**G**

**gave** 20:2

**general** 9:17,25 10:7, 10,14 14:24 15:20 25:21 26:3

**generally** 14:15,17

**Georgetown** 6:15

**Georgia** 6:23 7:8,12

**give** 23:7

**giving** 19:20

**graduated** 6:15,17

**Greene** 4:10

**group** 8:23 16:11

**H**

**half** 9:2

**happen** 9:18

**happened** 10:3

**head** 16:15

**heard** 7:22



**Herrington** 4:1,8,20
5:9,12,16,22,23 11:19
12:19 13:22 15:21 16:9
17:16 19:9,18 20:23
21:20,25 22:6,13,17,19
23:3,13,24 24:12 25:6,
12,14 26:21 27:7,14,17
28:5,7,12 29:12,24
30:17,25 31:23 32:20

**highest** 13:7

**Hillary** 4:12

**history** 8:8

**hold** 9:22

**hovered** 13:3

**HR** 16:15,16 17:21 32:1

**hundred** 20:12,15

---

**I**

**identified** 19:14 29:17

**identities** 5:13

**illegally** 27:11,21

**impact** 21:11,22

**impacts** 23:5

**implementation** 12:5,
6,11 14:23 16:6,7 18:2,
17 20:13,15,25 23:17
24:24 26:18 29:5 31:14
32:14

**in-house** 16:18

**included** 5:21 16:14
18:13

**independent** 25:25

**individually** 8:6

**individuals** 18:14

**information** 14:13
18:11,13,15,16,20 19:6,
19,21 29:3,25 31:3,7,12
32:4,7,8,12

**instances** 21:3

**instruct** 23:11 30:12

**internal** 16:11,13,20

**invades** 23:10

**investigate** 15:23

**investigated** 16:3

**investigation** 17:18

**involved** 26:3

**issue** 17:9

**issues** 21:10 23:4

---

**J**

**January** 10:4

**job** 9:4 12:10 14:22
15:14 18:13 24:3,10,22
29:5,6 31:13

**judge** 8:12 30:1

**judgment** 26:1

---

**K**

**kind** 7:25

**Kirkland** 8:16,21 9:3

**knowledge** 32:19

---

**L**

**large** 21:11,22

**law** 6:17 8:10 16:24

**lawsuit** 8:5 16:5 17:23
26:23 32:2

**lawyers** 16:25 17:4

**leaders** 16:16

**learn** 17:18

**legal** 4:21 10:1,2,5
20:24 21:8,18 22:5,25

**level** 14:24

**liaison** 15:4

**liaisons** 23:15 24:23

**limited** 5:12

**lines** 15:4

**litigation** 8:16,25
10:15,24 13:2 14:21
15:1 21:2 23:15 26:14
27:5,10,20 28:1,18

**live** 7:7,9

**living** 7:19

**long** 9:1,22 10:9

**looked** 16:5

**lower** 13:8

**Lynn** 10:8,9,14,19
16:14,17,18 17:20
20:11 31:25

---

**M**

**made** 19:23 22:6

**Maine** 6:20

**Make** 22:8

**making** 18:12 22:13

**marked** 5:5 13:21

**Matt** 7:16,20 32:24

**matters** 30:8

**Matthew** 4:8

**Mckeeby** 4:11 5:8,10,
14,17 11:13 12:13
15:15,25 16:24 17:1,7,
10,24 18:11 19:3,11,21
20:2,17 21:13,24 22:2,
9,15,18,24 23:8,20 24:5
25:1,9,11 26:2,16,20,24
27:13,16 28:2,6,8 29:4,
8,15 30:3,4,21 31:13,15
32:4,13,15,22

**Mckeeby's** 17:13 21:1
26:7

**Meeting** 25:19

**members** 17:21 32:1

**memory** 29:1

**minors** 7:17

**misclassified** 13:14

**Moore** 10:8,9,14,19
16:14,17,18

**Moran** 4:14

**mother** 7:21

**motion** 13:25 14:1,3,15
27:9

**motions** 14:5

**multiple** 16:3

---

**N**

**named** 12:24,25

**names** 7:15 17:5

**necessarily** 29:16

**needed** 29:22

**negotiating** 9:13

**nephews** 7:2,17

**nonetheless** 30:5

**nonexempt** 13:16
26:19

**north** 13:1,3

**Northern** 7:7,11

**notice** 22:12,16 25:3

**number** 13:3

**numbers** 5:25

---

**O**

**object** 11:13,14 12:13
15:15,25 17:10 19:3
20:17 21:13 23:8,20
24:5 25:1 26:24 29:8
32:15

**objection** 21:24 22:2,8,
24 26:20 29:23 30:21
31:15,17

**objections** 22:7,14

**obtain** 21:8

**office** 8:22

**officer** 10:1,2,5

**operations** 25:21 26:3

**opinion** 17:7,14

**opposed** 26:13

**opt-in** 12:23,24,25

**opt-outs** 13:5,10

**oral** 19:2

**order** 14:16



**overlapped**  24:24

**overtime**  13:11,16 18:3

**owned**  11:6

---
**P**
---

**P-E-D-R-O-S-A**  4:22

**p.m.**  32:25

**paid**  13:16

**pardon**  28:6

**part**  5:20 16:4 27:24 28:17 31:10

**partially**  23:17

**parties**  5:13

**party**  8:5

**Pasch**  4:12 12:11

**past**  30:10

**Paulo**  4:11 6:1 16:24 17:3 21:4 31:9

**Paulo's**  17:14

**people**  15:10

**perform**  14:23

**performed**  12:16 16:10 25:23 27:3 32:10,14

**performing**  12:9 23:25 26:1

**period**  25:22

**perspective**  26:17

**phrased**  30:24 31:1

**Plaintiff**  4:9

**plaintiffs**  12:9,21,23,24

**played**  15:10

**point**  13:5 14:11 23:18

**portion**  22:22 28:14,19 30:19

**position**  9:8,15,23 10:21 30:7

**possesses**  32:11

**potentially**  21:11,22

**practice**  8:23 15:20

**preexisting**  15:14

**preliminaries**  6:10

**prepare**  29:22

**prepared**  30:5,14

**preparing**  20:8

**present**  4:11 9:7 30:7

**presenting**  29:17

**President**  10:22

**previously**  5:4 28:20

**primary**  25:20 26:1

**prior**  18:12

**privilege**  23:11

**problem**  31:5

**Procedure**  4:4,7

**prongs**  25:16 29:7 31:8,10

**proper**  22:7

**properly**  16:7 18:1 19:14 20:3 25:10 29:21

**provide**  29:3 30:8

**provided**  18:20 19:7 27:5 29:4 31:7,11,12 32:7

**providing**  26:11,22

**provisions**  18:3

**purposes**  4:5,6 26:18

**pursuant**  4:3

---
**Q**
---

**quarterback**  8:1

**question**  11:14,15 12:14 15:16 16:1,21 17:11 19:4,14,17 20:18 21:14 22:20 23:9,21 24:6 25:2 26:15,25 27:16 28:11 29:9,20 30:12,15,16,17,23 31:6 32:16

**questions**  22:5 32:22

---
**R**
---

**R-Y-A-N**  7:5

**reaction**  16:5

**read**  22:23 28:2,4,13, 14,19 30:17,20

**reason**  14:7,9

**recall**  15:2

**receive**  21:17

**reclassified**  13:15 15:12 23:16

**record**  4:12 22:23 30:20

**records**  26:10 32:11

**reduced**  20:4,6 21:8

**reducing**  22:1

**references**  15:3

**referred**  10:23 15:1

**referring**  5:4

**refresh**  29:1

**regularly**  17:15 21:17

**related**  9:14 25:21

**relates**  5:10

**relatives**  6:23

**remained**  13:9

**remember**  9:20 15:5 17:4 31:3

**repeated**  22:21

**replace**  29:13

**reporter**  22:23 30:20

**representation**  21:1 26:13,22 27:4 28:23

**representative**  4:13 24:7 28:9,10 29:22 30:2 31:18

**representing**  28:9

**requested**  22:22 30:19

**requiring**  23:1

**reside**  6:19

**resolve**  27:24

**resolved**  14:18

**resolving**  28:16

**resources**  16:12,13

**review**  16:10,21 17:2 26:17

**role**  12:7 16:7 18:15

**roles**  12:7 13:13 15:10

**Rules**  4:3,7

**Ryan**  7:4,16

---
**S**
---

**S-A-N-S-O-N-E**  16:15

**salary**  25:19

**Sansone**  16:15

**Sarah**  7:16,20

**satisfied**  25:16 29:6 31:9

**satisfy**  31:8

**school**  6:17 8:11

**scope**  11:13,15 15:16 19:4 20:18 21:14 22:3 23:9 24:6 25:2 26:25 29:9 31:17 32:16

**search**  19:23 32:10

**semantically**  31:2

**semantics**  31:5

**sense**  13:2

**separately**  26:17

**settled**  12:22,25 13:1,2, 18 14:11 27:19

**settlement**  5:11 13:25 14:1,4,16,18 27:9

**settling**  27:9

**share**  12:1

**shared**  14:22

**showing**  18:22

**significant**  23:4

**similar**  11:12



Greene vs Tyler Technologies      30(b)(6) Abigail Diaz-Pedrosa

10/09/2019
Index: simple..York

**simple**  26:13

**simply**  26:22

**sir**  13:6

**sister**  7:1

**skip**  6:10

**software**  11:23

**solicit**  17:7 20:24

**soliciting**  17:13

**speak**  5:1 15:20 30:5

**speaking**  22:7,14

**specialist**  9:10,16 15:5

**specialists**  23:16 24:24

**specific**  15:9 21:3

**specifically**  15:19

**spell**  6:21

**spend**  28:22

**spoke**  17:20,21

**sport**  7:25

**sports**  7:23

**state**  4:21

**stated**  27:19 30:6

**stay**  22:11,16

**stay-at-home**  7:21

**stop**  22:13

**structurally**  11:11

**substance**  19:7 31:21 32:8

**sued**  15:22

**suggest**  22:4

**summarized**  6:1 28:21

**summary**  27:22

**Suzanne**  4:9

**swear**  4:14

**sworn**  4:17

**sympathies**  8:20

---
**T**
---

**talk**  5:6

**talked**  24:19

**talking**  31:25

**team**  17:14,21 32:1

**Technologies**  4:2 5:1 10:25 11:7 19:20 20:12 21:7

**telling**  19:9

**test**  29:7 31:8,10

**testimony**  30:8

**threshold**  25:20

**time**  10:7,15,17 16:18 17:6,22 20:4 21:1 25:23,24 26:12 31:4 32:2

**title**  15:7

**titles**  15:14 24:20

**today**  5:1

**told**  18:5,7,9 26:2

**top**  14:13

**topic**  5:8,15,18,21,24 11:15 15:16 19:13,15 20:18 21:14 23:9 24:7 26:25 29:9,18 30:5 32:16

**topics**  5:1,6 31:18

**Totenberg**  30:1

**trainer**  15:3 24:4

**trainers**  23:15 24:11,23

**training**  18:15

**translated**  12:17

**trouble**  31:2

**Tyler**  4:2,25 9:4,5,9 10:17,25 11:1,7,8 15:13 16:3,5,11,19 17:14,22 18:1,7,9 19:20,25 20:3, 12 21:7,18 24:18 25:11, 22 26:4 27:4,24 28:22 32:1,10

**Tyler's**  15:20 18:16

---
**type**  18:14

**typical**  21:7

---
**U**
---

**Uh-huh**  8:14 18:25 29:2

**ultimately**  12:21 13:18 14:18

**understand**  26:15 30:4

**understanding**  5:5,20 6:2 11:22

**University**  6:16

---
**V**
---

**vague**  16:1

**verbal**  21:19,21

**verbally**  23:1

**versus**  26:22

**violations**  13:11

---
**W**
---

**wage**  18:3

**wages**  13:16

**Washington**  6:16

**word**  15:6

**work**  6:8 12:9 25:23 27:3 32:13

**worked**  17:1

**working**  8:10

**writing**  18:23,24 20:4,7 21:8 22:1 32:5,7

**written**  23:2

**wrong**  31:1

---
**Y**
---

**year**  8:15

**years**  9:2,24 10:11,13

**York**  8:21

