```
 1            IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF GEORGIA
 2                    ATLANTA DIVISION

 3   SUZANNE GREENE,            )
                                )
 4            Plaintiff, ) Civil Action No.
                                ) 1:19-cv-01338-AT
 5   VS                         )
                                )
 6   TYLER TECHNOLOGIES, INC.,  )
                                )
 7            Defendant. )

 8

 9   _____

10    VIDEOTAPED VIDEOTELECONFERENCED ORAL DEPOSITION OF

11                     LYNN MOORE

12               NOVEMBER 26, 2019

13   _____

14

15          ORAL DEPOSITION OF LYNN MOORE, produced as a

16   witness duly sworn by me at the instance of the

17   Plaintiff, was taken in the above styled and numbered

18   cause on the 26th day of November, A.D., 2019 from

19   10:02 a.m. to 10:26 a.m., before Kellie L. Rowbotham,

20   CSR in and for the State of Texas, reported by

21   stenographic means, at the offices of ReedSmith, LLP,

22   located at 2501 N. Harwood, Suite 1700, Dallas, Texas

23   75201, pursuant to the Federal Rules of Civil

24   Procedure and the provisions stated on the record or

25   attached hereto.
```



```
1                    A P P E A R A N C E S

2

3    FOR THE PLAINTIFF:

4         Mr. Matthew W. Herrington (via VTC)
          DELONG CALDWELL BRIDGERS
5         FITZPATRICK & BENJAMIN, LLC
          3100 Centennial Tower
6         101 Marietta Street
          Atlanta, Georgia 30303
7              (404) 979-3150
               (404) 979-3170 fax
8              matthew.herrington@dcbflegal.com

9

10   FOR THE DEFENDANT:

11        Mr. Paulo B. McKeeby
          REED SMITH
12        2501 N. Harwood Street
          Suite 1700
13        Dallas, Texas  75201
               (469) 680-4227
14             (469) 680-4299 fax
               pmckeeby@reedsmith.com

15

16

17   ALSO PRESENT:

18        Ms. Abigail Diaz - In-house Counsel
          Mr. Cody Madro - Videographer
19

20

21

22

23

24

25
```



1                          INDEX

2                                               PAGE
     Appearances......................................2

3    Stipulations.....................................4

4    LYNN MOORE
5          Examination by Mr. Herrington ...............4

6    Signature and Changes...........................27

7    Reporter's Certificate..........................24

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



```
 1              P R O C E E D I N G S

 2              THE REPORTER:  Would you like to state

 3    any agreements before we go on the video record?

 4              MR. MCKEEBY:  No.  Just taking it

 5    pursuant to the Federal Rules of Civil Procedure is

 6    our agreement?

 7              MR. HERRINGTON:  That's right.

 8              VIDEOGRAPHER:  This is the videotaped

 9    deposition of Lynn Moore being held in Dallas, Texas.

10    The time is now 10:02 a.m. on November 26, 2019.  We

11    are now on record.  At this time will the counsel

12    please introduce themselves and whom they represent,

13    and the witness will then be sworn in.

14              MR. HERRINGTON:  I am Matthew

15    Herrington in Atlanta, Georgia by video conference.

16    I represented the Plaintiff Suzanne Greene.

17              MR. MCKEEBY:  And I am Paulo McKeeby

18    here in Dallas, and I represent Defendant Tyler

19    Technologies.

20                      LYNN MOORE,

21    having been first duly sworn, testified as follows:

22              MR. HERRINGTON:  And could we establish

23    who else is present for the deposition?

24              MR. MCKEEBY:  Abigail Diaz is present

25    by telephone.
```



1                    MR. HERRINGTON:  I'm sorry.  Who is

2    that?

3                    MR. MCKEEBY:  Ms. Diaz, in-house

4    counsel for Tyler, whom you're familiar, is appearing

5    by telephone.

6                    MR. HERRINGTON:  Okay.

7                    All right, Ms. Rowbotham.  Will you

8    please swear in the witness?

9                    THE REPORTER:  I just did.

10                   MR. HERRINGTON:  Okay.  I didn't catch

11   it.  All right.  So this is the deposition by

12   cross-examination of Lynn Moore taken in civil action

13   Greene versus Tyler Technologies, Inc., Civil Action

14   1:19-cv-01338 pending in the Northern District of

15   Georgia.  My name is Matthew Herrington.

16                        EXAMINATION

17   BY MR. HERRINGTON:

18       Q   Mr. Moore, you are an attorney, correct?

19       A   Yes.

20       Q   Okay.  Can you tell me where you went to law

21   school?

22       A   University of Texas in Austin.

23       Q   And what year did you graduate?

24       A   1992.

25       Q   And when you left law school what was your



```
1   first area of practice?

2        A   My first area of practice was litigation.

3        Q   Any specific area?

4        A   General litigation.

5        Q   Any specific employment with litigation

6   experience?

7        A   No.

8        Q   All right.  Any -- what was your first

9   non-litigation position?

10       A   I moved to the corporate security section of

11  the law firm I was at.

12       Q   All right.  And your next non-litigation

13  position?

14       A   I was in that position for a little over

15  four years before I went in-house to Tyler

16  Technologies.

17       Q   Okay.  And you were in-house counsel when

18  you moved to Tyler Technologies?

19       A   Yes.  I started as general counsel.

20       Q   Okay.  What year was that?

21       A   1998.

22       Q   Do you have any family in Georgia?

23       A   No.

24       Q   Now, you're familiar with the Beall,

25  B-e-a-l-l, litigation?
```



1     A   Yes, sir.

2     Q   Okay.  And that was wage-an-hour litigation

3  filed in 2008, I believe, against Tyler

4  Technologies?

5     A   I'm familiar with it.  I don't remember the

6  date.

7     Q   Okay.  You were general counsel at the time

8  of that litigation, correct?

9     A   Correct.

10    Q   And following the conclusion of that

11  litigation you became general counsel -- I'm sorry --

12  the CEO of Tyler Technologies?

13    A   No.

14            MR. MCKEEBY:  Object to the form of the

15  question.

16            You can answer.

17    A   It was --

18    Q   Did you become -- let me rephrase it.  Did

19  you become the CEO of Tyler Technologies after the

20  conclusion of the Beall litigation?

21    A   Yes.

22            MR. MCKEEBY:  Same objection.

23    A   Yes.

24    Q   Do you have any ownership interest in Tyler

25  Technologies?



1       A    I do.

2       Q    Okay.  What is that interest?

3       A    I own stock.  I own some restricted stock

4  units, and I own some options.

5       Q    Okay.  Can you state what percentage of

6  Tyler stock you own?

7       A    It's less than one percent.  Very small.

8       Q    Excuse me?  Less than one percent?

9       A    Less than one percent.  Very small.

10       Q    It is sort of difficult for me to hear you.

11  So, you know, I can make it out most of the time, but

12  I do have lapses where I can't quite make it out.

13       A    I'll try to speak up.

14       Q    Are you familiar -- are you familiar with

15  the Plaintiff in this case, Suzanne Greene?

16       A    Familiar -- I'm familiar there's a lawsuit.

17  I don't know who she is.

18       Q    Okay.  You've never met her?

19       A    No.

20       Q    Now, during the course of the Beall

21  litigation Mr. McKeeby -- Paulo McKeeby -- was the

22  counsel for Tyler Technologies, correct?

23       A    Correct.

24       Q    Okay.  And you communicated with Mr. McKeeby

25  during that litigation?



1      A   Yes, I did.

2      Q   Okay.  Can you state how often that

3   communication occurred?

4      A   It was on a -- it was on a regular basis.

5      Q   Can you state how frequently?

6      A   It was -- it was a multi-year litigation,

7   and I actively participated.  It was -- I was engaged

8   actively with Paulo throughout the litigation.

9      Q   Did you speak with him more than once a

10  week?

11              MR. MCKEEBY:  Object to the form of the

12  question as ambiguous.

13              You can answer.

14      A   My recollection is I spoke with him

15  frequently.  There may have been weeks I didn't, but

16  there were plenty of weeks where I spoke with him

17  multiple times of week, and there would have been

18  weeks I spoke with him every day because I traveled

19  with him.

20      Q   Okay.  Did you have communication with

21  Mr. McKeeby about the proper classification of any

22  employees at Tyler Technologies as exempt from the

23  FLSA it --

24              THE REPORTER:  I'm sorry.  Can you say

25  the last part of that again?



1      Q   Did you have any communications with

2   Mr. McKeeby during the Beall litigation about the

3   proper classification of any Tyler Technologies

4   employees as exempt from the FLSA overtime

5   requirements or non-exempt?

6              MR. MCKEEBY:  Let me lodge a form

7   objection as to the form of the question.  The

8   witness may answer.

9      A   Yes.  We talked a lot about the exempt

10   non-exemption issue.

11      Q   Okay.  Can you tell me how often those

12   conversations occurred?

13      A   It was -- again, it was somewhat a regular

14   basis.  We talked about -- it was on a regular basis.

15      Q   Were you having conversations about the case

16   itself or about the perspective decision to continue

17   classifying employees as exempt or non-exempt?

18      A   We talked specifically about the case.  We

19   talked specifically about the requirements of

20   exemption and non-exemption.  We talked specifically

21   about our classifications within Tyler in that

22   context.

23      Q   Okay.  Which employee specifically did you

24   have conversations with Mr. McKeeby -- excuse me.

25   About which specific employees' classification did



1  you have communications with Mr. McKeeby?

2      A   Are you asking for individual employee

3  names?

4      Q   No.  I'm asking for positions.

5      A   Positions.  Well, there were -- to my

6  recollection, there were multiple positions who were

7  asserting claims in the Beall litigation.  Some were

8  implementation consultants.  Some were support.  I

9  believe some were software engineers.  There may have

10 been another category, but those are the ones I

11 specifically recall today.

12     Q   Mr. Moore, Tyler's -- Tyler Technologies has

13 testified that at the time of the Beall litigation

14 that implementation consultants were not a job

15 category and that there were three other job

16 positions that were later reconfigured as

17 implementation consultants.  Is that correct?

18              MR. MCKEEBY:  Object to the form of the

19 question.

20              You can answer.

21     A   I don't know what anybody's testified in

22 this litigation.  I don't -- that's not my

23 recollection.  My recollection and understanding is

24 implementation consultants.

25              MR. MCKEEBY:  Was the title.



1              THE WITNESS:  Was the title.

2      Q   So you're not familiar with three separate

3  positions called trainer, customer liaison and

4  education specialist?

5      A   As you say that, I am now familiar with

6  that.  To me they were all part of the implementation

7  consultant role.

8      Q   So there were three different jobs?

9      A   Tell me those positions again.  Trainer --

10     Q   Customer liaison and education specialist.

11     A   My understanding is there may have been some

12 that were class -- that were called that.  But it's

13 also my understanding that those are functions that

14 are contained within the implementation consultant

15 role.

16     Q   To what degree did the implementation

17 consultant role overlap with those?

18              MR. MCKEEBY:  Object to the form of the

19 question.

20              You can answer.

21     A   Implementation consultants provide training.

22 Implementation consultants are client liaisons.

23 Implementation consultants do -- I can't remember now

24 the third thing you said.

25     Q   Did those three positions have any job



1   duties that implementation consultants do not have?

2       A   I'm not familiar enough with the specific

3   duties of those.  They were -- we had different

4   divisions, different companies who may called things

5   differently.

6              MR. MCKEEBY:  You've answered his

7   question.

8       Q   Did Mr. McKeeby advise you that

9   implementation consultants, or these three

10  positions -- let me back up.

11             Did Mr. McKeeby give you advice about

12  the classification of implementation consultants

13  generally or specific to those three types of

14  implementation consultants?

15      A   Mr. McKeeby gave me advice on the exemptions

16  around FLSA and exceptions, and we discussed the

17  roles of various job titles and duties that were part

18  of that lawsuit.

19      Q   I'm going to repeat my question.  Did you

20  get advice from Mr. McKeeby about the classification

21  of implementation consultants generally or about each

22  specific type of implementation consultant?

23             MR. MCKEEBY:  Well, let me lodge

24  another form objection.

25             You can answer.



1      A   Yes.  He gave me advice generally.  And,
2  yes, we discussed the Plaintiffs in the lawsuits
3  specifically.
4      Q   Did you get advice about each of the
5  specific types of implementation consultants
6  individually --
7              MR. MCKEEBY:   Object --
8      Q   -- rather than -- rather than the
9  implementation consultants generally?
10             MR. MCKEEBY:   Object to the form.
11 You're mischaracterizing his testimony about them
12 being specific jobs.  He simply said that those
13 duties overlap with what he understood implementation
14 consultants to do, not that they were necessarily
15 distinct positions at Tyler.  That's not his
16 testimony.
17     Q   Is it not your testimony that trainer,
18 customer liaison position and education specialist
19 position were not three different types of
20 implementation consultants?
21     A   I don't know the answer to that.  I know
22 that implementation consultants perform those
23 functions.
24     Q   Is it correct that Mr. McKeeby's advice to
25 you was never put into writing?



1      A    I don't recall any written -- anything in

2    writing on his legal advice.

3      Q    Have you made any attempts to find

4    communications with Mr. McKeeby in writing about the

5    classification of Tyler Technologies' implementation

6    consultants?

7      A    Yes.

8      Q    What kind of efforts did you make?

9      A    Mr. McKeeby asked if I could -- if I had

10   anything in writing, and I searched my files.

11     Q    Did you search your e-mails?

12     A    Yes.

13     Q    Okay.  What kind of search did you run on

14   your e-mails?

15     A    I used to have a file for litigation

16   matters.  There was a file for the FLSA litigation,

17   and I searched to see if there was anything there.

18     Q    Okay.  What kind of search?  Did you

19   manually search through each e-mail?  Did you do a

20   key-word search?

21     A    I searched to see if the folder was there,

22   and the folder did no longer exist.

23     Q    Okay.  So it's been destroyed?

24          MR. MCKEEBY:  Object to the form of the

25   question.



 1                    You can answer.

 2        A    I cleaned out my litigation files when I

 3   changed from general counsel to president of the

 4   company.

 5        Q    And the company does not maintain those

 6   files on its servers separately from your own

 7   computer?

 8        A    No because -- no.  Actually, let me amend

 9   that.  I don't know.  I don't believe so.

10        Q    Can you tell me specifically what advice

11   Mr. McKeeby gave to you regarding the classification

12   of implementation consultants?

13        A    I recall discussing the administrative

14   exemption, and I recall discussing the general duties

15   of implementation consultants as well as the specific

16   duties of certain Plaintiffs throughout the

17   litigation.  And he advised me that they were

18   properly classified as exempt.

19        Q    Okay.  When you say, "certain Plaintiffs,"

20   there are Plaintiffs in the case that were not

21   implementation consultants, correct?

22        A    Correct.

23                    MR. MCKEEBY:  But your question --

24        Q    So you had --

25                    MR. MCKEEBY:  -- you selected



1  "implementation consultants," and that was the

2  question he answered.

3      Q   So you had conversations about specific

4  implementation consultant Plaintiffs in the case?

5      A   Yes.

6      Q   Okay.   The Beall litigation -- I'll

7  represent to you if you don't recall -- was filed in

8  2008.  And I'll represent to you that in

9  Mr. McKeeby's and Morgan Lewis' billing records the

10  only reference to any discussion with you about the

11  classification status of implementation consultants

12  occurred in February of 2011, more than two years

13  after the litigation began.  Does that surprise you?

14      A   It doesn't surprise me because I don't know

15  why Paulo writes what he writes to invoice.

16      Q   Do you know what documents specifically were

17  provided to Mr. McKeeby to determine whether the

18  implementation consultants were exempt or non-exempt?

19              MR. MCKEEBY:   Object to the form of the

20  question.  Establishes a false predicate.

21              You can answer.

22      A   No.

23      Q   Did Mr. McKeeby tell you how he came to the

24  decision that the implementation consultants were

25  exempt from the FLSA's overtime requirements?



1      A    We discussed the administrative exemption.
2   I don't -- I mean, I don't -- I mean, I don't recall
3   him telling me what created his decision other than
4   discussing the positions and the -- and the general
5   administrative exemption under the FLSA.
6      Q    Are you familiar with the factors that go
7   into the analysis of the FLSA's administrative
8   exemption?
9      A    Today I can recall some of it.  Back then I
10  was much more familiar.
11     Q    Okay.  Are you familiar with the part
12  about -- the use of independent judgment and
13  discretion?
14     A    Yes.
15     Q    Okay.  Did Mr. McKeeby go through his
16  analysis with you of the types of independent
17  judgment and discretion that he found that the
18  implementation consultants exercised?
19     A    Yes.
20     Q    Okay.  And can you restate the contents of
21  that analysis for me?
22     A    I can't restate it in its totality.  I can
23  recall certain discussions.  And I would say it's
24  different to say it was just his analysis.  It also
25  came from interviewing our people internally to



1   understand the job functions, talking with HR,

2   understanding exactly specific Plaintiffs, talking in

3   deposition.  So there was a lot behind just him

4   providing me analysis.  It was just a -- it was a

5   broad -- it was a learning experience within the

6   company.

7        Q   Do you know if Mr. McKeeby reviewed any work

8   product from the implementation consultants to see if

9   your job -- their actual job duties were the same as

10  those in the written job descriptions?

11       A   I believe so.

12       Q   Do you know specifically whether he did that

13  or not?

14       A   My recollection is he did.  But it's ten

15  years old.

16       Q   Okay.  Well, what work product did he

17  review?

18       A   My recollection is he -- I think he looked

19  at calendars.  He looked at training guides.  He

20  looked at scheduling.  And if work product is also by

21  interviewing witnesses, that was also work product he

22  reviewed.

23       Q   I'm talking about written work product

24  produced by implementation consultants during the

25  regular course of their job duties, not during



1  discussions with Mr. McKeeby.  I'm talking about

2  previously-created work product in a typical

3  implementation.  Did he review any of that?

4      A   My recollection is that he did.

5      Q   Okay.  And what specific types did he

6  review?

7      A   My recollection is he looked at calendars

8  and he looked at training materials that were

9  prepared by implementation consultants on each

10 particular job, things of that nature.

11     Q   Did he explain what parts of the training

12 materials created by implementation consultants

13 demonstrated their exercise of discretion and

14 independent judgment?

15     A   I don't recall.

16     Q   Okay.  Did Mr. McKeeby ever have a

17 discussion with you about the meaning of general

18 business activities within the meaning of the FLSA

19 administrative exemption?

20     A   Say that term again.  General business

21 activities?

22     Q   Yes.

23     A   I don't -- I don't recall that.

24     Q   Okay.  Did Mr. McKeeby shadow any of the

25 implementation consultants to watch them do their



1  jobs?

2       A   Are you asking did he go on client sites and

3  watch our people?

4       Q   Or on video when they were working by video.

5       A   No.  Not that I know of.

6       Q   So did Mr. McKeeby speak to implementation

7  consultants themselves or only management supervisors

8  and HR?

9       A   Both.

10      Q   He did speak to implementation consultants

11  themselves?

12      A   Sure.

13      Q   Do you know with which implementation

14  consultants he spoke with?

15      A   I can't specifically name them.  But to

16  the -- yeah.

17      Q   Well, the three types; trainer, customer

18  liaison and education specialist, can you state with

19  certainty whether he spoke to each type?

20            MR. MCKEEBY:  Again, objection.  That

21  mischaracterizes his testimony as to duties as

22  opposed to --

23            MR. HERRINGTON:  It does not accurately

24  testify the company's testimony.

25            MR. MCKEEBY:  I don't think so.



```
 1                 But go ahead.
 2                 MR. HERRINGTON:  I can read it to you
 3      if you'd like.
 4                 MR. MCKEEBY:  What are you reading from
 5      so that we know?
 6                 MR. HERRINGTON:  Ms. Diaz's 30(b)(6)
 7      deposition on behalf of the company.
 8                 MR. MCKEEBY:  Well, whatever Ms. Diaz
 9      testified to, this witness has indicated that he has
10      a different understanding as to the difference
11      between job functions and job titles.  But if you
12      want to read something into the record, feel free.
13                 MR. HERRINGTON:  I'm all right.
14      Q    Does the company maintain any files on its
15      litigation other than those that were in your own
16      e-mail?
17                 MR. MCKEEBY:  Object to the form of the
18      question.  Vague and ambiguous.
19                 You can answer.
20      A    I don't believe so.
21      Q    That's everything.
22                 MR. MCKEEBY:  Thank you.
23                 MR. HERRINGTON:  Thank you.
24                 MR. MCKEEBY:  No questions at this
25      time.
```



```
 1                    VIDEOGRAPHER:  The time is now 10:26
 2    a.m.  We are now off record.
 3                    (End of proceedings.)
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



1            REPORTER'S CERTIFICATION

2

3      I, KELLIE L. ROWBOTHAM, a Certified Shorthand

4  Reporter in and for the State of Texas, do hereby

5  certify:

6      That the foregoing witness was by me duly sworn;

7  that the deposition was then taken before me at the

8  time and place herein set forth; that the testimony

9  and proceedings were reported stenographically by me

10  and later transcribed into typewriting under my

11  direction; that the foregoing is a true record of the

12  proceedings had.

13      That before the conclusion of the deposition,

14  the witness has requested a review of this transcript

15  pursuant to Rule 30(e)(1).

16      IN WITNESS WHEREOF, I have subscribed my name

17  this 30th day of November, 2019.

18

19  

20  _____
   KELLIE L. ROWBOTHAM, Texas CSR 4351
21  Expiration Date: 12/31/19

22  ESQUIRE DEPOSITION SERVICES
   Firm Registration No. 286
23  1700 Pacific Avenue
   Suite 1000
24  Dallas, Texas  75201
   214.257.1436

25



1                    DEPOSITION ERRATA SHEET

2    Esquire Assignment No. J4649287

3              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF GEORGIA
4                       ATLANTA DIVISION

5    SUZANNE GREENE,              )
                                  )
6               Plaintiff, ) Civil Action No.
                             ) :19-cv-01338-AT
7    VS                      )
                             )
8    TYLER TECHNOLOGIES, INC.,  )
                               )
9               Defendant. )

10

11         DECLARATION UNDER PENALTY OF PERJURY

12

13       I declare under penalty of perjury that I have

14    read the entire transcript of my Deposition taken in

15    the above-captioned matter or the same has been read

16    to me, and the same is true and accurate, save and

17    except for changes and/or corrections, if any, as

18    indicated by me on the DEPOSITION ERRATA SHEET

19    hereof, with the understanding that I offer these

20    changes as if still under oath.

21       Signed on the _____ day of _____,

22    2019.

23

24
                         _____
25                       LYNN MOORE



1  STATE OF _____  )

2  COUNTY OF _____  )

3          Before me, _____, on this

4  day personally appeared _____, known

5  to me (or proved to me on the oath of _____

6  or through _____) (description of

7  identity card or other document) to be the person

8  whose name is subscribed to the foregoing instrument

9  and acknowledged to me that he executed the same for

10 purposes and consideration therein expressed.

11

12      Given under my hand and seal of office this

13 _____ day of _____, A.D., 2019.

14

15

16

17

18 _____
   NOTARY PUBLIC IN AND FOR THE
19 STATE OF TEXAS

20

21

22

23

24

25



1    DEPOSITION ERRATA SHEET

2    Page No. _____ Line No. _____ Change to: _____

3    _____

4    Reason for change: _____

5    Page No. _____ Line No. _____ Change to: _____

6    _____

7    Reason for change: _____

8    Page No. _____ Line No. _____ Change to: _____

9    _____

10   Reason for change: _____

11   Page No. _____ Line No. _____ Change to: _____

12   _____

13   Reason for change: _____

14   Page No. _____ Line No. _____ Change to: _____

15   _____

16   Reason for change: _____

17   Page No. _____ Line No. _____ Change to: _____

18   _____

19   Reason for change: _____

20   Page No. _____ Line No. _____ Change to: _____

21   _____

22   Reason for change: _____

23   Page No. _____ Line No. _____ Change to: _____

24   _____

25   Reason for change: _____



1            DEPOSITION ERRATA SHEET CONTINUED

2    Page No. _____ Line No. _____ Change to: _____

3    _____

4    Reason for change: _____

5    Page No. _____ Line No. _____ Change to: _____

6    _____

7    Reason for change: _____

8    Page No. _____ Line No. _____ Change to: _____

9    _____

10   Reason for change: _____

11   Page No. _____ Line No. _____ Change to: _____

12   _____

13   Reason for change: _____

14   Page No. _____ Line No. _____ Change to: _____

15   _____

16   Reason for change: _____

17   Page No. _____ Line No. _____ Change to: _____

18   _____

19   Reason for change: _____

20   Page No. _____ Line No. _____ Change to: _____

21   _____

22   Reason for change: _____

23   Page No. _____ Line No. _____ Change to: _____

24   _____

25   Reason for change: _____



**1**

10:02
    4:10
10:26
    23:1
1992
    5:24
1998
    6:21
1:19-cv-
01338
    5:14

**2**

2008
    7:3 17:8
2011
    17:12
2019
    4:10
26
    4:10

**3**

30(b)(6)
    22:6

**A**

a.m.
    4:10 23:2
Abigail
    4:24
accurately
    21:23

action
    5:12,13
actively
    9:7,8
activities
    20:18,21
actual
    19:9
administrat
ive
    16:13
    18:1,5,7
    20:19
advice
    13:11,15,
    20 14:1,
    4,24 15:2
    16:10
advise
    13:8
advised
    16:17
agreement
    4:6
agreements
    4:3
ahead
    22:1
ambiguous
    9:12
    22:18
amend
    16:8
analysis
    18:7,16,
    21,24
    19:4
anybody's
    11:21
appearing

5:4
area
    6:1,2,3
asserting
    11:7
Atlanta
    4:15
attempts
    15:3
attorney
    5:18
Austin
    5:22

**B**

B-E-A-L-L
    6:25
back
    13:10
    18:9
basis
    9:4 10:14
Beall
    6:24 7:20
    8:20 10:2
    11:7,13
    17:6
began
    17:13
behalf
    22:7
billing
    17:9
broad
    19:5
business
    20:18,20

**C**

calendars
    19:19
    20:7
called
    12:3,12
    13:4
case
    8:15
    10:15,18
    16:20
    17:4
catch
    5:10
category
    11:10,15
CEO
    7:12,19
certainty
    21:19
changed
    16:3
civil
    4:5 5:12,
    13
claims
    11:7
class
    12:12
classificat
ion
    9:21
    10:3,25
    13:12,20
    15:5
    16:11
    17:11
classificat
ions

10:21
classified
    16:18
classifying
    10:17
cleaned
    16:2
client
    12:22
    21:2
communicate
d
    8:24
communicati
on
    9:3,20
communicati
ons
    10:1 11:1
    15:4
companies
    13:4
company
    16:4,5
    19:6
    22:7,14
company's
    21:24
computer
    16:7
conclusion
    7:10,20
conference
    4:15
consultant
    12:7,14,
    17 13:22
    17:4
consultants
    11:8,14,



17,24
12:21,22,
23 13:1,
9,12,14,
21 14:5,
9,14,20,
22 15:6
16:12,15,
21 17:1,
11,18,24
18:18
19:8,24
20:9,12,
25 21:7,
10,14

**contained**
12:14

**contents**
18:20

**context**
10:22

**continue**
10:16

**conversatio
ns**
10:12,15,
24 17:3

**corporate**
6:10

**correct**
5:18 7:8,
9 8:22,23
11:17
14:24
16:21,22

**counsel**
4:11 5:4
6:17,19
7:7,11
8:22 16:3

**created**
18:3
20:12

**cross-
examination**
5:12

**customer**
12:3,10
14:18
21:17

───────────

**D**

───────────

**Dallas**
4:9,18

**date**
7:6

**day**
9:18

**decision**
10:16
17:24
18:3

**Defendant**
4:18

**degree**
12:16

**demonstrate
d**
20:13

**deposition**
4:9,23
5:11 19:3
22:7

**description
s**
19:10

**destroyed**
15:23

**determine**
17:17

**Diaz**
4:24 5:3

22:8

**Diaz's**
22:6

**difference**
22:10

**differently**
13:5

**difficult**
8:10

**discretion**
18:13,17
20:13

**discussed**
13:16
14:2 18:1

**discussing**
16:13,14
18:4

**discussion**
17:10
20:17

**discussions**
18:23
20:1

**distinct**
14:15

**District**
5:14

**divisions**
13:4

**documents**
17:16

**duly**
4:21

**duties**
13:1,3,17
14:13
16:14,16
19:9,25
21:21

───────────

**E**

───────────

**e-mail**
15:19
22:16

**e-mails**
15:11,14

**education**
12:4,10
14:18
21:18

**efforts**
15:8

**employee**
10:23
11:2

**employees**
9:22
10:4,17

**employees'**
10:25

**employment**
6:5

**end**
23:3

**engaged**
9:7

**engineers**
11:9

**establish**
4:22

**Establishes**
17:20

**EXAMINATION**
5:16

**exceptions**
13:16

**excuse**
8:8 10:24

**exempt**
9:22
10:4,9,17
16:18
17:18,25

**exemption**
10:20
16:14
18:1,5,8
20:19

**exemptions**
13:15

**exercise**
20:13

**exercised**
18:18

**exist**
15:22

**experience**
6:6 19:5

**explain**
20:11

───────────

**F**

───────────

**factors**
18:6

**false**
17:20

**familiar**
5:4 6:24
7:5 8:14,
16 12:2,5
13:2
18:6,10,
11

**family**
6:22

**February**
17:12



**Federal**
4:5

**feel**
22:12

**file**
15:15,16

**filed**
7:3 17:7

**files**
15:10
16:2,6
22:14

**find**
15:3

**firm**
6:11

**FLSA**
9:23 10:4
13:16
15:16
18:5
20:18

**FLSA's**
17:25
18:7

**folder**
15:21,22

**form**
7:14 9:11
10:6,7
11:18
12:18
13:24
14:10
15:24
17:19
22:17

**found**
18:17

**free**
22:12

**frequently**
9:5,15

**functions**
12:13
14:23
19:1
22:11

---

**G**

---

**gave**
13:15
14:1
16:11

**general**
6:4,19
7:7,11
16:3,14
18:4
20:17,20

**generally**
13:13,21
14:1,9

**Georgia**
4:15 5:15
6:22

**give**
13:11

**graduate**
5:23

**Greene**
4:16 5:13
8:15

**guides**
19:19

---

**H**

---

**hear**
8:10

**held**
4:9

**Herrington**
4:7,14,
15,22
5:1,6,10,
15,17
21:23
22:2,6,
13,23

**HR**
19:1 21:8

---

**I**

---

**implementat**
**ion**
11:8,14,
17,24
12:6,14,
16,21,22,
23 13:1,
9,12,14,
21,22
14:5,9,
13,20,22
15:5
16:12,15,
21 17:1,
4,11,18,
24 18:18
19:8,24
20:3,9,
12,25
21:6,10,
13

**in-house**
5:3 6:15,
17

**independent**
18:12,16
20:14

**individual**
11:2

**individuall**
**y**
14:6

**interest**
7:24 8:2

**internally**
18:25

**interviewin**
**g**
18:25
19:21

**introduce**
4:12

**invoice**
17:15

**issue**
10:10

---

**J**

---

**job**
11:14,15
12:25
13:17
19:1,9,
10,25
20:10
22:11

**jobs**
12:8
14:12
21:1

**judgment**
18:12,17
20:14

---

**K**

---

**key-word**
15:20

**kind**
15:8,13,
18

---

**L**

---

**lapses**
8:12

**law**
5:20,25
6:11

**lawsuit**
8:16
13:18

**lawsuits**
14:2

**learning**
19:5

**left**
5:25

**legal**
15:2

**Lewis'**
17:9

**liaison**
12:3,10
14:18
21:18

**liaisons**
12:22

**litigation**
6:2,4,5,
25 7:2,8,
11,20
8:21,25
9:6,8
10:2
11:7,13,
22 15:15,
16 16:2,
17 17:6,



13 22:15

**lodge**
10:6
13:23

**longer**
15:22

**looked**
19:18,19,
20 20:7,8

**lot**
10:9 19:3

**Lynn**
4:9,20
5:12

_____

**M**

**made**
15:3

**maintain**
16:5
22:14

**make**
8:11,12
15:8

**management**
21:7

**manually**
15:19

**materials**
20:8,12

**matters**
15:16

**Matthew**
4:14 5:15

**Mckeeby**
4:4,17,24
5:3 7:14,
22 8:21,
24 9:11,

21 10:2,
6,24
11:1,18,
25 12:18
13:6,8,
11,15,20,
23 14:7,
10 15:4,
9,24
16:11,23,
25 17:17,
19,23
18:15
19:7
20:1,16,
24 21:6,
20,25
22:4,8,
17,22,24

**Mckeeby's**
14:24
17:9

**meaning**
20:17,18

**met**
8:18

**mischaracte
rizes**
21:21

**mischaracte
rizing**
14:11

**Moore**
4:9,20
5:12,18
11:12

**Morgan**
17:9

**moved**
6:10,18

**multi-year**
9:6

**multiple**
9:17 11:6

_____

**N**

**names**
11:3

**nature**
20:10

**necessarily**
14:14

**non-exempt**
10:5,17
17:18

**non-
exemption**
10:10,20

**non-
litigation**
6:9,12

**Northern**
5:14

**November**
4:10

_____

**O**

**Object**
7:14 9:11
11:18
12:18
14:7,10
15:24
17:19
22:17

**objection**
7:22 10:7
13:24
21:20

**occurred**
9:3 10:12

17:12

**opposed**
21:22

**options**
8:4

**overlap**
12:17
14:13

**overtime**
10:4
17:25

**ownership**
7:24

_____

**P**

**part**
9:25 12:6
13:17
18:11

**participate
d**
9:7

**parts**
20:11

**Paulo**
4:17 8:21
9:8 17:15

**pending**
5:14

**people**
18:25
21:3

**percent**
8:7,8,9

**percentage**
8:5

**perform**
14:22

**perspective**
10:16

**Plaintiff**
4:16 8:15

**Plaintiffs**
14:2
16:16,19,
20 17:4
19:2

**plenty**
9:16

**position**
6:9,13,14
14:18,19

**positions**
11:4,5,6,
16 12:3,
9,25
13:10
14:15
18:4

**practice**
6:1,2

**predicate**
17:20

**prepared**
20:9

**present**
4:23,24

**president**
16:3

**previously-
created**
20:2

**Procedure**
4:5

**proceedings**
23:3

**produced**
19:24



product
  19:8,16,
  20,21,23
  20:2

proper
  9:21 10:3

properly
  16:18

provide
  12:21

provided
  17:17

providing
  19:4

pursuant
  4:5

put
  14:25

————————

        Q

question
  7:15 9:12
  10:7
  11:19
  12:19
  13:7,19
  15:25
  16:23
  17:2,20
  22:18

questions
  22:24

————————

        R

read
  22:2,12

reading
  22:4

recall
  11:11
  15:1
  16:13,14
  17:7
  18:2,9,23
  20:15,23

recollectio
n
  9:14
  11:6,23
  19:14,18
  20:4,7

reconfigure
d
  11:16

record
  4:3,11
  22:12
  23:2

records
  17:9

reference
  17:10

regular
  9:4
  10:13,14
  19:25

remember
  7:5 12:23

repeat
  13:19

rephrase
  7:18

REPORTER
  4:2 5:9
  9:24

represent
  4:12,18
  17:7,8

represented

4:16

requirement
s
  10:5,19
  17:25

restate
  18:20,22

restricted
  8:3

review
  19:17
  20:3,6

reviewed
  19:7,22

role
  12:7,15,
  17

roles
  13:17

Rowbotham
  5:7

Rules
  4:5

run
  15:13

————————

        S

scheduling
  19:20

school
  5:21,25

search
  15:11,13,
  18,19,20

searched
  15:10,17,
  21

section
  6:10

security
  6:10

selected
  16:25

separate
  12:2

separately
  16:6

servers
  16:6

shadow
  20:24

simply
  14:12

sir
  7:1

sites
  21:2

small
  8:7,9

software
  11:9

sort
  8:10

speak
  8:13 9:9
  21:6,10

specialist
  12:4,10
  14:18
  21:18

specific
  6:3,5
  10:25
  13:2,13,
  22 14:5,
  12 16:15
  17:3 19:2
  20:5

specificall
y
  10:18,19,
  20,23
  11:11
  14:3
  16:10
  17:16
  19:12
  21:15

spoke
  9:14,16,
  18 21:14,
  19

started
  6:19

state
  4:2 8:5
  9:2,5
  21:18

status
  17:11

stock
  8:3,6

supervisors
  21:7

support
  11:8

surprise
  17:13,14

Suzanne
  4:16 8:15

swear
  5:8

sworn
  4:13,21

————————

        T

taking
  4:4



**talked**
 10:9,14,
 18,19,20

**talking**
 19:1,2,23
 20:1

**Technologies**
 4:19 5:13
 6:16,18
 7:4,12,
 19,25
 8:22 9:22
 10:3
 11:12

**Technologies'**
 15:5

**telephone**
 4:25 5:5

**telling**
 18:3

**ten**
 19:14

**term**
 20:20

**testified**
 4:21
 11:13,21
 22:9

**testify**
 21:24

**testimony**
 14:11,16,
 17 21:21,
 24

**Texas**
 4:9 5:22

**thing**
 12:24

**things**

 13:4
 20:10

**time**
 4:10,11
 7:7 8:11
 11:13
 22:25
 23:1

**times**
 9:17

**title**
 11:25
 12:1

**titles**
 13:17
 22:11

**today**
 11:11
 18:9

**totality**
 18:22

**trainer**
 12:3,9
 14:17
 21:17

**training**
 12:21
 19:19
 20:8,11

**traveled**
 9:18

**Tyler**
 4:18 5:4,
 13 6:15,
 18 7:3,
 12,19,24
 8:6,22
 9:22
 10:3,21
 11:12
 14:15
 15:5

**Tyler's**
 11:12

**type**
 13:22
 21:19

**types**
 13:13
 14:5,19
 18:16
 20:5
 21:17

**typical**
 20:2

---

**U**

**understand**
 19:1

**understanding**
 11:23
 12:11,13
 19:2
 22:10

**understood**
 14:13

**units**
 8:4

**University**
 5:22

---

**V**

**Vague**
 22:18

**versus**
 5:13

**video**
 4:3,15
 21:4

---

**W**

**wage-an-hour**
 7:2

**watch**
 20:25
 21:3

**week**
 9:10,17

**weeks**
 9:15,16,
 18

**witnesses**
 19:21

**work**
 19:7,16,
 20,21,23
 20:2

**working**
 21:4

**writes**
 17:15

**writing**
 14:25
 15:2,4,10

**written**
 15:1
 19:10,23

---

**Y**

**year**
 5:23 6:20

**years**
 6:15
 17:12
 19:15

