# EXHIBIT C

**In the Matter Of:**

Greene vs Tyler Technologies

---

**30(b)(6) Abigail Diaz-Pedrosa**

*October 09, 2019*

---



934 Glenwood Ave SE
Suite 250
Atlanta, GA 30316
855.478.7376

```
 1            IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF GEORGIA
 2                    ATLANTA DIVISION

 3

 4   SUZANNE GREENE,           )
                               )
 5            Plaintiff,       )   CIVIL ACTION NO.
                               )
 6        vs.                  )   1:19-cv-01338-AT
                               )
 7   TYLER TECHNOLOGIES, INC.,)
                               )
 8            Defendant.

 9

10

11      30(B)(6) DEPOSITION OF TYLER TECHNOLOGIES

12        BY WITNESS: ABIGAIL DIAZ-PEDROSA

13               October 9, 2019

14                  4:15 p.m.

15              Dentons US, LLP

16          303 Peachtree Street, NE

17                 Suite 5300

18          Atlanta, Georgia  30308

19

20   Reported By: Judith L. Leitz Moran, RPR, RSA,

21           Certified Court Reporter CCR-B-2312

22           Job No. 538

23

24

25
```



```
 1    APPEARANCES:

 2

 3    On behalf of the Plaintiff:

 4         MATTHEW W. HERRINGTON, ESQUIRE

 5         DELONG, CALDWELL, BRIDGERS,

 6         FITZPATRICK & BENJAMIN, LLC

 7         3100 Centennial Tower

 8         101 Marietta Street

 9         Atlanta, Georgia  30303

10

11   On behalf of the Defendant:

12         PAULO B. McKEEBY, ESQUIRE

13         REED SMITH LLP

14         2501 N. Harwood Street

15         Suite 1700

16         Dallas, Texas  75201

17

18   ALSO PRESENT:

19         HILLARY PASCH, CORPORATE REPRESENTATIVE

20         TYLER TECHNOLOGIES

21

22

23

24

25
```



```
 1   INDEX OF EXAMINATION                                PAGE
 2        BY MR. HERRINGTON ......................    4
 3
 4
 5
 6                   E X H I B I T S
 7   EXHIBIT NOS.                                      PAGE
 8   Exhibit 31    Second Joint Motion for Order        13
 9                 Approving Settlement and Motion
10                 to Present Settlement Papers in
11                 Camera
12
13
14   PREVIOUSLY MARKED                                 PAGE
15   Exhibit 1     ............................    5
16
17
18
19
20
21
22
23
24
25
```



```
 1              MR. HERRINGTON:  This is the deposition
 2   by cross-examination of Tyler Technologies, Inc.,
 3   pursuant to 30(b)(6) of the Federal Rules of Civil
 4   Procedure.
 5              The deposition is taken for the purposes
 6   of discovery and for all other purposes allowed by
 7   the Federal Rules of Civil Procedure.
 8              My name is Matthew Herrington.  I'm
 9   counsel for the Plaintiff in this case, Suzanne
10   Greene.
11              Also present is Paulo McKeeby, counsel of
12   record for the Defendant.  And Hillary Pasch, who
13   is a corporate representative.
14              Ms. Moran, will you please swear the
15   witness.
16                   ABIGAIL DIAZ-PEDROSA
17   being first duly sworn, was examined as follows:
18              THE WITNESS:  I do.
19                       EXAMINATION
20   BY MR. HERRINGTON:
21       Q    Please state your full legal name.
22       A    Abigail Diaz-Pedrosa, P-E-D-R-O-S-A.
23       Q    Okay.  And you go by Abby Diaz?
24       A    Yes, I do.
25       Q    Now, you've been designated by Tyler
```



```
 1    Technologies to speak today on several topics in
 2    this 30(b)(6) deposition; is that correct?
 3        A    Yes.
 4        Q    So referring back to what was previously
 5    marked as Exhibit 1, my understanding is that
 6    you're going to talk to me about Topics 11 through
 7    15?
 8              MR. McKEEBY:  No.  Not Topic 11.
 9              MR. HERRINGTON:  No.
10              MR. McKEEBY:  Because it relates to
11    settlement agreements.
12              MR. HERRINGTON:  It's limited to the
13    identities of the parties.
14              MR. McKEEBY:  Well, that's covered in
15    Topic 14.
16              MR. HERRINGTON:  Okay.
17              MR. McKEEBY:  So I don't see why there's
18    the need to discuss Topic 11.  And Topic 12, she's
19    not been designated.  Just 13, 14 and 15.  With the
20    understanding that 14 is going to encompass part of
21    what's included in Topic 11.
22              MR. HERRINGTON:  All right.
23    BY MR. HERRINGTON:
24        Q    Would you please look at the topic
25    numbers and confirm that that's accurate?
```

```
 1        A    As Paulo just summarized it, that is my

 2   understanding.

 3        Q    Have you been deposed before?

 4        A    No.

 5        Q    Have you taken a deposition?

 6        A    Yes.

 7        Q    Okay.  So you're very familiar with how

 8   depositions work?

 9        A    Yes.

10        Q    And I can skip all the preliminaries with

11   you?

12        A    Yes.

13        Q    Okay.  Would you tell me about your

14   educational background?

15        A    Sure.  I graduated from Georgetown

16   University in Washington, D.C.  And after college,

17   I went to Cornell Law School and I graduated from

18   Cornell in 2004.

19        Q    And where do you currently reside?

20        A    Falmouth, Maine.

21        Q    How do you spell that?

22        A    F-A-L-M-O-U-T-H.

23        Q    And do you have any relatives in Georgia?

24        A    Yes.

25        Q    And who are they?
```



```
  1        A     My sister, brother-in-law, and two
  2   nephews.
  3        Q     What is their last name?
  4        A     Ryan.
  5        Q     R-Y-A-N?
  6        A     Yes.
  7        Q     Okay.  Do they live in the Northern
  8   District of Georgia?
  9        A     They live in Atlanta.
 10        Q     Okay.
 11        A     Is that in the Northern District of
 12   Georgia?
 13        Q     Yes.
 14        A     Okay.
 15        Q     Where does -- what are their names?
 16        A     Matt Ryan, Sarah Ryan.
 17        Q     The nephews are minors?
 18        A     Yes.
 19        Q     Okay.  What do they do for a living?
 20        A     Matt is an athlete and Sarah is a
 21   stay-at-home mother.
 22        Q     Is he an athlete that I would have heard
 23   of if I followed sports?
 24        A     Yes.
 25        Q     Okay.  What kind of sport?
```



```
 1        A    He is a quarterback for the Atlanta
 2   Falcons.
 3        Q    Okay.  That's funny.  Yeah, I had no
 4   clue.
 5             Have you ever been a party to a lawsuit
 6   individually?
 7        A    No.
 8        Q    Okay.  No criminal history?
 9        A    No.
10        Q    And where did you begin working after law
11   school?
12        A    I began -- well, I clerked for a judge on
13   the Third Circuit --
14        Q    Uh-huh.
15        A    -- for one year.  And after that, I
16   became a litigation associate at Kirkland & Ellis.
17        Q    I'm sorry.
18        A    Excuse me?
19        Q    I said I'm sorry.
20        A    Yes, thank you for your sympathies.
21             Kirkland & Ellis in their New York City
22   office.
23        Q    Okay.  And what practice group are you
24   in?
25        A    Litigation.
```



Greene vs Tyler Technologies          30(b)(6) Abigail Diaz-Pedrosa          10/09/2019

```
 1        Q     Okay.  And how long were you there?

 2        A     I was there about six and a half years.

 3        Q     And after Kirkland?

 4        A     My next job was at Tyler.

 5        Q     Okay.  And you've been with Tyler ever

 6   since?

 7        A     From 2012 to the present.

 8        Q     Okay.  And what was your first position

 9   with Tyler?

10        A     Contract specialist.

11        Q     Okay.  So drafting contracts with the

12   customers?

13        A     Drafting and negotiating contracts and

14   related documents.

15        Q     Okay.  And what position did you have

16   after contract specialist?

17        A     Associate general counsel.

18        Q     Okay.  And when did that happen, that

19   change?

20        A     As best as I can remember, it was in

21   2014.

22        Q     Okay.  And how long did you hold that

23   position?

24        A     For about three years, I think.

25        Q     And you became general counsel?
```



```
 1        A     Yeah, we call it chief legal officer.
 2        Q     Chief legal officer.  And that change
 3   happened when?
 4        A     I believe January of 2017.
 5        Q     Okay.  Who was the chief legal officer
 6   before you?
 7        A     At that time we called it general
 8   counsel, and it was Lynn Moore.
 9        Q     And how long had Lynn Moore been the
10   general counsel?
11        A     More than 10 years.
12        Q     Okay.
13        A     More than 15 years, I think.
14        Q     So Lynn Moore was general counsel at the
15   time of the Beall litigation?
16        A     Yes.
17        Q     And you were not with Tyler at that time?
18        A     Correct.
19        Q     Is Lynn Moore still with the company?
20        A     Yes.
21        Q     In what position?
22        A     President and CEO.
23        Q     What I have referred to as the Beall
24   litigation, was an FSLA collective action filed
25   against Tyler Technologies?
```



```
 1        A    Tyler was one of the Defendants, yes.
 2        Q    Okay.  What is the other defendant, was
 3   it EDP Enterprises, Inc.?
 4        A    I think that's the correct name of the
 5   corporate entity.  I know it as EDP.
 6        Q    And is that a company that's owned by
 7   Tyler Technologies?
 8        A    Tyler acquired EDP, yes.
 9        Q    When did it acquire EDP?
10        A    I believe it was sometime in 2007.
11        Q    Was it in an acquisition structurally
12   similar to the acquisition of ExecuTime?
13             MR. McKEEBY:  Object to the scope of the
14   question as outside -- or rather, object to the
15   question as outside the scope of the topic
16   designation.
17             But I'll allow you to answer if you know.
18        A    I don't know.
19   BY MR. HERRINGTON:
20        Q    Do you know if they took on employees
21   from EDP?
22        A    It is my understanding that they did.
23        Q    Okay.  And they acquired software from
24   EDP?
25        A    Yes.
```



```
 1        Q    Okay.  So it does share that in common
 2   with the acquisition of ExecuTime?
 3        A    Yes.
 4        Q    Okay.  Now, it was an FLSA collective
 5   action for implementation consultants among others?
 6        A    Implementation consultants, not by that
 7   name.  By that role and other roles, yes.
 8        Q    Okay.  So by -- at least some of the
 9   Plaintiffs were performing the work that would be
10   described in the job description for an
11   implementation consultant that Ms. Pasch examined
12   earlier?
13             MR. McKEEBY:  Object to the form of the
14   question.
15             You can answer.
16        A    I believe they would have performed some
17   of those functions, yes.  Whether it translated
18   line by line, I do not know.
19   BY MR. HERRINGTON:
20        Q    All right.  Do you know how many
21   plaintiffs there ultimately were in that case
22   before it settled?
23        A    How many opt-in plaintiffs?
24        Q    Opt-in plus named plaintiffs.
25        A    I think opt-in plus named settled
```



```
 1   somewhere just north of 20.  And by settled, I
 2   don't mean settled in the litigation sense, I mean
 3   the number hovered somewhere just north of 20.
 4        Q    I see.
 5             So were there opt-outs at some point?
 6        A    Yes, sir.
 7        Q    So at the highest, it was over 20 and
 8   then somewhat lower at the end?
 9        A    It might have always remained over 20
10   even at the end, but there were opt-outs.
11        Q    And it was alleging overtime violations,
12   correct?
13        A    It alleged that the roles had been
14   misclassified as exempt under FLSA, and that,
15   therefore, they were entitled to be reclassified as
16   nonexempt and paid overtime wages.
17        Q    Okay.  Can you tell me about -- that case
18   was ultimately settled, correct?
19        A    Correct.
20        Q    Okay.
21             (Deposition Exhibit 31 marked.)
22   BY MR. HERRINGTON:
23        Q    Would you agree that Exhibit No. 31,
24   which has just been given to you, is a copy of the
25   Motion to Approve Settlement that was filed in that
```



```
 1   case?  The final Motion to Approve Settlement that
 2   was filed in that case?
 3        A    I don't know if it was the final motion
 4   for settlement approval.
 5        Q    Do you know how many motions there were?
 6        A    No.
 7        Q    Okay.  Do you have any reason to believe
 8   there were more than two?
 9        A    No reason to believe, no.
10        Q    All right.  So this was filed and then
11   the case was settled at some point, correct?
12        A    Given the case caption and docketing
13   information at the top, I would agree with you that
14   this was filed.
15             I am generally aware that a motion for an
16   order approving settlement was filed.  And I am
17   also generally -- and I do know that the case was
18   ultimately resolved through settlement.
19        Q    Okay.  Now, following this -- well, back
20   up.
21             In the Beall litigation, there were
22   employees who shared the job duties of what
23   implementation consultants now perform, correct?
24        A    At least at a general level, yes.
25        Q    What were they called in the -- in the
```

 1    Beall litigation, what were they referred to as?

 2         A    As best I can recall, there were actually

 3    three different references.  Trainer, customer

 4    liaison, and something along the lines of education

 5    specialist.  That last one I can't remember

 6    exactly, but it had the word "education" in the

 7    title.

 8         Q    I see.

 9              Do you know anything about the specific

10    roles that those different people played?

11         A    At EDP, I do not.

12         Q    Were they reclassified after the

13    acquisition of EDP or did Tyler continue to use the

14    preexisting job titles?

15              MR. McKEEBY:  Object to the form of the

16    question as beyond the scope of the topic

17    designation.

18              You can answer if you know.

19         A    I don't know specifically.  I can only

20    speak to what Tyler's general practice would be.

21    BY MR. HERRINGTON:

22         Q    So after the company was sued in that

23    case, did it investigate whether the administrative

24    exemption was appropriately applied or not?

25              MR. McKEEBY:  Object to the form of the



```
 1    question as vague and ambiguous.

 2              You can answer.

 3         A    I think Tyler investigated multiple

 4    aspects of the allegations and I -- yes, as part of

 5    the reaction to the lawsuit, Tyler looked to

 6    confirm whether implementation consultants or folks

 7    in an implementation role are properly classified

 8    as exempt under the administrative exception.

 9    BY MR. HERRINGTON:

10         Q    And who performed that review?

11         A    It was a group of internal Tyler

12    resources and outside counsel.

13         Q    Who were the internal resources?

14         A    They at least included Lynn Moore; our

15    former head of HR, Bob Sansone, S-A-N-S-O-N-E; and

16    other HR leaders.

17         Q    Lynn Moore was an attorney, though?

18         A    Lynn Moore at the time was in-house

19    counsel for Tyler, yes.

20         Q    So he was the only internal attorney to

21    review that question?

22         A    Yes.

23         Q    Okay.  What about outside counsel?

24         A    That was Paulo McKeeby and his law firm.

25         Q    Do you know if other lawyers besides
```



Greene vs Tyler Technologies        30(b)(6) Abigail Diaz-Pedrosa                 10/09/2019

```
 1    Mr. McKeeby worked on that case -- or worked on the
 2    review?
 3         A    I know Paulo had assistance from other
 4    lawyers at his firm.  I cannot remember their
 5    names.
 6         Q    Okay.  And did the company at any time
 7    solicit an opinion from Mr. McKeeby about the
 8    applicability of the administrative exemption to
 9    the employees who were at issue in Beall?
10              MR. McKEEBY:  Object to the form of the
11    question.
12              You can answer.
13         A    I believe that soliciting Mr. McKeeby's,
14    Paulo's, opinion was something that the Tyler team
15    regularly did.
16    BY MR. HERRINGTON:
17         Q    You say you believe rather than that they
18    did.  What investigation did you do to learn what
19    actions were taken back then?
20         A    I spoke with Lynn, I spoke with Bob, and
21    I spoke with other members from the HR team who
22    were employed by Tyler at the time of the Beall
23    lawsuit as well.
24         Q    All right.  And what did Mr. McKeeby tell
25    them?
```



Greene vs Tyler Technologies        30(b)(6) Abigail Diaz-Pedrosa        10/09/2019

```
 1          A    He confirmed that Tyler was properly
 2    classifying implementation consultants as exempt
 3    from the FLSA overtime wage provisions under the
 4    administrative exemption.
 5          Q    And he told you that that was certain?
 6          A    He didn't tell me that was certain.  He
 7    told Tyler.
 8          Q    Might be the company?
 9          A    Yeah, he told Tyler that that
10    classification was correct.
11          Q    What information was given to Mr. McKeeby
12    prior to him making that determination?
13          A    The information would have included job
14    descriptions for those individuals or for that type
15    of role, information about training for that role,
16    information about Tyler's business and the business
17    of our clients that the implementation consultants
18    are used to advance.
19               At least each of those three buckets of
20    information would have been provided and discussed.
21          Q    Are there any document -- is there any
22    documentary evidence showing that that -- you know,
23    what was actually conveyed to him in writing?
24          A    In writing?
25          Q    Uh-huh.
```



```
 1        A    No.
 2        Q    So all of this was oral?
 3             MR. McKEEBY:  I need to object to the
 4   question as it's outside the scope of the corporate
 5   designation.
 6             You didn't ask about what information was
 7   provided to me, you only asked about the substance
 8   of my communications with the company.
 9             MR. HERRINGTON:  Are you telling her not
10   to answer?
11             MR. McKEEBY:  I'm not.  I'm advising that
12   I don't think she can answer on behalf of the
13   corporation on the topic -- or rather, on the
14   question because it's not properly identified as a
15   topic designation.
16             I'll let her continue and answer the
17   question.
18   BY MR. HERRINGTON:
19        Q    What information -- is there any
20   documentary evidence of Tyler Technologies giving
21   Mr. McKeeby information?
22        A    I don't know.
23        Q    Have you made a search for that?
24        A    No.
25        Q    And by "you," I mean Tyler?
```



```
 1        A     And my answer doesn't change.
 2        Q     And the advice that Mr. McKeeby gave to
 3    Tyler that they were properly classified, was that
 4    reduced to writing at any time?
 5        A     No.
 6        Q     How do you know that it wasn't reduced to
 7    writing?
 8        A     Through conversations I had preparing for
 9    this deposition.
10        Q     Conversations with whom?
11        A     Lynn.
12        Q     Tyler Technologies has over a hundred
13    implementation consultants, correct?
14        A     Yes.
15        Q     Did it have over a hundred implementation
16    consultants in 2009?
17              MR. McKEEBY:  Object to the form of the
18    question.  It's outside of the scope of the topic
19    designation.
20              If she knows, she can answer.  I don't
21    know that she does.
22        A     I don't know.
23    BY MR. HERRINGTON:
24        Q     Did it solicit any legal advice about the
25    classification of implementation consultants at any
```



```
 1   time after Mr. McKeeby's representation in the

 2   Beall litigation?

 3        A     I am not aware of specific instances

 4   where we asked Paulo to advise us on that again.

 5        Q     Or any attorney?

 6        A     No other attorney.

 7        Q     Is it typical for Tyler Technologies to

 8   obtain legal advice that is not reduced to writing?

 9        A     Yes.

10        Q     Even on issues that have -- could

11   potentially have a large financial impact on the

12   company?

13              MR. McKEEBY:  Object to the form of the

14   question as outside the scope of the topic

15   designation.

16              I'll let you answer.

17        A     Yes, I regularly receive, on behalf of

18   Tyler, legal advice from outside counsel that is

19   verbal.

20   BY MR. HERRINGTON:

21        Q     And you take action on verbal advice that

22   could potentially have a large financial impact on

23   the company --

24              MR. McKEEBY:  Same objection.

25   BY MR. HERRINGTON:
```

```
 1        Q     -- without reducing it to writing?

 2             MR. McKEEBY:  Same objection as outside

 3   the scope of the corporate designation.  You're not

 4   asking -- you said nothing that would suggest that

 5   you would ask questions about legal advice.

 6             MR. HERRINGTON:  You've made your

 7   objections.  Speaking objections are not proper.

 8   Make your objection and finish.

 9             MR. McKEEBY:  Well, I was about to tell

10   her not to answer, but I'll let her answer if she

11   knows or she will know, but you need to stay within

12   the confines of the notice.

13             MR. HERRINGTON:  You need to stop making

14   speaking objections.

15             MR. McKEEBY:  I'm not.  I'm asking you to

16   stay within the confines of the notice.

17             MR. HERRINGTON:  Are you done?

18             MR. McKEEBY:  I am done.

19             MR. HERRINGTON:  Please answer my

20   question.

21        A     I need it repeated, please.

22             (Whereupon, the requested portion of

23             the record was read by the reporter.)

24             MR. McKEEBY:  Same objection.

25        A     So do I take action based on legal advice
```



 1   that's verbally given to me without requiring that

 2   it be followed up in written form?

 3   BY MR. HERRINGTON:

 4       Q    On issues that could have significant

 5   financial impacts on the company.

 6       A    Yes, I do.

 7       Q    Okay.  Can you give me other examples?

 8            MR. McKEEBY:  No.  Object to the form of

 9   the question.  It's outside the scope of the topic

10   designation and it invades attorney/client

11   privilege, so I'm going to instruct her not to

12   answer that one.

13   BY MR. HERRINGTON:

14       Q    After the employees in the Beall

15   litigation, trainers, customer liaisons and

16   education specialists were reclassified, at least

17   partially into implementation consultants, did the

18   company get any advice at that point about whether

19   the exemption was still appropriate?

20            MR. McKEEBY:  Object to the form of the

21   question.

22            You can answer.

23       A    I'm not sure I can answer.

24   BY MR. HERRINGTON:

25       Q    They weren't performing the exact same



 1   duties anymore, were they?

 2        A    I don't know.

 3        Q    Can you tell me what the job duties of a

 4   trainer were?

 5             MR. McKEEBY:  Object to the form of the

 6   question as outside the scope of the corporate

 7   representative -- or the corporate topic

 8   designations.

 9             You can answer if you know.

10        A    I do not know the job description of EDP

11   trainers.

12   BY MR. HERRINGTON:

13        Q    Or any of them?  Any of the three

14   categories?

15        A    I don't know how EDP described any of the

16   functions.

17        Q    Those categories continued to be used by

18   Tyler after the acquisition, didn't they?

19        A    I think we talked about this.  I don't

20   know if and when those titles were changed; and if

21   they were changed, what they were changed to.

22        Q    Can you tell me exactly how the job

23   duties of trainers, customer liaisons and education

24   specialists overlapped with implementation

25   consultants?



```
 1              MR. McKEEBY:  Object to the form of the
 2    question.  It's outside the scope of the corporate
 3    deposition notice.
 4              You can answer, if you know.
 5       A    Did you say exactly how?
 6    BY MR. HERRINGTON:
 7       Q    Yeah.
 8       A    No.
 9       Q    Did Mr. McKeeby tell you why they were
10    properly classified as exempt?
11              MR. McKEEBY:  "You" being Tyler?
12              MR. HERRINGTON:  Yes.
13       A    Yes.
14    BY MR. HERRINGTON:
15       Q    Why?
16       A    They satisfied the three prongs of the
17    administrative exemption.
18       Q    And what were those?
19       A    Meeting or exceeding the salary
20    threshold, having primary duties that directly
21    related to the general business operations of
22    either EDP or Tyler, depending on the period of
23    time that the work was performed in and who was the
24    employing entity at that time.  And then the fact
25    that that exercised discretion and/or independent
```

```
 1    judgment in performing their primary duties.
 2         Q    So Mr. McKeeby told you that they were
 3    involved in the general business operations of EDP
 4    and Tyler rather than their customers?
 5         A    Both.
 6              Thank you, yes, both.
 7         Q    Was Mr. McKeeby's compliance advice
 8    billed to the company?
 9         A    Yes.
10         Q    Okay.  So there are billing records for
11    providing that advice?
12         A    There would have been at the time.
13         Q    As opposed to simple representation in
14    litigation?
15         A    I don't understand your question.
16         Q    Did Mr. McKeeby bill the company
17    separately for doing a review of -- for perspective
18    purposes about whether implementation consultants
19    should be classified as exempt or nonexempt --
20              MR. McKEEBY:  Objection.
21    BY MR. HERRINGTON:
22         Q    -- versus simply providing representation
23    in a lawsuit?
24              MR. McKEEBY:  Object to the form of the
25    question as outside the scope of the topic
```

```
 1   designations.

 2              You can answer, if you know.

 3       A     The work he performed was in connection

 4   with his representation of Tyler in the Beall

 5   litigation.  The advice he provided was in that

 6   same context and it would have been billed as such.

 7   BY MR. HERRINGTON:

 8       Q     I believe the company expressed in the

 9   Motion for Settlement Approval that it was settling

10   to avoid the expense of litigation rather than a

11   belief that it had acted illegally; is that

12   correct?

13              MR. McKEEBY:  Where is that?

14              MR. HERRINGTON:  Footnote, second or

15   third page.

16              MR. McKEEBY:  Okay.  What's the question?

17   BY MR. HERRINGTON:

18       Q     I'm asking her to confirm that the

19   company stated that it settled because of

20   litigation expenses rather than a belief that it

21   had acted illegally?

22       A     I don't think that's a correct summary of

23   Footnote 1.

24       Q     "Tyler is agreeing to resolve part of

25   this case only to avoid the fees and costs
```



```
 1   associated with continued litigation."
 2          MR. McKEEBY:  Yes, you read that
 3   correctly.
 4      A    You read that correctly.
 5          MR. HERRINGTON:  I'm not deposing you.
 6          MR. McKEEBY:  Beg your pardon?
 7          MR. HERRINGTON:  I'm not deposing you.
 8          MR. McKEEBY:  I'm here as a
 9   representative -- I'm here representing a -- as an
10   attorney, a company representative.  If you have a
11   question, ask her.
12   BY MR. HERRINGTON:
13      Q    Ms. Diaz, did I read that correctly?
14      A    You read that portion of Footnote 1
15   correctly.
16      Q    It did express that it was resolving this
17   part of the case only to avoid fees and costs
18   associated with continued litigation.
19      A    You read that portion of Footnote 1
20   correctly.  That is not how you had previously
21   summarized Footnote 1.
22      Q    How much did Tyler spend on its
23   representation in Beall?
24      A    I do not know.
25      Q    I may have asked you this already, but
```

 1   **I'm going to ask you again to refresh my memory.**

 2       A     Uh-huh.

 3       **Q     Can you provide any more information**

 4   **about what was provided to Mr. McKeeby about the**

 5   **job duties of implementation consultants other than**

 6   **that their job duties satisfied the second and**

 7   **third prongs of the administrative exemption test?**

 8                MR. McKEEBY:  Object to the form of the

 9   question as outside the scope of the topic

10   designations.

11                You can answer.

12                MR. HERRINGTON:  We were directed to try

13   to replace your deposition with this one and I'm

14   trying to do that.

15                MR. McKEEBY:  No, there was no direction

16   necessarily to do that.

17                We're presenting her, as you identified

18   at the beginning of this deposition, on the topic

19   designations.

20                I'll let her answer that question.  I

21   don't think it's one that I was properly advised

22   that I needed to prepare a corporate representative

23   on, and that's the basis of my objection.

24                MR. HERRINGTON:  I'm trying to find out

25   if I can get enough information from her or whether



```
 1    I need to tell Judge Totenberg, sorry, Judge, the

 2    corporate representative couldn't tell me enough,

 3    so I need to depose Mr. McKeeby.

 4            MR. McKEEBY:  I understand that, but

 5    nonetheless, we prepared her to speak on the topic

 6    designations as stated.

 7            And so I'm not in a position to present

 8    her to provide company testimony on matters outside

 9    of those designations.

10            So she can -- as she's done in the past

11    in this deposition, I'm going to allow her to

12    answer the question.  I'm not going to instruct her

13    not to answer.

14            But I haven't prepared her to answer that

15    question on behalf of the company.  That's all I'm

16    saying.  She can answer the question.

17            MR. HERRINGTON:  Please read my question

18    to her again.

19            (Whereupon, the requested portion of

20            the record was read by the reporter.)

21            MR. McKEEBY:  Same objection.

22            You can answer.

23       A    I can't answer the question because of

24    the way you phrased it.

25    BY MR. HERRINGTON:
```



```
 1        Q     What's wrong with the way I phrased it?

 2        A     You asked -- semantically, the trouble is

 3   any more information.  I'm trying to remember what

 4   I answered the first time.

 5              The second problem with the semantics of

 6   the question is that it acts as though what I said

 7   by way of information we provided was that we

 8   satisfy the second and third prongs of the test.

 9              We did not tell Paulo we satisfied the

10   second and third prongs of the test.  That was part

11   of the advice he provided to us.

12        Q     So exactly what information was provided

13   to Mr. McKeeby about the job duties of

14   implementation consultants?

15              MR. McKEEBY:  Objection, asked and

16   answered.

17              And objection, it goes outside the scope

18   of the corporate representative designation topics.

19              You can answer.

20        A     I don't know exactly what was

21   communicated.  I know the substance of what was

22   communicated.

23   BY MR. HERRINGTON:

24        Q     And how do you know that?

25        A     By talking with Lynn, Bob, and other
```



Greene vs Tyler Technologies          30(b)(6) Abigail Diaz-Pedrosa          10/09/2019

```
 1   members of the HR team that were employed by Tyler
 2   at the time of the lawsuit.
 3        Q    And did you find out from them whether
 4   the information given to Mr. McKeeby was in
 5   writing?
 6        A    Did I find out from them whether the
 7   information was provided in writing?  No, I asked
 8   for information about the substance of the
 9   communications.
10        Q    And Tyler has not performed any search of
11   its records to determine whether it possesses the
12   information -- the communications to -- any
13   communications to Mr. McKeeby describing the work
14   that implementation consultants performed?
15             MR. McKEEBY:  Object to the form of the
16   question as outside the scope of the topic
17   designations.
18             You can answer if you know.
19        A    Not to my knowledge.
20             MR. HERRINGTON:  All right.  That's it.
21   Thank you.
22             MR. McKEEBY:  No further questions from
23   me.
24             Thank you, Matt.
25             (Deposition concluded at 4:56 p.m.)
```



Greene vs Tyler Technologies        30(b)(6) Abigail Diaz-Pedrosa                10/09/2019

```
 1    (Signature reserved.)

 2

 3         *   *   *   *   *

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



Greene vs Tyler Technologies          30(b)(6) Abigail Diaz-Pedrosa          10/09/2019

1                C E R T I F I C A T E

2    STATE OF GEORGIA:

3    COUNTY OF DEKALB:

4

5            I hereby certify that the

6        foregoing transcript was taken down, as

7        stated in the caption, and the questions

8        and answers thereto were reduced to

9        typewriting under my direction; that the

10       foregoing Pages 1 through 33 represent a

11       true and correct transcript of the

12       evidence given upon said hearing, and I

13       further certify that I am not of kin or

14       counsel to the parties in the case; am not

15       in the regular employ of counsel for any

16       of said parties; nor am I in anywise

17       interested in the result of said case.

18       The witness did reserve the right

19       to read and sign the transcript.

20           This, the 25th day of October 2019.

21       _____

22       _____
         Judith L. Leitz Moran, CCR-B-2312
23       Certified Court Reporter

24

25    Job No. 538



```
 1                        DISCLOSURE

 2

 3        Pursuant to Article 10.B of the Rules and
     Regulations of the Board of Court Reporting of the
 4   Judicial Council of Georgia, I make the following
     disclosure:
 5
          I am a Georgia Certified Court Reporter.  I am
 6   here as a representative of IST Reporting.

 7        I am not disqualified for a relationship of
     interest under the provisions of O.C.G.A.
 8   9-11-28(c).

 9        I was contacted by the office of IST Reporting
     to provide court reporting services for this
10   deposition.

11        I will not be taking this deposition under any
     contract that is prohibited by O.C.G.A. Section
12   15-14-37 (a) and (b).

13        I have no exclusive contract to provide
     reporting services with any party to the case, any
14   counsel in the case, or any reporter or reporting
     agency from whom a referral might have been made to
15   cover this deposition.

16        I will charge my usual and customary rates to
     all parties in the case, and a financial discount
17   will not be given to any party to this litigation.

18

19        This, the 25th day of October 2019.

20

21

22   _____
          Judith L. Leitz Moran, CCR-B-2312
23        Certified Court Reporter

24

25   Job No. 538
```



Greene vs Tyler Technologies         30(b)(6) Abigail Diaz-Pedrosa         10/09/2019

```
 1                    DISCLOSURE OF FIRM

 2

 3        I, IST Reporting, do hereby disclose pursuant
      to Article 10.B. of the Rules and Regulations of
 4    the Board of Court Reporting of the Judicial
      Council of Georgia that IST Reporting was contacted
 5    by DELONG, CALDWELL, BRIDGERS, FITZPATRICK &
      BENJAMIN, LLC, to provide court reporting services
 6    for this deposition and there is no contract that
      is prohibited by O.C.G.A. 15-14-37(a) and (b) or
 7    Article 7.C. of the Rules and Regulations of the
      Board for the taking of this deposition.
 8
          There is no contract to provide reporting
 9    services between IST Reporting or any person with
      whom IST Reporting has a principal and agency
10    relationship nor any attorney at law in this
      action, party to this action, party having a
11    financial interest in this action, or agent for an
      attorney at law in this action, party to this
12    action, or party having a financial interest in
      this action.  Any and all financial arrangements
13    beyond our usual and customary rates have been
      disclosed and offered to all parties.
14

15        This, the 25th day of October 2019.

16

17

18

19       _____
         FIRM REPRESENTATIVE
20       IST REPORTING

21

22

23

24

25    Job No. 538
```



```
 1                        ERRATA PAGE

 2              Pursuant to Rule 30(e) of the Federal
          Rules of Civil Procedure and/or Georgia Code
 3        Annotated 9-11-30(e), any changes in form or
          substance which you desire to make to your
 4        deposition testimony shall be entered upon the
          deposition with a statement of the reasons given
 5        for making them.  To assist you in making any such
          corrections, please use the form below.  If
 6        supplemental or additional pages are necessary,
          please finish same and attach them to this errata
 7        sheet.

 8              I, the undersigned, ABIGAIL DIAZ-PEDROSA,
          hereby certify that I have read or have had read to
 9        me the foregoing, and that to the best of my
          knowledge said is true and accurate with the
10        exception of the following corrections.

11

12        Page/Line/      Change    /    Reason

13        _____/_____/_____/_____

14        _____/_____/_____/_____

15        _____/_____/_____/_____

16        _____/_____/_____/_____

17        _____/_____/_____/_____

18        _____/_____/_____/_____

19        _____/_____/_____/_____

20        _____/_____/_____/_____

21        _____/_____/_____/_____

22        _____/_____/_____/_____

23        _____/_____/_____/_____

24        _____/_____/_____/_____

25        _____/_____/_____/_____
```



```
 1   Page/Line/        Change    /    Reason

 2   _____/_____/_____/_____

 3   _____/_____/_____/_____

 4   _____/_____/_____/_____

 5   _____/_____/_____/_____

 6   _____/_____/_____/_____

 7   _____/_____/_____/_____

 8   _____/_____/_____/_____

 9   _____/_____/_____/_____

10   _____/_____/_____/_____

11   _____/_____/_____/_____

12   _____/_____/_____/_____

13   _____/_____/_____/_____

14   _____/_____/_____/_____

15   _____/_____/_____/_____

16

17

18                    _____
                      ABIGAIL DIAZ-PEDROSA
19

20   Sworn to and subscribed before me
     this _____ day of _____, 20___.
21

22   _____
     Notary Public.
23   My Commission Expires _____.

24

25   Job No. 538
```

**1**

**1** 5:5 27:23 28:14,19,21
**10** 10:11
**11** 5:6,8,18,21
**12** 5:18
**13** 5:19
**14** 5:15,19,20
**15** 5:7,19 10:13

**2**

**20** 13:1,3,7,9
**2004** 6:18
**2007** 11:10
**2009** 20:16
**2012** 9:7
**2014** 9:21
**2017** 10:4

**3**

**30(b)(6)** 4:3 5:2
**31** 13:21,23

**4**

**4:56** 32:25

**A**

**Abby** 4:23
**Abigail** 4:16,22
**accurate** 5:25
**acquire** 11:9
**acquired** 11:8,23
**acquisition** 11:11,12 12:2 15:13 24:18
**acted** 27:11,21
**action** 10:24 12:5 21:21 22:25

**actions** 17:19
**acts** 31:6
**administrative** 15:23 16:8 17:8 18:4 25:17 29:7
**advance** 18:18
**advice** 20:2,24 21:8,18, 21 22:5,25 23:18 26:7, 11 27:5 31:11
**advise** 21:4
**advised** 29:21
**advising** 19:11
**agree** 13:23 14:13
**agreeing** 27:24
**agreements** 5:11
**allegations** 16:4
**alleged** 13:13
**alleging** 13:11
**allowed** 4:6
**ambiguous** 16:1
**and/or** 25:25
**anymore** 24:1
**applicability** 17:8
**applied** 15:24
**appropriately** 15:24
**approval** 14:4 27:9
**Approve** 13:25 14:1
**approving** 14:16
**aspects** 16:4
**assistance** 17:3
**associate** 8:16 9:17
**athlete** 7:20,22
**Atlanta** 7:9 8:1
**attorney** 16:17,20 21:5, 6 28:10
**attorney/client** 23:10
**avoid** 27:10,25 28:17
**aware** 14:15 21:3

**B**

**back** 5:4 14:19 17:19
**background** 6:14
**based** 22:25
**basis** 29:23
**Beall** 10:15,23 14:21 15:1 17:9,22 21:2 23:14 27:4 28:23
**Beg** 28:6
**began** 8:12
**begin** 8:10
**beginning** 29:18
**behalf** 19:12 21:17 30:15
**belief** 27:11,20
**bill** 26:16
**billed** 26:8 27:6
**billing** 26:10
**Bob** 16:15 17:20 31:25
**brother-in-law** 7:1
**buckets** 18:19
**business** 18:16 25:21 26:3

**C**

**call** 10:1
**called** 10:7 14:25
**caption** 14:12
**case** 4:9 12:21 13:17 14:1,2,11,12,17 15:23 17:1 27:25 28:17
**categories** 24:14,17
**CEO** 10:22
**change** 9:19 10:2 20:1
**changed** 24:20,21
**chief** 10:1,2,5
**Circuit** 8:13

**City** 8:21
**Civil** 4:3,7
**classification** 18:10 20:25
**classified** 16:7 20:3 25:10 26:19
**classifying** 18:2
**clerked** 8:12
**clients** 18:17
**clue** 8:4
**collective** 10:24 12:4
**college** 6:16
**common** 12:1
**communicated** 31:21, 22
**communications** 19:8 32:9,12,13
**company** 10:19 11:6 15:22 17:6 18:8 19:8 21:12,23 23:5,18 26:8, 16 27:8,19 28:10 30:8, 15
**compliance** 26:7
**concluded** 32:25
**confines** 22:12,16
**confirm** 5:25 16:6 27:18
**confirmed** 18:1
**connection** 27:3
**consultant** 12:11
**consultants** 12:5,6 14:23 16:6 18:2,17 20:13,16,25 23:17 24:25 26:18 29:5 31:14 32:14
**context** 27:6
**continue** 15:13 19:16
**continued** 24:17 28:1, 18
**contract** 9:10,16
**contracts** 9:11,13



Greene vs Tyler Technologies          30(b)(6) Abigail Diaz-Pedrosa          10/09/2019

Index: conversations..heard

**conversations** 20:8, 10

**conveyed** 18:23

**copy** 13:24

**Cornell** 6:17,18

**corporate** 4:13 11:5 19:4 22:3 24:6,7 25:2 29:22 30:2 31:18

**corporation** 19:13

**correct** 5:2 10:18 11:4 13:12,18,19 14:11,23 18:10 20:13 27:12,22

**correctly** 28:3,4,13,15, 20

**costs** 27:25 28:17

**counsel** 4:9,11 9:17,25 10:8,10,14 16:12,19,23 21:18

**covered** 5:14

**criminal** 8:8

**cross-examination** 4:2

**customer** 15:3 23:15 24:23

**customers** 9:12 26:4

————————————

**D**

**D.C.** 6:16

**defendant** 4:12 11:2

**Defendants** 11:1

**depending** 25:22

**depose** 30:3

**deposed** 6:3

**deposing** 28:5,7

**deposition** 4:1,5 5:2 6:5 13:21 20:9 25:3 29:13,18 30:11 32:25

**depositions** 6:8

**describing** 32:13

**description** 12:10 24:10

**descriptions** 18:14

**designated** 4:25 5:19

**designation** 11:16 15:17 19:5,15 20:19 21:15 22:3 23:10 31:18

**designations** 24:8 27:1 29:10,19 30:6,9 32:17

**determination** 18:12

**determine** 32:11

**Diaz** 4:23 28:13

**Diaz-pedrosa** 4:16,22

**directed** 29:12

**direction** 29:15

**directly** 25:20

**discovery** 4:6

**discretion** 25:25

**discuss** 5:18

**discussed** 18:20

**District** 7:8,11

**docketing** 14:12

**document** 18:21

**documentary** 18:22 19:20

**documents** 9:14

**drafting** 9:11,13

**duly** 4:17

**duties** 14:22 24:1,3,23 25:20 26:1 29:5,6 31:13

————————————

**E**

**earlier** 12:12

**EDP** 11:3,5,8,9,21,24 15:11,13 24:10,15 25:22 26:3

**education** 15:4,6 23:16 24:23

**educational** 6:14

**Ellis** 8:16,21

**employed** 17:22 32:1

**employees** 11:20 14:22 17:9 23:14

**employing** 25:24

**encompass** 5:20

**end** 13:8,10

**Enterprises** 11:3

**entitled** 13:15

**entity** 11:5 25:24

**evidence** 18:22 19:20

**exact** 23:25

**EXAMINATION** 4:19

**examined** 4:17 12:11

**examples** 23:7

**exceeding** 25:19

**exception** 16:8

**Excuse** 8:18

**Executime** 11:12 12:2

**exempt** 13:14 16:8 18:2 25:10 26:19

**exemption** 15:24 17:8 18:4 23:19 25:17 29:7

**exercised** 25:25

**Exhibit** 5:5 13:21,23

**expense** 27:10

**expenses** 27:20

**express** 28:16

**expressed** 27:8

————————————

**F**

**F-A-L-M-O-U-T-H** 6:22

**fact** 25:24

**Falcons** 8:2

**Falmouth** 6:20

**familiar** 6:7

**Federal** 4:3,7

**fees** 27:25 28:17

**filed** 10:24 13:25 14:2, 10,14,16

**final** 14:1,3

**financial** 21:11,22 23:5

**find** 29:24 32:3,6

**finish** 22:8

**firm** 16:24 17:4

**FLSA** 12:4 13:14 18:3

**folks** 16:6

**Footnote** 27:14,23 28:14,19,21

**form** 12:13 15:15,25 17:10 20:17 21:13 23:2, 8,20 24:5 25:1 26:24 29:8 32:15

**FSLA** 10:24

**full** 4:21

**functions** 12:17 24:16

**funny** 8:3

————————————

**G**

**gave** 20:2

**general** 9:17,25 10:7, 10,14 14:24 15:20 25:21 26:3

**generally** 14:15,17

**Georgetown** 6:15

**Georgia** 6:23 7:8,12

**give** 23:7

**giving** 19:20

**graduated** 6:15,17

**Greene** 4:10

**group** 8:23 16:11

————————————

**H**

**half** 9:2

**happen** 9:18

**happened** 10:3

**head** 16:15

**heard** 7:22



**Herrington** 4:1,8,20
5:9,12,16,22,23 11:19
12:19 13:22 15:21 16:9
17:16 19:9,18 20:23
21:20,25 22:6,13,17,19
23:3,13,24 24:12 25:6,
12,14 26:21 27:7,14,17
28:5,7,12 29:12,24
30:17,25 31:23 32:20

**highest** 13:7

**Hillary** 4:12

**history** 8:8

**hold** 9:22

**hovered** 13:3

**HR** 16:15,16 17:21 32:1

**hundred** 20:12,15

**I**

**identified** 19:14 29:17

**identities** 5:13

**illegally** 27:11,21

**impact** 21:11,22

**impacts** 23:5

**implementation** 12:5,
6,11 14:23 16:6,7 18:2,
17 20:13,15,25 23:17
24:24 26:18 29:5 31:14
32:14

**in-house** 16:18

**included** 5:21 16:14
18:13

**independent** 25:25

**individually** 8:6

**individuals** 18:14

**information** 14:13
18:11,13,15,16,20 19:6,
19,21 29:3,25 31:3,7,12
32:4,7,8,12

**instances** 21:3

**instruct** 23:11 30:12

**internal** 16:11,13,20

**invades** 23:10

**investigate** 15:23

**investigated** 16:3

**investigation** 17:18

**involved** 26:3

**issue** 17:9

**issues** 21:10 23:4

**J**

**January** 10:4

**job** 9:4 12:10 14:22
15:14 18:13 24:3,10,22
29:5,6 31:13

**judge** 8:12 30:1

**judgment** 26:1

**K**

**kind** 7:25

**Kirkland** 8:16,21 9:3

**knowledge** 32:19

**L**

**large** 21:11,22

**law** 6:17 8:10 16:24

**lawsuit** 8:5 16:5 17:23
26:23 32:2

**lawyers** 16:25 17:4

**leaders** 16:16

**learn** 17:18

**legal** 4:21 10:1,2,5
20:24 21:8,18 22:5,25

**level** 14:24

**liaison** 15:4

**liaisons** 23:15 24:23

**limited** 5:12

**lines** 15:4

**litigation** 8:16,25
10:15,24 13:2 14:21
15:1 21:2 23:15 26:14
27:5,10,20 28:1,18

**live** 7:7,9

**living** 7:19

**long** 9:1,22 10:9

**looked** 16:5

**lower** 13:8

**Lynn** 10:8,9,14,19
16:14,17,18 17:20
20:11 31:25

**M**

**made** 19:23 22:6

**Maine** 6:20

**Make** 22:8

**making** 18:12 22:13

**marked** 5:5 13:21

**Matt** 7:16,20 32:24

**matters** 30:8

**Matthew** 4:8

**Mckeeby** 4:11 5:8,10,
14,17 11:13 12:13
15:15,25 16:24 17:1,7,
10,24 18:11 19:3,11,21
20:2,17 21:13,24 22:2,
9,15,18,24 23:8,20 24:5
25:1,9,11 26:2,16,20,24
27:13,16 28:2,6,8 29:4,
8,15 30:3,4,21 31:13,15
32:4,13,15,22

**Mckeeby's** 17:13 21:1
26:7

**Meeting** 25:19

**members** 17:21 32:1

**memory** 29:1

**minors** 7:17

**misclassified** 13:14

**Moore** 10:8,9,14,19
16:14,17,18

**Moran** 4:14

**mother** 7:21

**motion** 13:25 14:1,3,15
27:9

**motions** 14:5

**multiple** 16:3

**N**

**named** 12:24,25

**names** 7:15 17:5

**necessarily** 29:16

**needed** 29:22

**negotiating** 9:13

**nephews** 7:2,17

**nonetheless** 30:5

**nonexempt** 13:16
26:19

**north** 13:1,3

**Northern** 7:7,11

**notice** 22:12,16 25:3

**number** 13:3

**numbers** 5:25

**O**

**object** 11:13,14 12:13
15:15,25 17:10 19:3
20:17 21:13 23:8,20
24:5 25:1 26:24 29:8
32:15

**objection** 21:24 22:2,8,
24 26:20 29:23 30:21
31:15,17

**objections** 22:7,14

**obtain** 21:8

**office** 8:22

**officer** 10:1,2,5

**operations** 25:21 26:3

**opinion** 17:7,14

**opposed** 26:13

**opt-in** 12:23,24,25

**opt-outs** 13:5,10

**oral** 19:2

**order** 14:16



overlapped 24:24

overtime 13:11,16 18:3

owned 11:6

## P

P-E-D-R-O-S-A 4:22

p.m. 32:25

paid 13:16

pardon 28:6

part 5:20 16:4 27:24 28:17 31:10

partially 23:17

parties 5:13

party 8:5

Pasch 4:12 12:11

past 30:10

Paulo 4:11 6:1 16:24 17:3 21:4 31:9

Paulo's 17:14

people 15:10

perform 14:23

performed 12:16 16:10 25:23 27:3 32:10,14

performing 12:9 23:25 26:1

period 25:22

perspective 26:17

phrased 30:24 31:1

Plaintiff 4:9

plaintiffs 12:9,21,23,24

played 15:10

point 13:5 14:11 23:18

portion 22:22 28:14,19 30:19

position 9:8,15,23 10:21 30:7

possesses 32:11

potentially 21:11,22

practice 8:23 15:20

preexisting 15:14

preliminaries 6:10

prepare 29:22

prepared 30:5,14

preparing 20:8

present 4:11 9:7 30:7

presenting 29:17

President 10:22

previously 5:4 28:20

primary 25:20 26:1

prior 18:12

privilege 23:11

problem 31:5

Procedure 4:4,7

prongs 25:16 29:7 31:8,10

proper 22:7

properly 16:7 18:1 19:14 20:3 25:10 29:21

provide 29:3 30:8

provided 18:20 19:7 27:5 29:4 31:7,11,12 32:7

providing 26:11,22

provisions 18:3

purposes 4:5,6 26:18

pursuant 4:3

## Q

quarterback 8:1

question 11:14,15 12:14 15:16 16:1,21 17:11 19:4,14,17 20:18 21:14 22:20 23:9,21 24:6 25:2 26:15,25 27:16 28:11 29:9,20 30:12,15,16,17,23 31:6 32:16

questions 22:5 32:22

## R

R-Y-A-N 7:5

reaction 16:5

read 22:23 28:2,4,13, 14,19 30:17,20

reason 14:7,9

recall 15:2

receive 21:17

reclassified 13:15 15:12 23:16

record 4:12 22:23 30:20

records 26:10 32:11

reduced 20:4,6 21:8

reducing 22:1

references 15:3

referred 10:23 15:1

referring 5:4

refresh 29:1

regularly 17:15 21:17

related 9:14 25:21

relates 5:10

relatives 6:23

remained 13:9

remember 9:20 15:5 17:4 31:3

repeated 22:21

replace 29:13

reporter 22:23 30:20

representation 21:1 26:13,22 27:4 28:23

representative 4:13 24:7 28:9,10 29:22 30:2 31:18

representing 28:9

requested 22:22 30:19

requiring 23:1

reside 6:19

resolve 27:24

resolved 14:18

resolving 28:16

resources 16:12,13

review 16:10,21 17:2 26:17

role 12:7 16:7 18:15

roles 12:7 13:13 15:10

Rules 4:3,7

Ryan 7:4,16

## S

S-A-N-S-O-N-E 16:15

salary 25:19

Sansone 16:15

Sarah 7:16,20

satisfied 25:16 29:6 31:9

satisfy 31:8

school 6:17 8:11

scope 11:13,15 15:16 19:4 20:18 21:14 22:3 23:9 24:6 25:2 26:25 29:9 31:17 32:16

search 19:23 32:10

semantically 31:2

semantics 31:5

sense 13:2

separately 26:17

settled 12:22,25 13:1,2, 18 14:11 27:19

settlement 5:11 13:25 14:1,4,16,18 27:9

settling 27:9

share 12:1

shared 14:22

showing 18:22

significant 23:4

similar 11:12



simple  26:13

simply  26:22

sir  13:6

sister  7:1

skip  6:10

software  11:23

solicit  17:7 20:24

soliciting  17:13

speak  5:1 15:20 30:5

speaking  22:7,14

specialist  9:10,16 15:5

specialists  23:16 24:24

specific  15:9 21:3

specifically  15:19

spell  6:21

spend  28:22

spoke  17:20,21

sport  7:25

sports  7:23

state  4:21

stated  27:19 30:6

stay  22:11,16

stay-at-home  7:21

stop  22:13

structurally  11:11

substance  19:7 31:21 32:8

sued  15:22

suggest  22:4

summarized  6:1 28:21

summary  27:22

Suzanne  4:9

swear  4:14

sworn  4:17

sympathies  8:20

## T

talk  5:6

talked  24:19

talking  31:25

team  17:14,21 32:1

Technologies  4:2 5:1 10:25 11:7 19:20 20:12 21:7

telling  19:9

test  29:7 31:8,10

testimony  30:8

threshold  25:20

time  10:7,15,17 16:18 17:6,22 20:4 21:1 25:23,24 26:12 31:4 32:2

title  15:7

titles  15:14 24:20

today  5:1

told  18:5,7,9 26:2

top  14:13

topic  5:8,15,18,21,24 11:15 15:16 19:13,15 20:18 21:14 23:9 24:7 26:25 29:9,18 30:5 32:16

topics  5:1,6 31:18

Totenberg  30:1

trainer  15:3 24:4

trainers  23:15 24:11,23

training  18:15

translated  12:17

trouble  31:2

Tyler  4:2,25 9:4,5,9 10:17,25 11:1,7,8 15:13 16:3,5,11,19 17:14,22 18:1,7,9 19:20,25 20:3, 12 21:7,18 24:18 25:11, 22 26:4 27:4,24 28:22 32:1,10

Tyler's  15:20 18:16

## U

type  18:14

typical  21:7

Uh-huh  8:14 18:25 29:2

ultimately  12:21 13:18 14:18

understand  26:15 30:4

understanding  5:5,20 6:2 11:22

University  6:16

## V

vague  16:1

verbal  21:19,21

verbally  23:1

versus  26:22

violations  13:11

## W

wage  18:3

wages  13:16

Washington  6:16

word  15:6

work  6:8 12:9 25:23 27:3 32:13

worked  17:1

working  8:10

writing  18:23,24 20:4,7 21:8 22:1 32:5,7

written  23:2

wrong  31:1

## Y

year  8:15

years  9:2,24 10:11,13

York  8:21



**Errata Sheet**



To assist you in making any such corrections, please use the form below.  If supplemental or additional pages are necessary, please furnish and attach them to this errata sheet.

I, the undersigned, _Abigail Diaz-Pedrosa_, do hereby certify that I have read the foregoing deposition and that to the best of my knowledge said deposition is true and accurate (with the exception of the following corrections listed below).

Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

## Errata Sheet



Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

Page_____Line_____Should read: _____
Reason for change: _____

Sworn to and subscribed Before me this _20TH_ day of _November_, 20_19_.

Deponent's Signature: _____

Notary Public Signature: _____

My Commission Expires: _____

> ANDREA L. FRAVERT
> Notary Public – Maine
> My Commission Expires
> June 1, 2022

934 Glenwood Ave SE, Suite 280, Atlanta, GA 30316
Toll Free: (855) 478-7376 | Email: production@istreporting.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

EXHIBIT: 31
NAME: PIF
DATE: 10-9-2019
J Leitz Moran

| | | |
|---|---|---|
| PATTY BEALL, MATTHEW MAXWELL, TALINA MCELHANY AND KELLY HAMPTON, individually and on behalf of all other similarly situated; | §<br>§<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | 2:08-cv-422  TJW |
| | §<br>§<br>§ | |
| TYLER TECHNOLOGIES, INC. AND EDP ENTERPRISES, INC.<br>Defendants. | §<br>§<br>§ | |

## <u>SECOND JOINT MOTION FOR ORDER APPROVING SETTLEMENT AND MOTION TO PRESENT SETTLEMENT PAPERS IN CAMERA</u>

Plaintiffs Melanie Baird, Joy Bibles, Titus Britt, Jill Brown, Linda Carrington, Larry Churnovic, Edward David, Tony Dodd, Gayla Duke, Amy Dunn, Sandra Dunning, Betty Dupree, Eric Emde, Joy Flynn, Kimberly Gennette, Ronald Grimwood, Kelly Hampton, David Hayner, Kim Huynh, Geraldine Ingram, Bethany Maynard, Tulina McElhaney, Ilene Meyers, Laura Milburn, Kevin Mosenthin, Lorraine Mutch, Thomas O'Haver, Travis Void, Lisa White, and Eyvonne Wilton on behalf of themselves and those Plaintiffs who have opted in to this lawsuit (collectively the "Settling Plaintiffs") and Defendants, Tyler Technologies, Inc. and EDP Enterprises, Inc. (herein collectively "Tyler") (collectively referred to herein as "Parties") file this Second Joint Motion for Order Approving Settlement and Motion to Present Settlement Papers In Camera, and would show the Court as follows:

# I.

## INTRODUCTION

In this Fair Labor Standards Act ("FLSA") action, the Settling Plaintiffs and Tyler jointly request that the Court enter a stipulated order approving the settlement reached between the Parties. The Parties have carefully and exhaustively negotiated a partial, no fault settlement in this action. They have agreed to resolve the disputed factual and legal issues on terms set forth in a settlement agreement, which generally is described below (the "Agreement"). Because the Parties have agreed to maintain the confidentiality of the specific terms of the Agreement, the Parties jointly request to present the Agreement to the Court in camera for review, if necessary, in connection with approval of the settlement.

Pursuant to the Agreement, the Parties seek approval of the settlement. The Parties stipulate to the following: that the settlement agreement reflects a reasonable compromise of issues actually in dispute, the settlement was reached in an adversarial context in which the Plaintiffs were represented by competent and experienced counsel, and the totality of the proposed settlement is fair and reasonable.

# II.

## PROCEDURAL HISTORY

On October 28, 2008, seven (7) Plaintiffs who formerly worked at Tyler and/or Defendant EDP Enterprises, Inc. filed this lawsuit in the United States District Court for the Eastern District of Texas, Marshall Division, alleging overtime violations under the Fair Labor Standards Act ("FLSA"). Thereafter, on May 9, 2009, Plaintiffs filed an Amended Complaint adding additional named plaintiffs who asserted the same overtime claims under the FLSA. By order of June 23, 2006, the Court granted Plaintiffs' Motion for Conditional Certification.

There initially were four (4) different categories of employees in the lawsuit.[1]  In May of 2010, the Parties engaged in a mediation as to three (3) of the four (4) groups of employees in the lawsuit and were able to reach a settlement of those groups' claims which ultimately was approved by this Court by order of December 28, 2010.  Thereafter, the Parties commenced discovery as to the remaining category of Plaintiffs who performed software implementation functions.

Near the close of discovery, and pursuant to the Court's scheduling order, the Parties again participated in mediation before mediator William D. Hartsfield, who had presided over the first mediation and who has extensive experience mediating FLSA collective actions.  After a full day of mediation on January 10, 2011, and further deliberations over the next two days, counsel for the Parties agreed to a final resolution of the claims of the remaining Plaintiffs in the case.

The Plaintiffs and opt-in Plaintiffs subject to this settlement are:  Melanie Baird, Joy Bibles, Titus Britt, Jill Brown, Linda Carrington, Larry Churnovic, Edward David, Tony Dodd, Gayla Duke, Amy Dunn, Sandra Dunning, Betty Dupree, Eric Emde, Joy Flynn, Kimberly Gennette, Ronald Grimwood, Kelly Hampton, David Hayner, Kim Huynh, Geraldine Ingram, Bethany Maynard, Tulina McElhaney, Ilene Meyers, Laura Milburn, Kevin Mosenthin, Lorraine Mutch, Thomas O'Haver, Travis Void, Lisa White, and Eyvonne Wilton.  The Parties, pursuant to the requirements of the FLSA, now request the Court to approve the resolution of the claims of the plaintiffs and opt-in plaintiffs identified above.

---

[1]       Tyler does not intend to waive, through this Joint Motion or otherwise, its contention that the lawsuit is not appropriate for collective action under the FLSA due to divergent job responsibilities and duties of the plaintiffs and opt-in plaintiffs.  As explained more fully herein, Tyler is agreeing to resolve part of this case only to avoid the fees and costs associated with continued litigation and reserves its right to contest certification should the Court not approve the Parties' settlement.

**SECOND JOINT MOTION FOR ORDER APPROVING SETTLEMENT AND MOTION TO PRESENT SETTLEMENT PAPERS IN CAMERA** – PAGE 3

DB1/66378625.1

III.

**THE COURT SHOULD APPROVE THE SETTLEMENT AGREEMENT**

This Court should approve the settlement agreement because the settlement was achieved in an adversarial context, the Settling Plaintiffs are represented by competent and experienced counsel.  Moreover, the Parties stipulate that the settlement provisions are fair and reasonable.

An FLSA claim, except in two circumstances, cannot be waived or settled.  *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945).  The exceptions are, 1) that the Secretary of Labor can supervise the payment of back wages, or, 2) that the employer and employee present the proposed settlement to the district court for approval.  29 U.S.C. § 215(b). Both the Settling Plaintiffs and Defendants request this Court to approve the Parties' settlement agreement.

The settlement was negotiated at arm's length by experienced counsel who protected the rights of the Parties.  Accordingly, the settlement reflects a reasonable compromise regarding bona fide disputes between the Parties with respect to liability and the amount of same under the FLSA.  The Parties have agreed to a proposed settlement in order to avoid the necessity, expense, inconvenience and uncertainty of litigation.  Both Parties are represented by counsel experienced in FLSA cases, and counsel for the Parties believe that settlement is in the best interests of their respective clients.  For these reasons, the Parties respectfully request the Court approve their settlement as to the plaintiffs and opt-in plaintiffs identified herein.

IV.

## THE PARTIES REQUEST THAT THE COURT REVIEW THE SETTLEMENT AGREEMENT IN CAMERA

While the terms of the Settlement Agreement are summarized herein, the Parties have agreed to maintain the terms of the Agreement as confidential.  As such, it is not filed as an exhibit to this motion.  Rather, the Parties have agreed to present the actual Settlement Agreement documents, including, if necessary, affidavits by the Settling Plaintiffs' counsel discussing the Lodestar factors and other issues pertaining to reasonable attorneys for the settlement, in a form agreed to by the Parties, to the Court in camera, should the Court require. Such in camera review will allow the Parties to protect the confidentiality of the specific terms of the Settlement Agreement by avoiding any requirement that the document itself be made a matter of public record.  The Parties would note that the form of the settlement agreement is identical to the one originally submitted to the Court in connection with the previous partial settlement reached by the Parties.

V.

## CONCLUSION

The Parties believe that the settlement reached was a fair and reasonable compromise of the respective positions of both sides.  The Parties therefore respectfully request the Court approve the settlement and enter an order dismissing the claims of the following settling Plaintiffs:  Melanie Baird, Joy Bibles, Titus Britt, Jill Brown, Linda Carrington, Larry Churnovic, Edward David, Tony Dodd, Gayla Duke, Amy Dunn, Sandra Dunning, Betty Dupree, Eric Emde, Joy Flynn, Kimberly Gennette, Ronald Grimwood, Kelly Hampton, David Hayner, Kim Huynh, Geraldine Ingram, Bethany Maynard, Tulina McElhaney, Ilene Meyers, Laura Milburn, Kevin Mosenthin, Lorraine Mutch, Thomas O'Haver, Travis Void, Lisa White,

and Eyvonne Wilton.  Entry of such an order will "secure the just, speedy, and inexpensive

determination" of this action in accordance with Federal Rule of Civil Procedure 1.

Respectfully submitted:

/s/ Laureen F. Bagley                                                    /s/ Paulo B. McKeeby
John D. Sloan, Jr.                                                        Paulo B. McKeeby
Texas Bar No. 18505100                                  Texas Bar No.: 00784571
jsloan@textrialfirm.com                                 paulo.mckeeby@morganlewis.com
Laureen F. Bagley                                                Joel S. Allen
Texas Bar No. 24010522                                  Texas Bar No.: 00795069
lbagley@textrialfirm.com                                joel.allen@morganlewis.com
SLOAN BAGLEY, HATCHER                             Ellen L. Perlioni
  & PERRY LAW FIRM                                    Texas Bar No. 00794155
101 East Whaley Street                                     ellen.perlioni@morganlewis.com
PO Drawer 2909                                             Farin Khosravi
Longview, Texas  75606                                 Texas Bar No. 24043753
phone - 903.757.7000                                    farin.khosravi@morganlewis.com
facsimile – 903.757.7574

Alexander R. Wheeler                                 MORGAN, LEWIS & BOCKIUS LLP
awheeler@rrexparris.com                              1717 Main Street, Suite 3200
Jason Paul Fowler                                       Dallas, Texas 75201-7347
jfowler@rrexparris.com                                 phone - 214.466.4000
R. REX PARRIS LAW FIRM                           facsimile - 214.466.4001
4222010th Street West, Suite 109
Lancaster, CA  93534-3428
phone -  661.949.2595                                 Deron R. Dacus
facsimile – 661.949.7524                              Texas Bar No.: 00790553
                                                   derond@rameyflock.com
John P. Zelbst
zelbst@zelbst.com                                   RAMEY & FLOCK P.C.
Chandra L. Homes Ray                               100 East Ferguson, Suite 500
chandra@zelbst.com                                 Tyler, Texas 75702
ZELBST, HOLMES & BUTLER                       phone – 903.597.3301
PO Box 365                                            facsimile – 903.597.2413
Lawton, OK  73502-0365
phone – 580.248.4844                                 ATTORNEYS FOR DEFENDANTS
facsimile – 580.248.5916                               TYLER TECHNOLOGIES, INC. AND
                                                   EDP ENTERPRISES, INC.

James E. Wren
James_Wren@baylor.edu
One Bear Place, #97288
Waco, TX  78798-7288
phone – 254.710.7679
facsimile – 254.710.2817

ATTORNEYS FOR PLAINTIFFS