IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SUZANNE GREENE,<br><br>  Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC.,<br><br>  Defendant. | Civil Action No. 1:19-cv-1338-AT |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
PARTIAL MOTION FOR SUMMARY JUDGMENT**

1

Plaintiff attempts to downplay her responsibilities as an implementation consultant while simultaneously admitting that implementation consultants are the "heart and soul" of Defendant Tyler Technologies ("Tyler"). Pl. Br., ECF 57-6 at 14. Such inconsistency is the theme of Plaintiff's lawsuit—Plaintiff argues her duties do not support an administrative exempt classification, but her argument is undercut by her own admissions. Not only does Plaintiff boast her high-level management and leadership skills as an implementation consultant with Tyler in her resume, but her motion for summary judgment further acknowledges that she performed job responsibilities that courts have held support an administrative exempt classification in analogous cases assessing positions that involve implementation, training, and other consulting functions performed at client locations. Together, Plaintiff's admissions, the facts at hand, and the case law support a finding that Tyler properly classified Plaintiff as exempt.

**I.   RELEVANT BACKGROUND**

    **A.   Factual Background**

Tyler provides software and technology services to the public sector. Pl. Br., at 2. Tyler acquired ExecuTime Software, LLC ("ExecuTime Software") in June 2006. *Id.* Plaintiff previously worked as an exempt project manager for ExecuTime Software, and transitioned to the equivalent position—known as an implementation consultant—at Tyler following the acquisition. *Id.* at 3; Pasch Decl., ECF 56-3 at ¶

3.  Plaintiff's resume summarizes her duties as an implementation consultant as follows:

> Employer: Tyler Technologies
> Title: Implementation Consultant
> Duration:  February 2016 – Present
> Job Duties
> - Manage multiple client implementations simultaneously, while meeting all project plan deadlines.
> - Build, lead and direct project teams to meet project objectives
> - Strong leadership and delegation skills
> - Set clear expectations and goals for project teams. Track progress against timeline, milestones and budget, revise as needed
> - Hold regularly scheduled meetings with the client to ensure that milestones are met
> - Provide software application training using a variety of delivery methods including web-based and on-site training
> - Coordinate new customer implementations, providing effective training to maximize use the software
> - Excellent communication (written and oral) and interpersonal skills
> - Effective at engaging with people from all backgrounds and work industries

Pl. Dep., ECF 56-4, 55:17-56:1, 57:6-8, Ex. 2.

As Plaintiff acknowledges, her job duties changed only slightly when she moved from a project manager at ExecuTime Software to an implementation consultant at Tyler.  Pl. Br. at 3.  Tyler continued to classify Plaintiff as an exempt employee after the acquisition.  *See gen.* Pl. Compl., ECF 1.  At any time, Plaintiff would handle five to twenty different implementations for various clients, which required determining what needed to be done with respect to each implementation and the priority each implementation would receive based on its status.  Pl. Br. at 6; Pl. Dep. at 96:19-97:5.

As an implementation consultant, Plaintiff's primary job duties included spending 30% to 40% of her time training Tyler's clients on how to effectively use the ExecuTime software—a leading time and attendance solution that manages scheduling, overtime, job costing, and labor data. Pl. Br. at 4, 8. Before conducting a client training, Plaintiff would first review several pieces of information unique to the client—including the client's contract, solutions design, questionnaire, and project plan—to understand the client's historical data and process preferences. Pl. Br. at 5; Pl. Dep. 78:5-80:3, 112:13-25, 149:12-21. Based on the client's structure and preferences, Plaintiff would prepare a training tailored to the client and its project. Pl. Br. at 5. Plaintiff testified she spent an additional 30% to 40% of her time preparing for each training. *Id.* at 8.

Plaintiff conducted trainings either in-person at a client's office or remotely from her home. Pl. Dep. 80:15-20, 80:23-81:17. When conducting in-person trainings, Plaintiff typically would be the only Tyler employee present. Pl. Dep. 107:17-22. Plaintiff varied the content of the trainings depending on the audience. Pl. Br. at 5-6. For example, supervisors required knowledge of certain software functionalities that lower level users did not require. *Id.* As Plaintiff acknowledged, her failure to effectively train clients could result in serious consequences—the

inability of Tyler's clients to use the ExecuTime software and therefore the inability to properly schedule and pay their employees. Pl. Dep. 61:2-17, 121:20-24.

Plaintiff also performed troubleshooting as part of her primary implementation consultant job duties. Pl. Br. at 8-9. Troubleshooting required Plaintiff to interact with Tyler's clients to determine the source of the issue they identified and then assess whether or not she could resolve it. Pl. Dep. 134:21-136:2. If Plaintiff could not resolve the issue, she would escalate it to Tyler's technical support team. Pl. Dep. 136:3-13. Plaintiff remained responsible, however, for resolving the issue and ensuring it was ultimately resolved to the client's satisfaction. Pasch Decl. 3 at ¶ 11.

Throughout the implementation process, Plaintiff was responsible for ensuring Tyler's client's implementation team understood the implementation objectives and remained on track to achieve implementation milestones consistent with project deadlines. Pl. Br. at 7. Plaintiff also exhibited "leadership and delegation skills" by assigning implementation tasks to the client's implementation team. *Id.* (citing Pl. Dep. at 102:5-25). Plaintiff ensured the implementation process remained on track by communicating with the team during weekly or bi-weekly calls. Pl. Br. at 8.

If an implementation fell behind schedule, Plaintiff would alert a project manager and coordinate revisions to the client's implementation timeline. Pl. Br. at 8. On occasion, Plaintiff would extend a training session by asking clients to work through lunch or remain on-site longer. *Id.* at 9. In certain instances where Plaintiff perceived that a client required additional training, Plaintiff would recommend that the client be delayed from "going live"—i.e., moving to the next phase of the implementation. *Id.* at 8.

### B. Procedural Background

On March 26, 2019, Plaintiff filed her lawsuit alleging Tyler violated the FLSA by misclassifying her as an administrative exempt employee and failing to pay required overtime. *See gen.* Compl. On April 6, 2020, Tyler filed a motion for summary judgment arguing it properly classified Plaintiff as exempt, and therefore did not violate the FLSA by failing to pay overtime wages. Def. Mot., ECF 56.[1] Also on April 6, 2020, Plaintiff filed a partial motion for summary judgment arguing Tyler is the successor-in-interest to ExecuTime Software and that Tyler violated the FLSA by misclassifying her as an administrative exempt employee and failing to pay required overtime. Pl. Mot., ECF 57.[2]

---

[1] Tyler also argued that, to the extent the Court determined it violated the FLSA, it did not do so willfully.

[2] Tyler does not contest that it is a successor-in-interest to ExecuTime Software.

## II.     PLAINTIFF IS EXEMPT UNDER THE ADMINISTRATIVE EXEMPTION

### A.     Administrative Exemption Standard

Under the FLSA, certain employees are exempt from overtime requirements, including those in an administrative capacity.  *See* 29 U.S.C. § 213(a).  To qualify for the administrative exemption, an employee's primary job duties must include the: (1) performance of office or non-manual work directly related to management policies or general business operations of the employer or employer's customers; and (2) exercise discretion and independent judgment on significant matters.  29 C.F.R. §§ 541.200(a)(2)-(3).[3]  When determining whether an employee qualifies for an exemption under the FLSA, courts must give a "fair reading" to the exemption rather than construing it narrowly against the employer.  *Encino Motorcars, LLC v. Navarro*, 13 S. Ct. 1134, 1142 (2018).  Plaintiff's primary job duties as an implementation consultant satisfy both elements of the primary duties test for the administrative exemption.

---

[3] Plaintiff does not dispute that her position satisfies the salary basis test component of the administrative exemption.

### B.     <u>Plaintiff's Admissions Regarding Her Job Duties</u>

Plaintiff's admissions and inability to dispute other material facts are fatal to her claim that Tyler misclassified her. Importantly, Plaintiff acknowledges that her job duties as an implementation consultant included the following:

<u>Primary Duties</u>
- "Plaintiff's work consisted primarily of training the employees of her employer's local government customers in how to use ExecuTime time and pay software." Pl. Br. at 2.[4]
- Plaintiff "was also responsible for troubleshooting issues that the customers encountered with the software." *Id*. at 2.
- "Plaintiff's primary duties—both at ExecuTime and Tyler—were dominated by her training activities and, to a lesser extent, troubleshooting." *Id*. at 17.
- Plaintiff spent "30-40 percent of her work time conducting ExecuTime training sessions with Tyler customers" and "30-40 percent of her work time preparing for ExecuTime training sessions with Tyler customers." *Id*. at 8.
- Plaintiff "spent approximately 60-80 percent of her work time preparing for or conducting ExecuTime training sessions with Tyler customers." *Id*. at 23.

<u>Managing Deadlines and Tyler's Client's Implementation Team</u>
- "During an implementation, [Plaintiff] was responsible for ensuring that the customer [*sic*] employees that she trained clearly understood what the project manager had already gone over with them and remind them of their objectives and milestones." *Id*. at 7.
- Plaintiff was responsible for "delegating tasks contained on checklists to the customer's employees who were being trained[.]" *Id*. at 7.
- "If project deadlines were behind schedule, [Plaintiff] would reach out to the project manager and let them know that 'hey, this needs to be revised, we may need to push out that date . . . and "a customer not meeting milestones in the project plan on time could result in postponing a Go-Live deadline." *Id*. at 8.

---

[4] Plaintiff incorrectly claims Tyler omitted any discussion of Plaintiff's training duties, *see* Pl. Br. at 23. Tyler specifically identified Plaintiff's training duties (and their importance) in its discovery responses, ECF 49-1 at 2-3, and in its motion for summary judgment, ECF 56-2 at 7-8.

Balancing Competing Implementation Priorities
- "[T]he number of implementation projects to which [Plaintiff] was assigned ranged from 5 to 20." *Id*. at 8.
- "Because [Plaintiff] dealt with multiple implementations (i.e., projects at once, she had to manage her workload and ensure that the deadlines in multiple concurrent project plans were met." *Id*. at 6.

As discussed below, the aforementioned, undisputed job responsibilities establish that Plaintiff's primary duties included: (1) performing work directly related to the business operations of Tyler's customers by assisting with the successful implementation of payroll and scheduling software, and (2) exercising discretion and independent judgment on significant matters. As a result, there is no genuine issue of material fact that Tyler properly classified Plaintiff as an administrative exempt employee.

### C. Plaintiff Performed Work Directly Related to the Business Operations of Tyler's Customers[5]

"Employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt" under the administrative exemption. 29 C.F.R. § 541.201(c). In addition, "work directly related to assisting with the running or servicing of the business" includes work such as quality control and database administration, among others. *Id*. at §

---

[5] Plaintiff does not appear to dispute that she performed non-manual or office work.

541.201(a), (b). Courts analyzing positions analogous to Plaintiff's implementation consultant role at Tyler consistently have determined that such positions involve the performance of work directly related to the business operations of an employer's customers.[6] Plaintiff's summary judgment filings do not even acknowledge these cases, and equally significant, her filings do not cite to any contrary authority.[7]

For example, in *Verkuilen v. Mediabank, LLC*, the court found the administrative exemption applied where the employee implemented her employer's software for clients and assisted those clients with training, troubleshooting, and modifications to the software. No. 09 C 3527, 2010 WL 3003860, at *1-*2 (N.D. Ill. July 27, 2010), *aff'd*, No. 646 F.3d 979 (7th Cir. 2011). The court emphasized that the employee, like Plaintiff here (a member of the self-described "heart and soul of Tyler"), represented her employer in relationships with customers and that "[t]he essence of [plaintiff]'s job was keeping the clients happy." *Id*. at *4. In addition, the fact that the employee, like Plaintiff, worked away from an office—i.e., remotely

---

[6] The analysis would apply equally to Plaintiff's job duties as a project manager at ExecuTime Software since, as Plaintiff acknowledges, her job duties were essentially the same. Pl. Br. at 3.

[7] Importantly, the majority of the courts discussed *infra* reached their holdings prior to the Supreme Court's recent instruction to give FLSA exemptions "a fair reading" rather than construing them narrowly against the employer. *See Encino*, 13 S. Ct. at 1142. As a result, the Court should use an even more lenient standard when applying the administrative exemption to Plaintiff.

from her home or on-site at a client—supported a finding that the administrative exemption applied because non-exempt status does not fit with an employee who spends much of her work time off-premise where she cannot be supervised. *Verkulien v. MediaBank, LLC*, 646 F.3d 979, 981 (7th Cir. 2011); *see also Brooks v. Healthcare-Iq, Inc.*, No. 8:17-CV-1897-02JSS, 2019 WL 497693, at *8 (M.D. Fla. Feb. 8, 2019) ("An employee who informs his supervisor he is 'working from home' at times of his choosing suggests one vested with discretion, without daily or close supervision. Certainly keeping hourly track of such an employee on a time-clock basis would be problematic for the employer."); *Carbaugh v. Unisoft Int'l, Inc.*, No. H-10-0670, 2011 WL 5553724, at *23 (S.D. Tex. Nov. 15, 2011) (finding administrative exemption applied to software consultant who spent much of his time away from the employer's office and on-site at employer's customers).

Plaintiff ignores the case law discussing the application of the administrative exemption to analogous positions and instead relies on a 2005 Department of Labor ("DOL") Opinion Letter that concludes that planning a weekly schedule does not constitute a matter of significance. Pl. Br. at 18-19.[8] But the record is clear that Plaintiff did much more than arrange the logistics of her schedule and particular

---

[8] Tellingly, Plaintiff does not address whether her primary duties of training and troubleshooting involve work directly related to the business operations of Tyler's customers.

11

tasks on a day-to-day basis (which she also did). Plaintiff ignores that it was her responsibility, for example, to manage her schedule to ensure that she was overseeing project progress to ensure that each of her multiple client assignments achieved deadlines based on the ultimate "go live" date; to ensure that she had effectively, completely, and timely delivered training correctly tailored to each of her multiple client's unique needs; and to accurately understand, assess, and escalate concerns and discuss different alternatives with the project manager when she observed issues so that she could then ensure those issues were fully addressed.[9] Accordingly, when Plaintiff "planned" her schedule she was doing more than determining the rote order of particular daily tasks—she was making sensitive decisions based on client needs, priorities and project deadlines that would have meaningful repercussions beyond the course of her own workday. As such, unlike the employees in the DOL Opinion Letter, Plaintiff's failure to effectively execute her job duties could result in serious consequences—Tyler's clients being unable to use the ExecuTime software, and therefore their inability to properly schedule and pay their own employees. Pl. Dep. 61:2-17, 121:20-24; U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Aug. 19, 2005), *available at* 2005 WL 3308592, at *6

---

[9] *See* Pl. Dep. 54:1-6, 60:20-61:17, 63:6-64:11, 66:23-67:25, 70:16-71:2, 71:12-74:14, 96:19-97:5, 101:5-13, 106:8-107:8, 109:10-17, 110:11-19, 121:20-24.

(noting "the nature and level of importance of an employee's work in relation to managing the employer's (or customer's) business operations" is determinative of exempt status).

Plaintiff's self-identified primary job duties of training and troubleshooting, and the careful analysis and ongoing assessment attendant to each of those duties, required interacting with Tyler's clients on matters of importance—the proper implementation of the ExecuTime software.  That software directly related to the ability of those clients to meet their payroll obligations to their employees—which Plaintiff, who is claiming she was not correctly compensated, clearly believes is a significant part of a business's operations.  As a result, Plaintiff's primary duties involved the performance of work directly related to the business operations of Tyler's clients.

### D. Plaintiff's Primary Duties Involved the Exercise of Discretion and Independent Judgment on Matters of Significance

Plaintiff's admissions further establish that her primary duties involved regularly exercising discretion and independent judgment on matters of significance.  "[T]he exercise of independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have neem considered." 29 C.F.R. § 541.202(a).  It does not, however, "require that the decisions made by an employee have a finality that goes with

13

unlimited authority and a complete absence of review." *Id*. at § 541.202(c). Rather, "decisions made as a result of the exercise of independent judgment may consist of recommendations for action rather than the actual taking of action." *Id*.; *see also Cruz v. Lawson Software, Inc*., 764 F. Supp. 2d 1050, 1067 (D. Minn. 2011) (finding administrative exemption applied to software consultant, reasoning "[t]he discretion to make recommendations can suffice" and the requirement to follow certain methods and guides proscribed by the employer did not constrain employees' discretion).

    1. <u>Plaintiff exercised discretion and independent judgment as an implementation consultant</u>

It is undisputed that Plaintiff's recommendations shaped the course and trajectory of any given implementation assigned to her—including whether the client could "go live" with Tyler's software—and that she often worked directly with the client with little supervision from any other Tyler employee. Moreover, Plaintiff did not merely follow a script when working with a client. Instead, Plaintiff assessed client protocols and procedures, managed competing client deadlines and priorities, created custom training agendas based on client feedback, and was the sole authority on the ExecuTime software when conducting client trainings. Further, when troubleshooting client issues with the software, Plaintiff had to evaluate issues presented, escalate issues as appropriate and ensure they were resolved to the client's

satisfaction. Finally, in addition to her deposition testimony, Plaintiff's own resume correctly emphasizes her management, leadership, and delegation skills. *See Brooks*, 2019 WL 497693, at *7 (finding employee exhibited discretion and independent judgment where employee described himself as a manager and leader).

### 2. Plaintiff acknowledges her training duties involved the exercise of discretion and independent judgment

Plaintiff's argument that she did not exercise discretion and independent judgment depends entirely on her characterization that the training she conducted was rote and insignificant. She contradicts her own argument, though, exposing it as a red herring. In addition to the descriptions she provides in her own resume, her own calculations regarding her job duties belie her suggestion that the training sessions she conducted consisted of simply repeating previously prepared scripts. Plaintiff estimates that she spent approximately 30% to 40% of her time as an implementation consultant preparing for the training sessions she conducted with Tyler's clients. Pl. Br. at 8, 23. This estimate is inconsistent with the idea that Plaintiff took a script off the shelf and regurgitated it to each and every client she was assigned. Instead, it is consistent with the undisputed fact that Plaintiff had to familiarize herself with each client's particular historical data and process preferences. Pl. Br. at 5; Pl. Dep. 78:5-80:3, 112:13-25, 149:12-21. Of necessity, this type of training varied from client to client and required significant analysis and

rlstanbe-152953212.5.doc

client interaction to "prepare" for the training by communicating with the client and understanding its preferences with regard to system data and routing. A pre-packaged training program prepared by others would not have required Plaintiff to devote so much of her time to preparing for the client training sessions she conducted. Moreover, as courts have acknowledged, preparing for and presenting client training sessions similar to those performed by Plaintiff involves the exercise of discretion and independent judgment. *See infra* § II(D)(3). Plaintiff does not direct the Court to any case that has held that the training duties similar to those Plaintiff performed did not involve discretion and independent judgment.

### 3. Plaintiff's authority is inapposite and does not rebut precedent finding analogous positions are exempt

As noted above, Plaintiff fails to cite any analogous case law. And again, courts have held that employees in positions similar to Plaintiff's implementation consultant role exercise discretion and independent judgment and qualify for the administrative exemption. In *Verkuilen*, for example, the district court held that the employee exercised discretion and independent judgment when performing troubleshooting on the employer's software for clients, observing, "when confronted with a client's problem in using [her employer's] software, [the plaintiff] determined the nature of the problem and how to handle it." *Verkuilen*, 2010 WL 3003860, at *4. The court also found that conducting client training and troubleshooting on the

employer's software involved the exercise of discretion and independent judgment, and that while the employee had supervisors to whom she reported, that did not change the fact that she exercised discretion and independent judgment. *Id.*; *see also Cruz*, 764 F. Supp. 2d at 1068 (finding periodic check in with project manager did not proscribe consultant's exercise of discretion and independent judgment). Importantly, the court also noted that, like Plaintiff, the decisions of the employee directly impacted the employer's relationships with its customers. *Verkuilen*, 2010 WL 3003860, at *4.

Again ignoring the case law, Plaintiff cites another DOL Opinion Letter to support her claim that her troubleshooting duties did not require the exercise of discretion and independent judgment on matters of significance. Pl. Br. at 23-24. Plaintiff attempts to compare apples to oranges, as the DOL Opinion Letter addresses employees, unlike Plaintiff, whose **sole** primary duty was troubleshooting. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Oct. 26, 2006), *available at* 2006 WL 3406603, at *4. Moreover, the opinion letter is not persuasive as the troubleshooting performed by the employees in the DOL Opinion Letter did not involve consulting duties like the troubleshooting performed by Plaintiff. *See id.* Plaintiff's troubleshooting functions involved interacting with Tyler's clients to determine the source of the issue; assessing whether Plaintiff could

resolve the issue, and, if not, escalating it to the appropriate individual; and ensuring the issue was ultimately resolved to the client's satisfaction. Pl. Dep. 134:21-136:13; Pasch Decl. at ¶ 11.

In light of Plaintiff's admissions, the supporting facts, and the case law, there is no genuine dispute of material fact that Plaintiff's primary duties—training, troubleshooting, and overseeing the implementation process as a whole—involved the exercise discretion and independent judgment.

### III. CONCLUSION

Plaintiff cannot establish a genuine issue of material fact regarding her proper classification as an administrative exempt employee. As a result, Tyler respectfully requests that the Court deny Plaintiff's partial motion for summary judgment and grant Tyler's motion for summary judgment.

Respectfully submitted this 4th day of May, 2020.

**DENTONS US LLP**

*/s/ Paulo B. McKeeby*
R. Daniel Beale
Georgia Bar No. 043880
dan.beale@dentons.com
Maxwell R. Jones
Georgia Bar No. 451289
max.jones@dentons.com

303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308
Telephone: +1.404.527.4000
Facsimile: +1.404.527.4198

**REED SMITH LLP**

Paulo B. McKeeby
Texas Bar No. 00784571
pmckeeby@reedsmith.com
Amanda E. Brown
Texas Bar No. 24087839
aebrown@reedsmith.com

2501 N. Harwood St., Suite 1700
Dallas, TX 75201
Telephone: +1.469.680.4200
Facsimile: +1.469.680.4299

**COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that on May 4, 2020, I filed a copy of the foregoing document using the Court's CM/ECF system, which will send a Notice of Electronic Filing to all registered attorneys.

*/s/ Paulo B. McKeeby*
Paulo B. McKeeby