## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SUZANNE GREENE, | |
| **Plaintiff,** | |
| **vs.** | **Civil Action No. 1:19-cv-1338-AT** |
| TYLER TECHNOLOGIES, INC., | |
| **Defendant.** | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.1(B) STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

Pursuant to Local Rule 56.1(B)(2), Defendant Tyler Technologies, Inc. ("Tyler") responds to Plaintiff Suzanne Greene's ("Greene" or "Plaintiff") Statement of Material Facts as to Which There is No Genuine Issue to be Tried as follows:

### TYLER'S RESPONSES TO GREENE'S STATEMENT OF MATERIAL FACTS

### STATEMENT NO. 1:

Defendant Tyler Technologies, Inc., is in the business of providing software and technology services to the public sector. Exhibit 1 (Tyler Technologies' Responses to Plaintiff's Requests for Admission), ¶ 7.

EXHIBIT A

US_ACTIVE-152834254.6

**RESPONSE TO STATEMENT NO. 1:**

Undisputed.[1]

**STATEMENT NO. 2:**

"Tyler is the largest company in the United States exclusively focused on providing integrated software and technology services to public sector agencies." Exhibit 4 hereto (excerpt from Tyler Technologies Employee Handbook).

**RESPONSE TO STATEMENT NO. 2:**

Undisputed.

**STATEMENT NO. 3:**

Tyler's gross revenues in 2019 were over $1 billion and in the same year it had gross profits of over $500 million. Exhibit 4 hereto (Tyler Technologies, Inc. Quarterly Statements of Operations As of December 31, 2019 (https://s3.amazonaws.com/b2icontent.irpass.cc/499/180708.pdf) (accessed April 6, 2020), pg. 7.

**RESPONSE TO STATEMENT NO. 3:**

While Tyler notes that this statement is not supported by evidence in the record as required by LR 56.1(B)(1)(a), Tyler does not dispute the statement.

---

[1] For purposes of this filing, an indication that a fact is "undisputed" is not a stipulation that the alleged fact is true for purposes of trial, but rather, an indication that Tyler does not challenge the allegation for purposes of summary judgment.

2

US_ACTIVE-152834254.6

**STATEMENT NO. 4:**

Tyler acquired ExecuTime Software, LLC in June 2016. Exhibit 1, ¶¶ 2–3.

**RESPONSE TO STATEMENT NO. 4:**

Undisputed.

**STATEMENT NO. 5:**

Plaintiff Greene was employed by ExecuTime Software, LLC as a "project manager" beginning in February 2016. Exhibit 1, ¶ 1.

**RESPONSE TO STATEMENT NO. 5:**

Undisputed.

**STATEMENT NO. 6:**

For the first six months approximately, Greene worked with ExecuTime's "Advanced Scheduling" software module, which is primarily used by police and fire departments. Dkt. 47 (Deposition Plaintiff Greene) (Deposition Plaintiff Greene) at 20:2–16, 21:4–13, 23:3–19.

**RESPONSE TO STATEMENT NO. 6:**

Undisputed that during the first six months of her *employment*, Plaintiff worked on the scheduling software described in statement no. 6.

US_ACTIVE-152834254.6

**STATEMENT NO. 7:**

In her position as a project manager, Greene was responsible for building schedules, which involved setting the ExecuTime configurations on the back end so that the correct types of schedules would populate in the software for the clients. Dkt. 47 (Deposition Plaintiff Greene) at 25:25 to 26:10.

**RESPONSE TO STATEMENT NO. 7:**

Undisputed that *one* of Plaintiff's responsibilities was building schedules as described above in statement no. 7.

**STATEMENT NO. 8:**

However, "building schedules" did not mean that Greene was programming the software; as Greene put it, "I'm not very technical, so when it comes to, like, programming and things in depth on the technical side, I did not handle any of that. All of that would go through tickets." Dkt. 47 (Deposition Plaintiff Greene) at 26:11–19.

**RESPONSE TO STATEMENT NO. 8:**

Undisputed.

4

US_ACTIVE-152834254.6

**STATEMENT NO. 9:**

Greene would simply create the schedule based on a questionnaire that the client filled out in consultation with the project manager examining the customer's policies and procedures. Dkt. 47 (Deposition Plaintiff Greene) at 27:1–18.

**RESPONSE TO STATEMENT NO. 9:**

Disputed.   The evidence cited does not support this statement and the statement mischaracterizes the cited testimony.  The statement mischaracterizes the evidence and suggests the practice described applied to every implementation Greene conducted.  Dkt. 47 (Greene Deposition) at 27:1–18.  The statement also is inconsistent with Plaintiff's Statement No. 7 which states that the project manager would meet with the client and then build the schedule based on these discussions. *Id.* at 25:11–13, 26:20–27:14.

**STATEMENT NO. 10:**

Tyler continued to employ Greene, and most other ExecuTime employees after acquiring ExecuTime, and continued to provide services to most of ExecuTime's customers following the acquisition. Exhibit 1, ¶¶ 8–9.

**RESPONSE TO STATEMENT NO. 10:**

Undisputed.

US_ACTIVE-152834254.6

**STATEMENT NO. 11:**

After the acquisition, Greene's title was changed to "implementation consultant." Dkt. 47 (Deposition Plaintiff Greene) at 22:12–29.

**RESPONSE TO STATEMENT NO. 11:**

Undisputed.

**STATEMENT NO. 12:**

Her job duties changed only slightly, other than the fact that she was working with a different ExecuTime software module that performed different tasks and was no longer building schedules. Dkt. 47 (Deposition Plaintiff Greene) at 23:22 to 25:20; Exhibit 2 (Declaration of Suzanne Greene), ¶ 4.

**RESPONSE TO STATEMENT NO. 12:**

Disputed.  The evidence cited does not support this statement.  Tyler disputes the contention that Greene's duties changed "only slightly."  Dkt. 47 (Deposition of Plaintiff Suzanne Greene) at 24:18–25, 27:23–28:2.  Further, Greene testified that, as an implementation consultant, she still had scheduling responsibilities in certain instances.  *Id.* at 25:21–23.

**STATEMENT NO. 13:**

In a March 2019 implementation job description, Tyler described ExecuTime as follows:

6

US_ACTIVE-152834254.6

ExecuTime™ is a leading time and attendance solution that empowers employees via self-service functionalities and allows supervisors to closely manage overtime, job costing, and labor data through reduces expenses. ExecuTime time assists organizations with the most complex time and seamlessly integrates with payroll software solutions. The Implementation Consultant is responsible for delivering high quality knowledge training to clients allowing them to use Tyler software products efficiently and effectively to achieve daily operations. The incumbent consults and partners with clients to gain a comprehensive understanding of workflow, business/technical requirements and needs to ensure that the knowledge transfer addresses client's needs. The Consultant ensures that the transition to Tyler software is completed according to predetermined timelines and establishes a positive baseline for the new relationship between the client site and Tyler Technologies.

Exhibit 1, ¶ 81.

## RESPONSE TO STATEMENT NO. 13:

Undisputed.

## STATEMENT NO. 14:

An example of the "high-quality knowledge training" that Greene performed as an implementation consultant may be viewed in the attached video exhibit, which is an example of Plaintiff performing remote timeclock training for the city of Hendersonville, TN on April 18, 2018. Exhibit 3 hereto (placeholder for video exhibit).

US_ACTIVE-152834254.6

**RESPONSE TO STATEMENT NO. 14**:

Partially disputed.  Tyler does not dispute that Greene attached a video of her performing certain of her job duties as an implementation consultant but does not agree that the depiction is representative of every training that Greene provided to Tyler's clients.  As Green testified, the trainings varied in content and form and that certain trainings were remote versus in-person and involved different users (e.g., power users, end users).  Dkt. 47 (Greene Deposition) at 80:19–22, 123:19–124:3. In addition, Greene testified that each training contained a unique question and answer portion.  *Id.* at 125:18–126:10.

**STATEMENT NO. 15:**

The first step for any ExecuTime customer is talking with a sales representative and possibly a "product owner" who focuses on a specific software. Dkt. 46 (30(b)(6) Deposition of Hillary Pasch) at 33:6–16.

US_ACTIVE-152834254.6

**RESPONSE TO STATEMENT NO. 15:**

Disputed.  The evidence cited does not support this statement and the statement mischaracterizes the cited testimony.  Tyler representative Hillary Pasch ("Pasch") testified as to the typical practice regarding customer inquiries regarding the ExecuTime software, but Plaintiff's statement mischaracterizes that testimony to suggest that Pasch testified as to what every potential customer in every situation does.[2]  Dkt. 46 (Pasch Deposition) at 33:6–16.

**STATEMENT NO. 16:**

Once the customer has decided on what software it will purchase and what kind of service package (e.g., daily, hourly, milestone, or paid in full), a sales representative creates a contract, which also goes through the legal department. Dkt. 46 (30(b)(6) Deposition of Hillary Pasch) at 35:11 to 36:13.

**RESPONSE TO STATEMENT NO. 16:**

Disputed.  The evidence cited does not support this statement and the statement mischaracterizes the cited testimony.  Pasch testified only that she "believed" a sales representative creates a contract, and that it also must go through Tyler's legal team.

---

[2] Further, the citation to the record does not fully support the statement.  The correct citation should also include Dkt. 46 (30(b)(6) Deposition of Hillary Pasch) at 34:13–18.

US_ACTIVE-152834254.6

**STATEMENT NO. 17:**

After the contract has been signed, the sales rep. sends the contract to a team in the ExecuTime division, consisting of the Manager of Implementation, the Director of ExecuTime, and the Manager of Implementation and Support. Dkt. 46 (30(b)(6) Deposition of Hillary Pasch) at 40:6–24.

**RESPONSE TO STATEMENT NO. 17:**

Disputed.   The evidence cited does not support this statement and the statement mischaracterizes the cited testimony by overgeneralizing it.   Pasch testified about what may occur after a contract is signed with a new customer, but Plaintiff's statement mischaracterizes that testimony to suggest Pasch testified as to what happens after a contract is signed with every new customer.   Dkt. 46 (Pasch Deposition) at 40:6–24.

**STATEMENT NO. 18:**

They determine what modules have been purchased and assign it to a project manager and an implementation consultant. Dkt. 46 (30(b)(6) Deposition of Hillary Pasch) at 41:24 to 42:16.

US_ACTIVE-152834254.6

**RESPONSE TO STATEMENT NO. 18:**

Disputed.   The evidence cited does not support this statement and the statement mischaracterizes the cited testimony.  Pasch provided general testimony about what the manager of implementation, the director of ExecuTime, and the manager of implementation and support may do after receiving a new contract, but Plaintiff's statement mischaracterizes that testimony to suggest that this process occurs in every instance.   Dkt. 46 (Pasch Deposition) at 41:24–42:16.

**STATEMENT NO. 19:**

The project manager typically works with the same implementation consultant on each project. Dkt. 46 (30(b)(6) Deposition of Hillary Pasch) at 43:7–10.

**RESPONSE TO STATEMENT NO. 19:**

Undisputed.

**STATEMENT NO. 20:**

The project manager then reads the contract, determines where it will be installed physically, if timeclocks need to be purchased, and whether there is a mobile module. Dkt. 46 (30(b)(6) Deposition of Hillary Pasch) at 43:19 to 46:11.

11

**RESPONSE TO STATEMENT NO. 20:**

Partially disputed because the cited testimony is incomplete and does not accurately reflect Pasch's testimony in all respects regarding this phase of the implementation process.  Moreover, the statement incorrectly suggests that this process applies to every implementation Tyler conducts.  As such, the evidence cited does not support this statement and the statement mischaracterizes the cited testimony.

**STATEMENT NO. 21:**

When a project is assigned to an implementation consultant, they too first read the contract and then based on what the customer has purchased, she is responsible for creating a "template" based on that information to set up the ExecuTime software in preparation for customer training. Dkt. 46 (Deposition of Hillary Pasch) at 67:10–16.

US_ACTIVE-152834254.6

**RESPONSE TO STATEMENT NO. 21:**

Partially disputed because the cited testimony is incomplete and does not accurately reflect the process associated with the initial phase of a typical implementation.  As such, the evidence cited does not support this statement and the statement mischaracterizes the cited testimony.   Pasch testified that the implementation team reads the client contract.  Dkt. 46 (Pasch Deposition) at 65:14–22.  She further testified that the implementation consultant creates a template based on the client's questionnaire, statement of work, and initial project timeline as well as any other information the implementation consultant was provided.  *Id.* at 65:20–67:14.  The implementation consultant then works with the client to set up the ExecuTime software in preparation for training.  *Id.* at 67:14–16.

**STATEMENT NO. 22:**

Tyler claims that implementation consultants typically decide with the client whether to have in-person trainings or remote, but cannot identify any instance of Plaintiff Greene ever doing that. Dkt. 46 (30(b)(6) Deposition of Hillary Pasch) at 70:2 to 71:8.

US_ACTIVE-152834254.6

**RESPONSE TO STATEMENT NO. 22:**

Partially disputed.  Tyler does not dispute that implementation consultants typically coordinate and confer with the client to jointly determine whether to conduct remote or in-person training. The evidence cited does not support the remaining portions of the statement and the statement thus mischaracterizes the cited testimony.  Pasch was only asked if she could identify examples of documents, not whether she could recall specific examples of Greene making a recommendation to a client regarding whether to have in-person or remote trainings.  Dkt. 46 (Pasch Deposition) at 70:15–8.  Pasch further testified that recommendations regarding in-person or remote trainings typically occurred via telephone calls.  *Id.* at 70:15–20.

**STATEMENT NO. 23:**

Greene testified that, typically, in-person training sessions were for "power users," "end users," and "super users" (supervisors) who required knowledge of functionalities that lower level users did not. Dkt. 47 (Deposition Plaintiff Greene) at 105:11–16.

**RESPONSE TO STATEMENT NO. 23:**

Undisputed.[3]

_____

[3] Though Tyler does not dispute this statement, the citation to the record does not fully support the statement.  The correct citation should also include Dkt. 47 (Greene Deposition) at 83:21–84:4.

14

US_ACTIVE-152834254.6

**STATEMENT NO. 24:**

Greene did not set the deadlines in the project plans but had to be aware of them. Dkt. 47 (Deposition Plaintiff Greene) at 94:20–22.

**RESPONSE TO STATEMENT NO. 24:**

Undisputed.

**STATEMENT NO. 25:**

Because Greene dealt with multiple implementations (i.e., projects) at once, she had to manage her workload and to ensure that the deadlines in multiple concurrent project plans were met. Dkt. 47 (Deposition Plaintiff Greene) at 94:6–19.

**RESPONSE TO STATEMENT NO. 25:**

Undisputed.

**STATEMENT NO. 26:**

In any implementation, the project objectives were communicated to Greene by the supervising project manager and was contained in the project plan, which contained deadlines for when different categories of individual customer employees (e.g., end users, super users) were supposed to complete their training. Dkt. 47 (Deposition of Plaintiff Greene) at 101:5–13.

US_ACTIVE-152834254.6

**RESPONSE TO STATEMENT NO. 26:**

Partially disputed.  Tyler does not dispute that this statement is generally accurate but does dispute that the process outlined in the statement is applicable in every instance.  The evidence cited therefore does not support this statement as written.  Greene testified generally as to how she came to learn about a project's objectives, but the statement mischaracterizes that testimony to suggest that Greene learned of a project's objectives the same way every time she was assigned a new project.  Dkt. 47 (Greene Deposition) at 101:5–13.  Greene also would communicate directly with clients about their particular objectives.  *Id.* at 101:5–13.[4]

**STATEMENT NO. 27:**

This would be done without the involvement of Greene, and only after the project plan was complete would Greene receive the project in a "hand-off call." Dkt. 47 (Deposition of Suzanne Greene) at 103:18 to 104:16.

---

[4] Further, the citation to the record does not fully support the statement.  The correct citation should also include Dkt. 47 (Greene Deposition) at 106:9–23.

16

US_ACTIVE-152834254.6

**RESPONSE TO STATEMENT NO. 27:**

Partially disputed.  Tyler does not dispute that this statement is generally accurate but does dispute that the process outlined in the statement is applicable in every instance.  The evidence cited therefore does not support this statement as written.  Moreover, in the cited portion of the deposition testimony, Greene testified that she set clear expectations and goals for the clients' project teams during the initial "hand-off call".  Dkt. 47 (Greene Deposition) at 103:18–104:16.

**STATEMENT NO. 28:**

Tyler's project managers generally were so involved in Greene's projects that usually [*sic*] did not have to update them about whether project deadlines were being met because they would already be aware.  Dkt. 47 (Deposition of Suzanne Greene) at 98:11 to 99:6.

**RESPONSE TO STATEMENT NO. 28:**

Disputed.  The evidence does not support this statement.  Greene testified that, as an implementation consultant, she updated the project manager on the status of implementations to which she was assigned, and that her recommendations at times resulted in certain deadlines being revised, *see* Statement No. 34.  Dkt. 47 (Greene Deposition) 98:25–99:6.

US_ACTIVE-152834254.6

**STATEMENT NO. 29:**

During an implementation, Greene was responsible for ensuring that the customer employees that she trained clearly understood what the project manager had already gone over with them and remind them of their objectives and milestones. Dkt. 47 (Deposition of Suzanne Greene) at 99:14 to 100:2.

**RESPONSE TO STATEMENT NO. 29:**

Partially disputed.  Tyler does not dispute that Greene was responsible for ensuring that employees of Tyler's customers were properly trained on how to use ExecuTime software or that Greene was responsible for reminding customers of objectives and milestones.  Tyler does dispute that the training provided by Greene was repetitious or the same as that provided by a project manager, and the testimony cited does not support this statement.  Dkt. 47 (Greene Deposition) 99:14–100:2.

**STATEMENT NO. 30:**

When entering into a contract with Tyler for ExecuTime software and support—which occurs prior to Greene's involvement—each client can purchase different amounts of training hours. Dkt. 109:18 to 110:14.

US_ACTIVE-152834254.6

**RESPONSE TO STATEMENT NO. 30:**

Though Plaintiff did not comply with the provisions set out in LR 56.1(B)(1) by identifying the specific evidence relied upon, assuming the partial citation is to Plaintiff's deposition transcript, Tyler does not dispute this statement.

**STATEMENT NO. 31:**

After she would begin working on a project, Greene would keep track of how many hours of training a customer had remaining and, if the customer got down to 10 or 12 hours remaining, Greene would notify the project manager so they could speak to the client and have them purchase more hours, if necessary. Dkt. 109:18 to 110:14.

**RESPONSE TO STATEMENT NO. 31:**

Partially disputed because the cited testimony is incomplete and does not accurately reflect Greene's testimony.  As such, the evidence cited does not support this statement and the statement mischaracterizes the cited testimony. Greene testified that she would consult with her project manager and that Greene may then talk to the client about the purchasing more training hours if Greene believed that additional hours were necessary or recommended.  Dkt. 47 (Greene Deposition) 110:11–14.

US_ACTIVE-152834254.6

**STATEMENT NO. 32:**

Greene did not make recommendations about needing to purchase additional training hours without speaking to a project manager first. Dkt. 109:18 to 110:14.

**RESPONSE TO STATEMENT NO. 32:**

Though Plaintiff did not comply with the provisions set out in LR 56.1(B)(1) by identifying the specific evidence relied upon, assuming the partial citation is to Plaintiff's deposition transcript, Tyler does not dispute that as a general matter Greene would make a recommendation to a project manager to purchase additional training time before discussing the matter directly with the client.  Dkt. 47 (Greene Deposition) 110:11–14.

**STATEMENT NO. 33:**

As part of her training duties, Greene was responsible for delegating tasks contained on checklists to the customer's employees who were being trained "and say, okay, these are the specific items that need to be completed by this date, pretty much like reiterating the project plan that was already put together." Dkt. 47 (Deposition of Suzanne Greene) at 102:2–17.

US_ACTIVE-152834254.6

**RESPONSE TO STATEMENT NO. 33:**

Disputed.   The evidence cited does not support this statement.   Greene testified that she was responsible for delegating particular functions associated with the implementation process to individuals on the client's project team.   Dkt. 47 (Greene Deposition) at 102:18–25.

**STATEMENT NO. 34:**

If project deadlines were behind schedule, Greene would reach out to the project manager and let them know that "hey, this needs to be revised, we may need to push out the date, and then [the project manager] would actually update the project plan. Dkt. 47 (Deposition of Suzanne Greene) at 106:3 to 107:8.

**RESPONSE TO STATEMENT NO. 34:**

Undisputed.

**STATEMENT NO. 35:**

A customer not meeting milestones in the project plan on time could result in postponing a Go-Live deadline. Dkt. 47 (Deposition of Suzanne Greene) at 109:1–17.

**RESPONSE TO STATEMENT NO. 35:**

Undisputed.

US_ACTIVE-152834254.6

**STATEMENT NO. 36:**

Greene typically did not have any role in designing training materials but believes that on one occasion she was asked to update the current training manual template. Exhibit 2 hereto (Declaration of Suzanne Greene), ¶¶ 6–7

**RESPONSE TO STATEMENT NO. 36:**

Disputed.  Tyler objects to the term "training materials" in this statement as vague and undefined in that the statement does not specify the type of training materials to which it refers.  Greene would have had a role and input into certain types of training materials presented at the client site using the client's data and information on the ExecuTime software platform.  Dkt. 47 (Greene Deposition) 124:8–22.  Accordingly, Tyler disputes this Statement.

**STATEMENT NO. 37:**

That update took approximately half of a single day or less. Exhibit 2 hereto (Declaration of Suzanne Greene), ¶ 8.

**RESPONSE TO STATEMENT NO. 37:**

Disputed.  Tyler objects to this statement on the same basis as above in connection with Statement No. 36 given that the phrase "training materials" is vague and undefined.  Accordingly, Tyler disputes this statement.

22

**STATEMENT NO. 38:**

Greene estimates that she spent 30–40 percent of her work time conducting ExecuTime training sessions with Tyler customers, and that she spent 30–40 percent of her work time preparing for ExecuTime training sessions with Tyler customers. Dkt. 47 (Deposition of Suzanne Greene) at 91:24 to 92:18.

**RESPONSE TO STATEMENT NO. 38:**

Undisputed.

**STATEMENT NO. 39:**

Greene spent a small amount of time on weekly or bi-weekly client calls, which ranged from 30 minutes to an hour. Dkt. 47 (Deposition of Suzanne Greene) at 92:19 to 93:4.

**RESPONSE TO STATEMENT NO. 39:**

Disputed.   The evidence cited does not support this statement and the statement mischaracterizes the cited testimony.  Greene testified that the amount of time she spent on weekly or bi-weekly client calls was a smaller percentage of her time, not "a small amount of time."  Dkt. 47 (Greene Deposition) at 92:19–93:4.

US_ACTIVE-152834254.6

**STATEMENT NO. 40:**

At any given time, the number of implementation projects to which Greene was assigned ranged from 5 to 20. Dkt. 47 (Deposition of Suzanne Greene) at 93:14 to 94:1.

**RESPONSE TO STATEMENT NO. 40:**

Undisputed.

**STATEMENT NO. 41:**

The amount of time Greene spent on troubleshooting is more difficult to estimate because it occurred "throughout" her workweek while engaged in other activities, and because some clients needed less help than others. Dkt. 47 (Deposition of Suzanne Greene) at 93:5–13.

**RESPONSE TO STATEMENT NO. 41:**

Partially Disputed.  The evidence cited does not wholly support this statement. In the cited portion of the deposition testimony, Greene does not testify that the troubleshooting she conducted occurred "throughout" her workweek while engaged in other activities.  Dkt. 47 (Greene Deposition) at 93:5–13.  Tyler does not dispute that Greene testified that the amount of time was difficult to estimate because some clients needed more help than other clients.

24

US_ACTIVE-152834254.6

**STATEMENT NO. 42:**

Asked to identify decisions made by implementation consultants that are not reviewed at a higher level, the Company stated that during on- site training, if "the agenda isn't getting done . . . [they may] make a decision that they're going to tell the client they need to come back on-site. And working with the client to get that built into the project timeline, stay longer that day maybe, work through lunch if they need to." Dkt. 46 (30(b)(6) Deposition of Hillary Pasch) at 73:1–15.

**RESPONSE TO STATEMENT NO. 42:**

Disputed.  The evidence cited does not support this statement nor does it accurately reflect Pasch's testimony.  Pasch testified that, if the agenda is not on track for timely completion of the project, the implementation consultants "make a decision that they're going to tell the client they need to come back on-site."  Dkt. 46 (Pasch Deposition) at 73:6–9.  Pasch further testified that, while on-site, it is the implementation consultant's job to work directly with the client to make sure they're making progress, and if a change needs to be made, the implementation consultant will make that recommendation.  *Id.* at 73:13–25.

US_ACTIVE-152834254.6

**STATEMENT NO. 43:**

On a technical review call with a client, an implementation consultant may ask questions taken from a master list of questions that is provided to them, but, Tyler claims, "it's up to the discretion of the implementation consultant to know what questions to ask, what not to ask, what to elaborate on." Dkt. 46 (30(b)(6) Deposition of Hillary Pasch) at 74:8–13.

**RESPONSE TO STATEMENT NO. 43:**

Partially disputed.  The statement suggests that the questions an implementation consultant asks a client are dictated by a "master list of questions" which mischaracterizes the cited testimony.  Pasch testified that "it's up to the discretion of the implementation consultant to know what questions to ask, what not to ask, what to elaborate on."  Dkt. 46 (Pasch Deposition) at 74:8–13.

**STATEMENT NO. 44:**

The only example provided by Tyler: "If [the customer] did not purchase time clocks, maybe the implementation consultant could say, how are you going to be logging in your time? I'd make a recommendation you add time clocks. Or you don't have them on your contract, we're not going to discuss that." Dkt. 46 (30(b)(6) Deposition of Hillary Pasch) at 74:8–21.

US_ACTIVE-152834254.6

**RESPONSE TO STATEMENT NO. 44:**

Disputed.  Plaintiff mischaracterizes the cited deposition testimony.  After asking Pasch to provide examples, Plaintiff asked a follow-up question and then changed subject before Pasch could provide any additional examples.  Dkt. 46 (Pasch Deposition) at 74:8–75:6.

**STATEMENT NO. 45:**

But the Company could not identify any instances in which Plaintiff ever actually made any such recommendation. Dkt. 46 (30(b)(6) Deposition of Hillary Pasch) at 74:22–25.

**RESPONSE TO STATEMENT NO. 45:**

Partially disputed.  Tyler does not dispute that, during her deposition, Pasch, who was produced as a corporate representative to provide testimony concerning Greene's responsibilities and duties in general, was not able to identify a specific example of a client to whom Plaintiff recommended purchasing additional time keeping equipment.

US_ACTIVE-152834254.6

**STATEMENT NO. 46:**

Nor could the Company provide an example of any time that Ms. Greene ever made recommendations to Tyler's customers about making changes to their own payroll systems rather than making changes to the configuration of Executime, or how often such recommendations were made, if ever. Dkt. 46 (30(b)(6) Deposition of Hillary Pasch) at 86:5–21, 90:18 to 91:22.

**RESPONSE TO STATEMENT NO. 46:**

Disputed.  The evidence cited does not support this statement.  In the cited portion of the deposition transcript, Pasch provided a specific example of an instance in which Greene made recommendations regarding changes to a client's payroll system.  Dkt. 46 (Pasch Deposition) at 86:5–21, 91:4–5.

**STATEMENT NO. 47:**

Turlock and Hendersonville were the only two projects for which Tyler produced documents reflecting any of Greene's activities on the job, despite having reviewed approximately 50 project files prior to the production. Dkt. 46 (30(b)(6) Deposition of Hillary Pasch) at 86:22–25, 89:16–22.

US_ACTIVE-152834254.6

**RESPONSE TO STATEMENT NO. 47:**

Partially disputed in that the statement erroneously suggests the representative examples relied on by Pasch are exhaustive of the projects on which Greene exercised discretion and judgement in the performance of her duties.

**STATEMENT NO. 48:**

Tyler Technologies, Inc. was sued in a putative collective action in 2008 for alleged misclassification and overtime violations with respect to implementation consultants. *Patty Beall et al. v. Tyler Technologies, Inc., and EDP Enterprises, Inc.,* 2:08-cv-422 TJW (E.D. Tex. 2008).

**RESPONSE TO STATEMENT NO. 48:**

Undisputed.

Respectfully submitted this 4th day of May, 2020.

DENTONS US LLP

*/s/ Paulo B. McKeeby*
R. Daniel Beale
Georgia Bar No. 043880
dan.beale@dentons.com
Maxwell R. Jones
Georgia Bar No. 451289
max.jones@dentons.com

US_ACTIVE-152834254.6

303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308
Telephone: +1.404.527.4000
Facsimile: +1.404.527.4198

**REED SMITH LLP**

Paulo B. McKeeby
Texas Bar No. 00784571
pmckeeby@reedsmith.com
Amanda E. Brown
Texas Bar No. 24087839
aebrown@reedsmith.com

2501 N. Harwood St., Suite 1700
Dallas, TX 75201
Telephone: +1.469.680.4200
Facsimile: +1.469.680.4299

**COUNSEL FOR DEFENDANT**

30

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 4, 2020, I filed a copy of the foregoing document using the Court's CM/ECF system, which will send a Notice of Electronic Filing to all registered attorneys.


*/s/ Paulo B. McKeeby*
Paulo B. McKeeby