# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SUZANNE GREENE,<br><br>Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC.,<br><br>Defendant. | Civil Action No. 1:19-cv-1338-AT |

## DECLARATION OF HILLARY PASCH

I, Hillary Pasch, declare as follows:

1. I have worked for Tyler Technologies, Inc. ("Tyler") for nearly 4 years. Tyler provides integrated software and technology services (including software implementation services) to the public sector—e.g., states, cities, counties, and school districts. I currently serve as Product Owner in Tyler's ExecuTime business unit. I have worked in that capacity since August of 2019.

2. In May 2016, I began working as a senior project manager for ExecuTime Software, LLC ("ExecuTime Software"). In June 2016, Tyler acquired ExecuTime Software.

3. ExecuTime Software employed project managers—a position that is largely equivalent to the implementation consultant position in Tyler's ExecuTime business unit. Prior to its acquisition by Tyler, ExecuTime Software classified its project managers as exempt employees under the Fair Labor Standards Act.

4. Prior to the ExecuTime Software acquisition, I worked with Suzanne

-1-

US_ACTIVE-152353857

EXHIBIT C

Greene ("Greene") who was a project manager at ExecuTime Software. Greene was classified as an exempt employee during her employment with ExecuTime Software.

5. From July 2017 until August 2019, I worked as Manager of Implementation in Tyler's ExecuTime business unit. In my position as Manager of Implementation, I directly supervised Greene, who worked as an implementation consultant in the ExecuTime business unit.

6. As an implementation consultant, Greene worked directly with Tyler's clients and managed the successful roll out of the ExecuTime software consistent with agreed upon deadlines.

7. Tyler typically staffed an ExecuTime implementation with a project manager and an implementation consultant. The project manager would make the initial client contact and then pass the client to the implementation consultant who would manage the remainder of the implementation process.

8. Greene typically worked with minimal supervision from the project manager during the implementation. As part of Greene's job duties, she was responsible for ensuring that the implementation process remained on schedule with respect to various deadlines throughout the process. The project manager relied directly on Green's reports based on her own assessments of the client's progress. Greene's recommendations to the project manager regarding the status of the implementation would dictate whether additional training would occur, if project milestones needed to be altered, or if some other accommodation was required.

9. One of Greene's primary job duties involved training client's employees on the ExecuTime software. Greene performed trainings either remotely or on-site at a client. When she conducted a training on site, she would be the only

-2-

Tyler employee present. When she conducted training remotely, she would still be the only Tyler employee delivering the training content. The effectiveness of the training provided by Greene directly impacted the client's ability to properly use the ExecuTime software.

10. Operational use of the ExecuTime software is critical to the business and operations of Tyler's clients as the software ensures that Tyler's client's employees—i.e., city and state employees—are scheduled for work and paid correctly. Moreover, if Tyler cannot successfully implement its clients and bring them "live" in a production environment, Tyler cannot transition its implementation consultants to other implementation projects or move a client over to a Tyler support team. Moreover, if an implementation fails, Tyler risks claims under the contract with the client, and faces reputational challenges with prospects that Tyler seeks to sell new licenses to.

11. Greene's core job duties as an implementation consultant also included troubleshooting for problems during the implementation process. If the troubleshooting issue related to training, Greene would be responsible for troubleshooting and resolving the issue directly. If it involved a technical issue within the software, Greene would be responsible for properly escalating the issue to Tyler's technical team for resolution. Greene was responsible for determining whether the issue needed to be escalated or not. Greene was also responsible for ensuring the issue was resolved to the client's satisfaction and that the issue did not prevent the client from using the software in live production.

US_ACTIVE-152353857

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed in  ONSLOW  County, State of  NC , on  4/2 , 2020, at  8:39 am .

*Hillary Pasch*
HILLARY PASCH

US_ACTIVE-152353857