IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **SUZANNE GREENE,** | |
| **Plaintiff,** | |
| **vs.** | Civil Action No. 1:19-cv-1338-AT |
| **TYLER TECHNOLOGIES, INC.,** | |
| **Defendant.** | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS

Plaintiff Suzanne Greene, by and through the undersigned counsel and pursuant to Fed. R. Civ. P. 56 and LR 56.1B(2)a. NDGa, submits her Response To Defendant's Statement Of Material Facts, showing the Court as follows:

1.    **DEFENDANT'S CONTENTION**: In February of 2016, Plaintiff began her employment with ExecuTime Software, LLC ("ExecuTime Software"), which was acquired by Tyler in June 2016. Pl.'s Dep. 8:11–16, 22:12–13.

      **PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 1.

2.    **DEFENDANT'S CONTENTION**: After Tyler acquired ExecuTime Software, Plaintiff moved from a project manager position with Executime Software to an implementation consultant position in Tyler's Executime

business unit. Pl.'s Dep. 22:12–20.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 2.

3.    **DEFENDANT'S CONTENTION**: Plaintiff's resume accurately

summarizes the primary duties, responsibilities and skills associated with her

position as an implementation consultant for Tyler: [IMAGE]

Pl.'s. Dep. 55:17–56:1, 57:6–8; *see also* Pl.'s Dep. Ex. 2, Pl. Suzanne

Greene's Resume.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 3.

4.    **DEFENDANT'S CONTENTION**: After a client purchases the ExecuTime

software, a Tyler project manager and implementation consultant are

assigned to work with the client to implement the software based on a

schedule of tasks and events. Pl.'s Dep. 31:17–32:3.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 4.

5.    **DEFENDANT'S CONTENTION**: While the project manager makes the

initial contact with the client to assess and determine the client's specific

requirements, the project manager then "hands off" the client to the

implementation consultant who completes the implementation process. Pl.'s

Dep. 32:11–23.

**PLAINTIFF'S RESPONSE**: Plaintiff disputes Dfs' ¶ 5. Plaintiff testified

that the project is handed off to the implementation consultant, but that

throughout the remainder of the project the implementation consultant

receives "the backup of the project manager for any questions, directions,

things of that sort." Dkt. 47 (Deposition of Suzanne Greene) at 32:15–23.

Project managers remained so heavily involved in the implementation

process that Greene usually did not have to update them about whether

project deadlines were being met because they would already be aware. Dkt.

47 (Deposition of Suzanne Greene) at 98:11 to 99:6.

1.    **DEFENDANT'S CONTENTION**: After the project manager transitioned a

client to her, Plaintiff as the implementation consultant, worked directly with

the client, often at the client's physical location, with little supervision. Pl.'s

Dep. 32:18–33:13, 77:5–12, 107:17–22.

**PLAINTIFF'S RESPONSE**: Plaintiff disputes Dfs' ¶ 5. While Greene

usually did not conduct the actual trainings in the presence of her

supervising project manager, it is not correct to state that she had "little

supervision." The project manager was heavily involved throughout the

entire implementation process and communicated with Greene daily. Dkt. 47

(Deposition of Suzanne Greene) at 98:11 to 99:6; Exhibit 1 (Second

Declaration of Suzanne Greene. ¶ 13.

6.   **DEFENDANT'S CONTENTION**: During Plaintiff's tenure as an implementation consultant, she handled anywhere from five (5) to twenty (20) different implementations at a time. Pl.'s Dep. 93:14–24.

   **PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 7.

7.   **DEFENDANT'S CONTENTION**: Given the various deadlines and tasks involved with each implementation, part of Plaintiff's job involved regularly analyzing the status of the various implementations to determine her priorities and schedule for the week. Pl.'s Dep. 96:19–97:5.

   **PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 8, but object to the same on the basis of relevance. Because prioritizing one's own schedule is not the type of discretion anticipated by the administrative exemption, this fact is not relevant to any issue in this case.

8.   **DEFENDANT'S CONTENTION**: Plaintiff's job duties broke down into four main areas: (1) setting up the software based on the client's data policies and procedures; (2) conducting training sessions for the client's employees; (3) helping troubleshoot issues identified during the implementation process; and (4) ensuring project deadlines were met throughout the implementation process. Pl.'s Dep. 32:24–33:13, 50:1–11, 58:9–24, 59:23–60:1. 98:11–15, 108:21–109:13.

**PLAINTIFF'S RESPONSE**: Plaintiff disputes Dfs' ¶ 9 and objects to the same because the citations to the record do not support the factual contention. None of the testimony cited establishes that her job duties broke down into the four areas enumerated. Greene testified that she spent 30–40 percent of her work time conducting ExecuTime training sessions with Tyler customers, and that she spent 30–40 percent of her work time preparing for ExecuTime training sessions with Tyler customers. Dkt. 47 (Deposition of Suzanne Greene) at 91:24 to 92:18. She spent approximately 20% of her time on weekly or bi-weekly client calls, which ranged from 30 minutes to an hour. Dkt. 47 (Deposition of Suzanne Greene) at 92:19 to 93:4; Exhibit 1, ¶ 20. Greene also spent time troubleshooting throughout each week while simultaneously performing other duties. Dkt. 47 (Deposition of Suzanne Greene) at 93:5–13.

9. **DEFENDANT'S CONTENTION**: Plaintiff performed her implementation consultant job duties either from her home or at a client site. Pl. Dep. 34:6–9, 60:4–7.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 10.

10. **DEFENDANT'S CONTENTION**: Throughout the entire implementation process, Plaintiff ensured the client understood the implementation

objectives and remained on schedule. Pl.'s Dep. 101:5–13.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 11.

11. **DEFENDANT'S CONTENTION**: Plaintiff conducted weekly or bi-weekly

calls with clients to discuss the status of the implementation to ensure that

deadlines were met and that the project stayed on schedule. Pl.'s Dep.

59:17–60:7, 103:22–104:1.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 12.

12. **DEFENDANT'S CONTENTION**: Plaintiff exhibited "[s]trong leadership

and delegation skills" by deciding which specific implementation-related

tasks needed to be delegated to the client's internal project team. Pl.'s Dep.

102:5–25.

**PLAINTIFF'S RESPONSE**: Plaintiff disputes Dfs' ¶ 13 and objects to the

same because the record citation does not support the factual contention.

Plaintiff testified that she "reiterat[ed]" tasks to Tyler's clients based on a

pre-existing project plan "that was already put together." Dkt. 47

(Deposition of Suzanne Greene) at 102:10–17; see also Exhibit. ¶ 18.

13. **DEFENDANT'S CONTENTION**: Plaintiff routinely updated her project

manager on the status of the implementation and those updates included her

assessment and advice as to whether the client was meeting deadlines. Pl.'s

Dep. 64:12–17, 183:3–9.

**PLAINTIFF'S RESPONSE**: Plaintiff disputes Dfs' ¶ 14 and objects to the same because the record citation does not support the factual contention. Plaintiff did not offer "advice" or "assessments." The citation shows merely that Greene provided objective information to her project manager about whether project deadlines had been met.

14. **DEFENDANT'S CONTENTION**: If Plaintiff believed a client could not meet a particular deadline, she would recommend that the implementation milestone deadlines be changed or, if necessary, that the client purchase more implementation hours based on the budget. Pl.'s Dep. 106:8–107:8, 109:10–17, 110:11–19.

**PLAINTIFF'S RESPONSE**: Plaintiff disputes Dfs' ¶ 15 and objects to the same because the record citation does not support the factual contention. The record citations show that when a customer did not meet pre-established project deadlines, Greene would "communicate" that fact to the project manager because the schedule would necessarily need to be changed. She did not make recommendations herself about customers purchasing more training hours, but would merely inform the project manager that the customer had few training hours remaining; the project manager would

determine whether additional training should be offered. Exhibit 1, ¶¶ 21–22.

15.   **DEFENDANT'S CONTENTION**: Plaintiff also recommended whether or not the client was ready to "go live"—i.e., transition from implementation to Tyler's support team after the software implementation process was completed. Pl.'s Dep. 63:6–64:11, 66:23–67:25.

**PLAINTIFF'S RESPONSE**: Plaintiff dispute Dfs' ¶ 16 and objects to the same because the factual contention is not supported by the record citation. The record citations say nothing about any "recommendations" made by Greene.

16.   **DEFENDANT'S CONTENTION**: On certain occasions, Plaintiff recommended that a client's scheduled "go live" date be delayed either because of technical issues or because the client needed additional training to be ready to use the software in live production. Pl.'s Dep. 70:16–71:2, 71:12–72:4.

**PLAINTIFF'S RESPONSE**: Plaintiff dispute Dfs' ¶ 17 and objects to the same because the factual contention is not supported by the record citation. The record citations say nothing about any "recommendations" made by Greene. Greene merely informed the project manager when a customer was

not meeting pre-established deadlines and the project manager would make a
decision about whether to change the schedule or offer additional training.
Exhibit 1, ¶¶ 10, 12, 15.

17. **DEFENDANT'S CONTENTION**: For example, Plaintiff once
recommended that a client's "go live" date be delayed because the client's
employees had a difficult time grasping the technology. Pl.'s Dep. 71:12–
74:14.

**PLAINTIFF'S RESPONSE**: Plaintiff dispute Dfs' ¶ 18 and objects to the
same because the factual contention is not supported by the record citation.
The record citations say nothing about any "recommendations" made by
Greene.

18. **DEFENDANT'S CONTENTION**: The project manager accepted
Plaintiff's recommendation and, as a result, the client's "go live" date was
pushed out so Plaintiff could conduct additional on-site training with the
client. Pl.'s Dep. 71:12–74:14.

**PLAINTIFF'S RESPONSE**: Plaintiff dispute Dfs' ¶ 19 and objects to the
same because the factual contention is not supported by the record citation.
The record citations say nothing about any "recommendations" made by
Greene.

19.    **DEFENDANT'S CONTENTION**: Conducting client training on the

ExecuTime software represented an important part of Plaintiff's job duties

and comprised roughly 30% to 40% of her time as an implementation

consultant. Pl.'s Dep. 91:24–92:18.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 20.

20.    **DEFENDANT'S CONTENTION**: The effectiveness of the training she

conducted directly impacted the client's ability to use the ExecuTime

software. Pl.'s Dep. 121:20–24.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 21 but

objects to the same on the basis of relevance. Because the effect of an

employee's work on the bottom line of her employer or its customers is not

indicative of having job duties directly related to management or general

business operations, the proffered fact is not relevant to any issue in this

case.

21.    **DEFENDANT'S CONTENTION**: Proper use of the ExecuTime software

is "critical" to the business and operations of Tyler's clients because it

ensures their employees—i.e., city and state employees—are scheduled for

work and paid correctly. Pl.'s Dep. 60:20–61:17, 54:1–6.

**PLAINTIFF'S RESPONSE**: Plaintiff disputes Dfs' ¶ 22 and objects to the

same because the factual contention is not supported by the record citation.

The record citation merely states that "it was critical that the software . . .

perform correctly." Plaintiff further objects on the basis of relevance: that

the software Plaintiff worked with is ultimately "critical" to the

administration of Tyler's customers' businesses is not indicative of her work

being directly related to management or general business relations, and the

proffered fact is thus not relevant to any issue in this case.

22.   **DEFENDANT'S CONTENTION**: About 30% to 40% of client

trainings occurred on site at a client and required Plaintiff to travel to

the client. Pl.'s Dep. 81:7–17, 125:8–25, 107:17–22.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 23.

23.   **DEFENDANT'S CONTENTION**: Plaintiff conducted the other

trainings remotely. Pl.'s Dep. 80:15–81:5.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 24.

24.   **DEFENDANT'S CONTENTION**: Like the format, the substance of

the trainings varied by client. Pl.'s Dep. 125:8–25.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 25, but

objects to any implication that Plaintiff made decisions about what

kind of training was appropriate for a given client or not. The type of

software and training needed was established before Plaintiff became involved in any project. Exhibit 1, ¶¶ 12, 14, 29.

25. **DEFENDANT'S CONTENTION**: Before each training, Plaintiff would communicate with the client regarding the upcoming training and then modify training agendas based on client feedback to create a custom agenda specific to the client's training needs. Pl.'s Dep. 139:6–14, 141:9–142:10.

**PLAINTIFF'S RESPONSE**: Plaintiff disputes Dfs' ¶ 26 and objects to the same because the factual contention is not supported by the record citation. The record citations show that Greene "did not create the actual agenda itself, but [] did update the times and things of that sort," which were based on a "template" that another employee "initially set up." Greene "would go through the initial template that was sent, usually not making many modifications at all, send it to the client, so that if modifications needed to be made . . . then [she] would be able to adjust that." The information that Greene did change in the template typically included new dates and client names. Exhibit 1, ¶ 3.

26. **DEFENDANT'S CONTENTION**: Typically, during the trainings—both remote and on-site—Plaintiff would be the only Tyler employee

present and would both ask and answer questions with trainees. Pl.'s

Dep. 107:17-22, 108:17–19, 125:8-25.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 27.

27.   **DEFENDANT'S CONTENTION**: Performing troubleshooting on client

issues with the ExecuTime software represented another core area of

Plaintiff's job duties. Pl.'s Def. 59:23–60:1, 93:5–13.

**PLAINTIFF'S RESPONSE**: Plaintiff disputes Dfs' ¶ 28 and objects to the

same because the record citation does not support the proffered factual

contention. The record citation says absolutely nothing about

troubleshooting being a "core area" of Greene's job duties, and merely

shows that assisting clients with "troubleshooting" was a "small percentage"

of her work that occurred throughout her workweek while performing other

job duties.

28.   **DEFENDANT'S CONTENTION**: Troubleshooting involves a variety of

issues with the software—e.g., overtime not populating, inability to convert

overtime to comp time—that the client would raise with Plaintiff either

during their weekly calls or during a training. Pl.'s Dep. 133:15–134:10.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 29 but

objects to the same on the basis of relevance. That Plaintiff's job required

she know how to use the ExecuTime software and that she applied this knowledge in instructing Tyler's customers in the use of ExecuTime software does not reflect discretion with respect to matters of significance and therefore is not relevant to any issue in this case.

29. **DEFENDANT'S CONTENTION**: To resolve a troubleshooting issue, Plaintiff would determine: (1) whether the issue was billable to client or involved a non-billable software defect, and (2) whether it involved a training issue or a technical issue. Pl.'s Dep. 134:21–136:2.

    **PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 30.

30. **DEFENDANT'S CONTENTION**: If the troubleshooting issue involved a defect within the software, it was Plaintiff's responsibility to escalate the issue to Tyler's technical team. Pl.'s Dep. 136:3–13.

    **PLAINTIFF'S RESPONSE**: Plaintiff disputes Dfs' ¶ 31 and objects to the same because the record citation does not support the proffered fact. The record citation shows that Plaintiff would refer a software defect to the project manager, and only after that would the issue go to the technical team. In fact, when Plaintiff tried to escalate an issue to the technical team on her own, she was reprimanded for it. Exhibit 1, ¶¶ 4–5.

31.   **DEFENDANT'S CONTENTION**: If the troubleshooting issue involved a

training issue or a technical issue, Plaintiff would be responsible for

troubleshooting and resolving the issue herself. Pl.'s Dep. 135:18–136:2.

**PLAINTIFF'S RESPONSE**: Plaintiff disputes Dfs' ¶ 32 and objects to the

same because the record citation does not support the proffered fact. Greene

merely testified that she "would be able to fix" something like overtime not

populating "because it's not very technical." Plaintiff further objects on the

basis of relevance because the proffered fact in no way demonstrates that

Plaintiff exercised discretion with respect to matters of significance or had a

primary duty directly related to management or general business operations,

and thus the proffered fact is not even relevant to any issue in this case.

32.   **DEFENDANT'S CONTENTION**: In March 2019, Plaintiff took leave

under the Family and Medical Leave Act ("FMLA") for two months. Pl.'s

Dep. 17:11–19.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 33 but

objects to the contention because it is irrelevant to any issue currently before

the Court.

33.     **DEFENDANT'S CONTENTION**: Following her FMLA leave, Plaintiff

resigned her employment. Pl.'s Dep. 17:18–22.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 34.

34.     **DEFENDANT'S CONTENTION**: During her employment with Tyler,

Plaintiff received a salary of $45,000 per year or more. Pl. Dep. 40:1-17;

Pl.'s Dep., Ex. 1, Plaintiff's Offer Letter.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 35.

35.     **DEFENDANT'S CONTENTION**: Tyler paid Plaintiff's salary as a fixed

amount every bi-weekly pay period. Pl. Dep. 51:5-15; Pl.'s Dep., Ex. 6,

Plaintiff's time records.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 36.

36.     **DEFENDANT'S CONTENTION**: The classification of implementation

consultants as exempt under the FLSA was in part based on the advice of

outside legal counsel. 30(b)(6) Dep. 16:3–18:21.

**PLAINTIFF'S RESPONSE**: Plaintiff does not dispute Dfs' ¶ 37.

This 6th day of May 2020,

Respectfully submitted,

**DELONG CALDWELL BRIDGERS
FITZPATRICK & BENJAMIN, LLC**

*s/Matthew W. Herrington*

101 Marietta Street NW                         Mitchell D. Benjamin

Suite 2650                              Georgia Bar No. 049888
Atlanta, Georgia 30303                  Matthew W. Herrington
(404) 979-3171                          Ga. Bar No. 275411
(404) 979-3170 (f)
benjamin@dcbflegal.com                  Counsel for Plaintiff
matthew.herrington@dcbflegal.com