# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SUZANNE GREENE,<br><br>    Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC.,<br><br>    Defendant. | Civil Action No. 1:19-cv-1338-AT |

## DEFENDANT'S REPLY IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

US_ACTIVE-153419919.2

Plaintiff's summary judgment response is largely an effort to distance herself from her prior testimony, her resume, and other undisputed material facts, all of which demonstrate that Plaintiff's job duties satisfy the administrative exemption to the Fair Labor Standards Act ("FLSA"). The weight of that evidence is such that Plaintiff is now resorting to submitting a transparently self-serving affidavit that is unpersuasive and improper. As to Tyler's arguments on willfulness, Plaintiff misstates the summary judgment record, does not fully address Tyler's arguments, and fails to carry her burden to raise an issue of material fact.

**I.     PLAINTIFF'S JOB DUTIES SATISFY THE ADMINISTRATIVE EXEMPTION**

There is no genuine issue of material fact that Plaintiff's job duties satisfy the administrative exemption. Plaintiff's reply is an attempt to walk back her deposition testimony and her representations in resume about her job duties. Even if the Court were to consider her declaration, which in certain respects contradicts her deposition testimony, Plaintiff cannot overcome her previous admissions. Plaintiff's summary judgment response also relies on inapposite authority and fails to distinguish the more analogous case law cited by Tyler.

**A.     Plaintiff Cannot Avoid Her Deposition Testimony Through Her Declaration**

While Plaintiff acknowledged in her deposition that her resume constituted an accurate description of her job duties—Pl.'s. Dep. 55:17–56:1, 57:6–8—Plaintiff's

2

response relies heavily on her new declaration, ECF 69-1, which is inconsistent with her previous testimony and simply restates her counsel's arguments and general factual assertions.[1]  A summary judgment respondent cannot manufacture a genuine issue of material fact through a declaration that, without explanation, contradicts prior sworn testimony in response to unambiguous questions.  *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).  The testimony below shows that this principal applies here:

| Declaration | Deposition |
| --- | --- |
| "My work for Tyler Technologies consisted primarily of training the employees of Tyler's local government customers on how to use its ExecuTime time and pay software." ECF 69-2, Second Declaration of Suzanne Greene ("Decl.") at ¶ 2. | Plaintiff testified that her job duties at Tyler involved training, preparing for the training, troubleshooting, and direct interaction with the client throughout the implementation.  *See* ECF 60, Pl. Dep. 92:1-13 |
| "The training materials I used in my training sessions were drafted by others and typically I merely filled in dates and other minor information like client names." Decl. at ¶ 3. | Plaintiff testified that she added "workshop" information to training agendas – i.e., "breaking it down in more depth the training we're doing" – and sent her agenda to clients for approval. *See* Pl. Dep. 140:15-142:10. |

---

[1] Plaintiff's reliance on her improper declaration is ironic given her unsupported attack on Tyler for supposedly violating the Court's procedures and Local Rules. ECF 69, Pl. Resp. at 3.  Plaintiff fails to identify any specific instance where Tyler did not cite to evidence in support of factual assertions. Moreover, Tyler's alleged misrepresentation of the record is nothing more than Plaintiff's disagreement with Tyler's use of the word "recommend" in lieu of directly quoting Plaintiff's testimony in which she acknowledged providing guidance and making suggestions to Tyler's clients.

| Declaration | Deposition |
|---|---|
| "At no point in my employment did I have any authority to make any significant decisions beyond managing my own workload." Decl. at ¶ 7. | Plaintiff testified she recommended that a client's "go live" date be delayed and that the client receive additional on-site training by Plaintiff. *See* Pl. Dep. 70:16-74:14. |
| "At no point in my employment did I ever recommend that a customer have me come back on-site for additional training." Decl. at ¶ 21.[2] | Plaintiff testified that she had to "go on site and do a little bit more hand holding" after relaying to her project manager that the client did not understand the software. *See* Pl. Dep. 71:12-74:14. |
| "Which functionalities the employees needed to understand how to access and use was based on specifications determined before I became involved in the implementation process." Decl. at ¶ 29. | Plaintiff testified that the client would determine how it wanted to use the software after Plaintiff conducted training on the software and would communicate their decision to Plaintiff. *See* Pl. Dep. 83:21-85:10. |

The unexplained and supposedly new factual assertions in Plaintiff's declaration are, at best, inconsistent with her prior testimony. As such, the Court should not consider the declaration based on the Eleventh Circuit's prohibition on use of sham affidavits in the summary judgment context. *See Van T. Junkins*, 736 F.2d at 657.

---

[2] Plaintiff's deposition testimony is consistent with Tyler's 30(b)(6) witness who testified that Plaintiff coordinated with clients to discuss additional training when needed. ECF 46, Pasch Dep. 73:1-15. Plaintiff criticizes Tyler's 30(b)(6) witness for failing to identify a specific instance where Plaintiff recommended that a client purchase timeclocks, *see* Pl. Resp. at 9, but Plaintiff misconstrues that testimony. Plaintiff's counsel asked for examples of questions that might be asked during a technical review call. Pasch Dep. 74:8-10. In response, the 30(b)(6) witness provided a general example relating to timeclocks. *Id.* at 74:15-21. Plaintiff's counsel's question was not specifically about Plaintiff and the witness did not testify specifically about Plaintiff.

B. **Plaintiff's Own Words Establish She Satisfies the Administrative Exemption**

Plaintiff's own statements confirm there is no genuine issue of material fact that Plaintiff's primary duties satisfy the administrative exemption. During her deposition and again in her response to Tyler's motion for summary judgment, Plaintiff acknowledges the accuracy of her resume. *See* ECF 69-2, Pl. Resp. to Stmt. of Mat. Facts, No. 3; Pl. Dep. 55:17-56:1, 57:6-8.[3] It is therefore undisputed that, as an implementation consultant, Plaintiff:

- Managed multiple clients and competing project deadlines;
- Lead and directed Tyler's clients' employees to ensure a successful implementation;
- Exhibited strong leadership and delegation skills;
- Regularly communicated with Tyler's clients; and
- Provided effective training to maximize Tyler's clients' use of the ExecuTime software.

*See* ECF 56-4, Pl. Dep. at Ex. 2. These responsibilities reflect job duties that satisfy the administrative exemption.

---

[3] Plaintiff attempts to downplay the significance of her resume in her reply in support of her partial motion for summary judgment, ECF 70 at 8, but Plaintiff ignores that not only does her resume acknowledge her "discretion, skill, and independent judgment," but Plaintiff herself acknowledged it is "truthful and accurate." Pl.'s. Dep. 55:17–56:1, 57:6–8. As a result, the Court should consider Plaintiff's resume as evidence of Plaintiff's job duties. *See Brooks v. Healthcare-Iq, Inc.*, No. 8:17-CV-1897-02JSS, 2019 WL 497693, *7 (M.D. Fla. Feb 8, 2019) ("Plaintiff's own words depict the discretion, skill, and independent judgment that he used on the job.").

In support of her summary judgment response, Plaintiff submitted a video of a training session that further evidences her exempt status. *See* ECF 59. During the session, Plaintiff repeatedly makes recommendations to the client about how the client should use particular features of the ExecuTime software. For example, Plaintiff recommends, based on her experience, that the client not use a locations feature. *See id.* Plaintiff also answers several questions from the client regarding potential customization of the ExecuTime software to better suit the client's particular needs. *See id.* When Plaintiff was not able provide a definitive answer, she: acknowledges the importance of the issue to the client; promises to relay the client's concerns through appropriate channels at Tyler; and promises to research the issue thoroughly and to immediately report back to the client. *See id.*

Finally, Plaintiff's attempts to downplay the uniqueness of each client training is undercut, again, by her own testimony. Plaintiff estimates that she spent approximately 30% to 40% of her time as an implementation consultant preparing for client training sessions. Pl. Resp. at 8. This estimate is at odds with the notion that Plaintiff simply took a script off the shelf and regurgitated it in every training session. Rather, as Plaintiff acknowledges, she had to familiarize herself with each client's historical data and process preferences through direct

US_ACTIVE-153419919.2

communications with the client, and then customize the client's training accordingly. Pl. Br. at 5; Pl. Dep. 78:5-80:3, 112:13-25, 149:12-21.

### C. Plaintiff Misstates the Administrative Exemption Standard and Her Authority is Inapposite

#### 1. Plaintiff Misstates the Administrative Exemption Test

Without citing supporting authority, Plaintiff heavily emphasizes the word "directly" from Department of Labor ("DOL") guidance regarding the administrative exemption. Pl. Resp. at 11-15. Employees who perform work related to an employer's customers' general business operations, however, are not required to exert the degree of influence and/or control" that Plaintiff's construction of "direct" suggests. For example, the regulation specifically states that consultants may qualify for the administrative exemption. 29 C.F.R. § 541.201(c) ("Employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt" under the administrative exemption."). Advising or consulting an employer's clients or customers, such as providing a potential tax strategy or explaining how a particular tax regulation applies to a client, does not involve setting an employer's client's tax policy, yet such a role still qualifies as exempt. Plaintiff served an equivalent role to Tyler's ExecuTime clients.

7

Plaintiff similarly misstates the requirements for the level of authority necessary to satisfy the exemption's "matters of significance" requirement. Pl. Resp. at 20 (citing *Allemani v. Pratt (Corrugated Logistics) LLC*, No. 1:12-cv-00100-RWS, 2014 WL 2574536, at * 11 (N.D. Ga. June 6, 2014)).[4]  Plaintiff argues that, to constitute a "matter of significance," job duties must involve a significant financial impact or the ability to bind the company contractually. *Id*.  As the case law makes clear, however, "[t]he term 'matters of significance' does not require a high monetary value, but refers to the importance or consequence of the work performed."  *Bradford v. CVS Pharmacy, Inc*., No. 1:12-CV-1159-TWT, 2016 WL 6462053, at *6 (N.D. Ga. Nov. 1, 2016) (quoting 29 C.F.R. § 541.202(a)) (quotation omitted).  The undisputed material facts show Plaintiff performed work on matters of importance and consequence.  ECF 56, Tyler Mot. at 17-20; Pl. Dep., Ex. 2.

2. Plaintiff's Case Law is Distinguishable

Plaintiff's cited cases either are either distinguishable or do not support Plaintiff's argument that her training and related functions were not exempt duties.  In *Ale v. Tennessee Valley Authority*, the training officer presented

---

[4] *Allemani* involved a trucking company dispatcher's assignment of jobs to truck drivers.  *Allemani*, 2014 WL 2574536, at *11.  Plaintiff's unsupervised client interaction and oversight of the implementation process are not analogous to the limited duties of the dispatcher in *Allemani*.

8

previously prepared lesson plans that were not tailored to particular client specifications. 269 F.3d 680, 686 (6th Cir. 2001). Similarly, the plaintiff in *Kohl v. Woodlands Fire Department* "taught prepackaged classes, delivered preset lectures, or presented preestablished programs" with minimal modification. 440 F. Supp. 2d 626, 640 (S.D. Tex. 2006). Here, Plaintiff spent 30–40% of her time preparing for each training, and that preparation included identifying a client's specific needs and then customizing the client's training to account for those needs. *See* Pl. Dep. at 92:7–18.

Plaintiff's reliance on *Hashop v. Rockwell Space Operations Co.* also is misplaced as that case considered the learned professional exemption, not the administrative exemption. *See* 867 F. Supp. 1287, 1294–99 (S.D. Tex. 1994) (admonishing parties for routinely citing to case law addressing administrative exemption when dispute involved the professional exemption). And, *Gallegos v. Equity Title Co. of America, Inc.* does not even address training duties, but involved an escrow officer who reviewed titles and liens. 484 F. Supp. 2d 589, 593–98 (W.D. Tex. 2007).

   3. <u>The DOL Opinion Letters cited by Plaintiff are Inapplicable</u>

Plaintiff also relies on a 2005 DOL opinion letter that concludes that planning a weekly schedule is not a matter of significance. Pl. Resp. at 14-15. But the record

9

here is clear that Plaintiff did much more than arrange the logistics of her own schedule and particular day-to-day tasks. Plaintiff was responsible, for example, for oversight of project progress to ensure that each of her multiple clients met deadlines; to ensure that she had effectively, completely, and timely delivered training tailored to meet each of her client's needs; and to accurately understand, assess, and escalate concerns when she observed problems with the implementation process to ensure those problems could be addressed to the client's satisfaction.[5] Accordingly, when Plaintiff "planned" her schedule, she was doing more than just determining the rote order of particular daily tasks—she was making sensitive decisions based on client needs, priorities and project deadlines that had meaningful repercussions beyond the course of her own workday. Unlike the employees in the DOL opinion letter, Plaintiff's failure to effectively execute her job duties could result in serious consequences—Tyler's clients being unable to use the ExecuTime software to properly schedule and pay their employees. Pl. Dep. 61:2-17, 121:20-24; U.S. Dep't of Labor, Wage & Hour Div., Op. Ltr. (Aug. 19, 2005), *available at* 2005 WL 3308592, at *6 (noting "the nature and level of importance of an employee's work in relation to managing the employer's (or customer's) business

---

[5] *See* Pl. Dep. 54:1-6, 60:20-61:17, 63:6-64:11, 66:23-67:25, 70:16-71:2, 71:12-74:14, 96:19-97:5, 101:5-13, 106:8-107:8, 109:10-17, 110:11-19, 121:20-24.

10

operations" is determinative of exempt status). Clearly, Plaintiff herself appreciates the significance of her management skills, as she highlighted them in her resume. *See* Pl. Dep., Ex. 2.

Plaintiff cites another DOL opinion letter to argue that her troubleshooting duties did not require the exercise of discretion and independent judgement. Pl. Resp. at 20. Plaintiff attempts to compare apples to oranges, however, as the opinion letter addresses employees, unlike Plaintiff, whose ***sole*** primary duty was troubleshooting. *See* U.S. Dep't of Labor, Wage & Hour Div., Op. Ltr. (Oct. 26, 2006), *available at* 2006 WL 3406603, at *4. The troubleshooting performed by the employees in the DOL Opinion Letter did not involve attendant consulting duties similar to Plaintiff's duties. *See id.* Plaintiff interacted directly with Tyler's clients to determine the source of the issue and assessed whether she could resolve it. If she could not, she escalated the issue or resolved it if she determined through her own analysis that she was capable of doing so. Plaintiff ultimately was responsible for ensuring that the matter was resolved to the client's satisfaction. Pl. Dep. 134:21-136:13; Pasch Decl. at ¶ 11.

    4.    <u>Plaintiff Fails to Distinguish Tyler's Authority</u>

Plaintiff unsuccessfully attempts to distinguish analogous cases holding that positions similar to hers satisfy the administrative exemption. Plaintiff argues

*Verkuilen v. Mediabank*, 646 F.3d 980 (7th Cir. 2011) and *Carbaugh v. Unisoft International, Inc.*, No. H-10, 0670, 2011 WL 5553724 (S.D. Tex. Nov. 15, 2011) are distinguishable because Plaintiff was not involved in decisions regarding customer needs, did not have input in customization of software, and did not determine who received training. Pl. Resp. at 16, 17-18. As discussed above, the training video on which Plaintiff relies is representative of her work with Tyler's clients to identify potential customization of the ExecuTime software for particular client needs. Like the *Verkuilen* and *Carbaugh* employees, Plaintiff served as a "bridge" between the client and the software developers. In addition, Plaintiff admits that she recommended that clients who were struggling with the software receive additional training and that she provided that training to address her perceived concerns. Pl. Dep. 70:16-71:2, 71:12-72:4.[6]

---

[6] Similarly, Plaintiff ignores the propositions for which Tyler cited *Brooks v. Healthcare-Iq, Inc.* Pl. Resp. at 17-18. Tyler did not argue that the job duties in *Brooks* were completely analogous to Plaintiff's (although there are similarities), but instead relied on *Brooks* for the propositions that: (1) working remotely and without daily or close supervision is indicative of an exempt employee, Tyler Mot. at 16; and (2) a plaintiff's admissions on her resume should be considered by the Court as evidence of her job duties. *See id.* at 18-19.

## II.     PLAINTIFF CANNOT ESTABLISH WILLFULNESS

There is no genuine issue of material fact on the issue of willfulness—Plaintiff cannot meet her burden to establish that Tyler willfully misclassified her, and therefore Tyler is entitled to summary judgment on the issue.

### A.     Willfulness Can and Should Be Decided On Summary Judgment

Plaintiff inaccurately sates that "[w]illfulness is almost universally held to be a jury issue that requires credibility determinations." Pl. Resp. at 2. That is not so. When a plaintiff fails to satisfy her burden on willfulness, the issue can and should be determined at summary judgment. *See, e.g.*, *Lockaby v. Top Source Oil Analysis, Inc.*, 998 F. Supp. 1469, 1472 (N.D. Ga. 1998) (granting summary judgment for defendant on willfulness and finding defendant did not act willfully where "plaintiff's job duties were at least sufficiently close to fitting within the criteria for the exemption"); *Duncan v. Brockway Standard, Inc.*, No. 1:90-CV-2867-GET, 1992 WL 510256, at *6 (N.D. Ga. Sept. 21, 1992) (granting summary judgment for defendant on willfulness, noting that the showing needed for a finding of willfulness is a demanding one and plaintiff had not met it).

### B.     Plaintiff Fails to Carry Her Burden on Willfulness

Despite two depositions of Tyler's current and former in-house counsel to seek evidence of willfulness, Plaintiff fails to introduce any competent summary judgment evidence to satisfy her burden. Plaintiff argues that Tyler's settlement of

an FLSA case over ten years ago in a different jurisdiction is somehow evidence of willfulness. A prior settlement, however, has no bearing on whether Tyler violated the FLSA. *See Sullivan v. PJ United, Inc.*, 362 F. Supp. 3d 1139, 1175 (N.D. Ala. 2018) *vacated in part on other grounds* (Aug. 7, 2018) (granting summary judgment for defendant on issue of willfulness, noting "[Defendants'] settlement, in a different judicial district, does not have any bearing on [willfulness] . . . .").

Plaintiff then attacks Tyler for supposedly failing to provide discovery related to the classification of Plaintiff's position. Pl. Resp. at 23. Plaintiff's argument lacks any factual basis. Plaintiff deposed both Tyler's current general counsel—Abby Diaz—and its former general counsel—Lynn Moore. Ms. Diaz and Mr. Moore both provided information relating to Tyler's efforts to investigate the classification of the implementation consultant position. ECF 48, Moore Dep. 10:18-22 ("We talked specifically about the case. We talked specifically about the exemption and non-exemption. We talked specifically about our classifications within Tyler in that context."); ECF 35, Diaz Dep. 16:3-24 (discussing the team that investigated the exemption issue), 17:17-23 (discussing actions taken to investigate the exemption issue); 18:11-20 (identifying three different areas of information that were provided

14

and discussed as part of the investigation into the exemption issue).[7] Plaintiff thus was afforded the relatively unique opportunity to depose Tyler's in-house counsel in this case, and to suggest that she was denied access to necessary discovery is baseless.

Plaintiff's renewed complaints about the Court not granting her permission to depose Tyler's counsel are similarly unfounded. The Court ruled on the issue and ordered Tyler to produce a corporate representative to be deposed rather than is counsel of record. *See* ECF 29, 30. Tyler did so. Plaintiff is effectively arguing that the Court should draw an adverse inference from its own prior discovery ruling.

Finally, Plaintiff completely fails to address Tyler's other arguments against willfulness. Specifically, Tyler also argued that it is industry practice to classify implementation consultants as exempt and that, when it acquired the company formerly known as ExecuTime Software (for whom Plaintiff worked), Plaintiff was performing the same job duties and was classified as exempt. In light of the foregoing, Plaintiff fails to meet her burden to show that Tyler willfully misclassified her as exempt.

---

[7] The fact that Mr. Moore was able to provide detailed information regarding Tyler's investigation is impressive given that Plaintiff's counsel, after moving to compel that deposition, questioned Mr. Moore for only twenty-four minutes.

Respectfully submitted this 20th day of May, 2020.

                    **DENTONS US LLP**

                    */s/ Paulo B. McKeeby*
                    R. Daniel Beale
                    Georgia Bar No. 043880
                    dan.beale@dentons.com
                    Maxwell R. Jones
                    Georgia Bar No. 451289
                    max.jones@dentons.com

                    303 Peachtree Street, NE
                    Suite 5300
                    Atlanta, GA 30308
                    Telephone: +1.404.527.4000
                    Facsimile: +1.404.527.4198

                    **REED SMITH LLP**

                    Paulo B. McKeeby
                    Texas Bar No. 00784571
                    pmckeeby@reedsmith.com
                    Amanda E. Brown
                    Texas Bar No. 24087839
                    aebrown@reedsmith.com

                    2850 N. Harwood St., Suite 1500
                    Dallas, TX 75201
                    Telephone: +1.469.680.4200
                    Facsimile: +1.469.680.4299

                    **COUNSEL FOR DEFENDANT**

## LOCAL RULE 7.1(D) CERTIFICATE

Pursuant to Local Rule 7.1(D), I hereby certify that Defendant's Reply in Support of its Motion for Summary Judgment has been prepared using 14-point Time New Roman font, in compliance with Local Rule 5.1.

*/s/ Paulo B. McKeeby*
Paulo B. McKeeby

## CERTIFICATE OF SERVICE

I certify that on May 20, 2020, I filed a copy of the foregoing document using the Court's CM/ECF system, which will send a Notice of Electronic Filing to all registered attorneys.

*/s/ Paulo B. McKeeby*
Paulo B. McKeeby