IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SUZANNE GREENE, | |
| Plaintiff, | |
| vs. | Civil Action No. 1:19-cv-1338-AT |
| TYLER TECHNOLOGIES, INC., | |
| Defendant. | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.1(B) STATEMENT OF ADDITIONAL MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

Pursuant to Local Rule 56.1(B)(2), Defendant Tyler Technologies, Inc. ("Tyler") responds to Plaintiff Suzanne Greene's ("Greene" or "Plaintiff") Statement of Additional Material Facts as to Which There is No Genuine Issue to be Tried as follows:

1

US_ACTIVE-153384417.2

## TYLER'S RESPONSES TO GREENE'S STATEMENT OF ADDITIONAL MATERIAL FACTS[1]

### STATEMENT NO. 1:

Greene's work for Tyler Technologies consisted primarily of training the employees of Tyler's local government customers on how to use its ExecuTime time and pay software. Exhibit 1 (Second Declaration of Suzanne Greene), ¶ 2.

### RESPONSE TO STATEMENT NO. 1:

Partially disputed.  Tyler admits that training and preparation for training was one of Plaintiff's primary duties, but it was not her only primary duty.  In addition to training, Plaintiff's primary duties included configuring the ExecuTime software based on the client's data policies and procedures; helping troubleshoot issues identified during the implementation process; and ensuring project deadlines were met throughout the implementation process.  ECF 60, Pl. Dep. 32:24-33:13, 58:9-24, 59:23-60:1, 98:11-15, 108:21-109:13.

---

[1] A summary judgment respondent cannot manufacture a genuine issue of material fact through a declaration that, without explanation, contradicts prior deposition testimony that provided clear answers to unambiguous questions. *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). The supposedly new factual assertions in Plaintiff's declaration (that provide the basis for 30 of her 31 statements of additional material facts) are, at best, inconsistent with her deposition testimony.  As such, the court should not consider Plaintiff's declaration pursuant to the sham affidavit rule.

US_ACTIVE-153384417.2

**STATEMENT NO. 2:**

The training materials Greene used in her training sessions were drafted by others and typically she merely filled in dates and other minor information like client names. Exhibit 1, ¶ 3.

**RESPONSE TO STATEMENT NO. 2:**

Partially disputed.  Plaintiff testified at her deposition that, while she did use templates, she typically was required to modify training material templates and her modifications to those templates entailed more than just adding dates and client names.  ECF 60, Pl. Dep. 140:15-142:10.

**STATEMENT NO. 3:**

Greene was responsible for troubleshooting issues that the customers encountered with the software. If the problem could be fixed by simply turning on or off a certain functionality of the software, Greene could fix the problem herself. Exhibit 1, ¶ 4.

**RESPONSE TO STATEMENT NO. 3:**

Partially disputed.  Tyler admits that Plaintiff was responsible for troubleshooting issues clients experienced with the software.  Tyler disputes that the troubleshooting Plaintiff performed was limited to "simply turning on and off a certain function of the software."  Rather, Plaintiff was responsible for determining

US_ACTIVE-153384417.2

if the issue was billable or non-billable and if it involved a training issue or a technical issue. If it involved a training issue or a technical issue, Plaintiff would resolve the issue. If it was a software defect, Plaintiff would escalate the issue to Tyler's technical team, but Plaintiff remained responsible for ensuring the issue was resolved. ECF 60, Pl. Dep. 133:15-134:10, 134:21-136:13; ECF 56-3, Pasch Decl. at ¶ 11.

**STATEMENT NO. 4:**

However, if a customer's problem was at all technical, Greene would speak to her project manager about it, and s/he would then send the customer to the Tyler support group. Exhibit 1, ¶ 4.

**RESPONSE TO STATEMENT NO. 4:**

Partially disputed. While Plaintiff would discuss technical issues with her project manager, Plaintiff was responsible for first consulting with the client to determine whether the troubleshooting issue involved a training or a technical issue. If it was a technical issue that required escalation to Tyler's technical team, Plaintiff would notify her project manager, but Plaintiff was responsible for preparing the ticket escalating the issue and remained responsible for ensuring the issue was resolved to the client's satisfaction. ECF 60, Pl. Dep. 133:15-134:10, 134:21-136:13; ECF 56-3, Pasch Decl. at ¶ 11.

US_ACTIVE-153384417.2

**STATEMENT NO. 5:**

Early in her employment, Greene attempted to send a ticket to the support group without going through my [sic] project manager, and because of that she was reprimanded by an implementation manager. Exhibit 1, ¶ 5.

**RESPONSE TO STATEMENT NO. 5:**

Tyler objects based on relevance.  Whether or not Plaintiff may have been disciplined for failing to notify her project manager before escalating a troubleshooting issue to Tyler's support group is irrelevant the parties' claims and defenses.  Tyler further objects that the term "reprimanded" is vague and ambiguous. Regardless of whether Plaintiff may have failed to follow the proper procedure for escalating a troubleshooting ticket in a particular instance, Plaintiff was responsible for conferring with the client to identify the issue, preparing the troubleshooting ticket, and then ensuring the issue was resolved to the client's satisfaction.  ECF 60, Pl. Dep. 133:15-134:10, 134:21-136:13; ECF 56-3, Pasch Decl. at ¶ 11.

**STATEMENT NO. 6:**

At no point in her employment did Greene advise Tyler's customers as to how they should operate. Exhibit 1, ¶ 6.

5

**RESPONSE TO STATEMENT NO. 6:**

Tyler objects to the phrase "how they should operate" as vague and ambiguous.  Subject to the foregoing and without waiving the same, to the extent the phrase encompasses Plaintiff's recommendations to Tyler's clients on how to best use the ExecuTime software, Tyler disputes Statement No. 6.  For example, the video training that Plaintiff submitted in support of her motion for summary judgment demonstrates that Plaintiff made recommendations to Tyler's clients regarding how they should use in the ExecuTime software.  *See* ECF 57-3, Remote Timeclock Training Video.

**STATEMENT NO. 7:**

At no point in her employment did Greene have any authority to make any significant decisions beyond managing her own workload. Exhibit 1, ¶7.

**RESPONSE TO STATEMENT NO. 7:**

Disputed.  Plaintiff routinely exercised discretion and independent judgment as evidenced by her ability to make significant decisions such as recommending whether a client was ready to progress from the implementation phase to the "go live" phase as well as by her continuous unsupervised interaction with Tyler's clients.  ECF 60, Pl. Dep. 63:6-64:11, 66:23-67:8.  Further, Plaintiff's resume

US_ACTIVE-153384417.2

emphasizes and highlights her management, leadership, and delegation skills.  ECF 60, Ex. 2.

## STATEMENT NO. 8:

At no point in her employment did Greene ever supervise anyone, hire or fire, or do purchasing or contracting. Exhibit 1, ¶ 8.

## RESPONSE TO STATEMENT NO. 8:

Undisputed that Plaintiff did not supervise other Tyler employees.  However, by Plaintiff's own admission in her resume, Plaintiff would "build, lead and direct project teams to meet project objectives."  ECF 60, Pl. Dep., Ex. 2.

## STATEMENT NO. 9:

The decision whether a customer would have in-person trainings or remote trainings was made before Greene was brought in to work on a project. Exhibit 1, ¶ 9.

## RESPONSE TO STATEMENT NO. 9:

Tyler objects based on relevance.  Whether or not Plaintiff was involved in the decision to conduct a training in-person versus remote is irrelevant to whether she performed duties related to the business operations of Tyler's clients or exercised discretion and independent judgment.  As Plaintiff admits, she spent 30% - 40% of her time preparing to conduct client trainings—a figure that evidences the nuances

US_ACTIVE-153384417.2

and variability associated with each particular client training.  ECF 60, Pl. Dep. 92:7-18.

## STATEMENT NO. 10:

Deadlines in project plans were established before Greene became involved in a project. Exhibit 1, ¶ 10.

## RESPONSE TO STATEMENT NO. 10:

Tyler objects based on relevance.  Whether or not deadlines in a project plan were established before Plaintiff became involved is irrelevant as to whether or not Plaintiff exercised discretion and independent judgment.  As Plaintiff admits, if a client was not on track to meet project deadlines, Plaintiff would notify her project manager and recommend that the project deadlines be revised or that additional training occur.  Plaintiff's recommendations had the impact of delaying a client from transitioning from the implementation phase to the "go live" phase.  ECF 60, Pl. Dep. 71:12-74:14.

## STATEMENT NO. 11:

In any implementation, the project objectives were communicated to Greene by her supervising project manager and those objectives were contained in the project plan. That plan contained deadlines for when different categories of

US_ACTIVE-153384417.2

individual customer employees (e.g., end users, super users) were supposed to complete their training. Exhibit 1, ¶ 11.

**RESPONSE TO STATEMENT NO. 11:**

Undisputed.  However, as Tyler notes in its response to Statement No. 10, Plaintiff had the ability to alter the initial deadlines and training schedule contained in the project plan based on her recommendations to her project manager regarding the status of the implementation.

**STATEMENT NO. 12:**

All deadlines and objectives were established before Greene became involved in a project. Exhibit 1, ¶ 12.

**RESPONSE TO STATEMENT NO. 12:**

Disputed.  While initial deadlines and objectives may have been established before Plaintiff become involved in an implementation, Plaintiff had the ability to alter those deadlines and objectives as part of her role as an implementation consultant after she became involved in a project.  *See* ECF 60, Pl. Dep. 71:12-74:14.

**STATEMENT NO. 13:**

Greene typically communicated with her project manager on a daily basis either by phone or email, often several times a day. Exhibit 1, ¶ 13.

US_ACTIVE-153384417.2

**RESPONSE TO STATEMENT NO. 13:**

Disputed.  During her deposition, Plaintiff testified that different project managers would have different levels of involvement. Regardless of the project managers' level of involvement, Plaintiff would be responsible for alerting her project manager to any issues with the implementation that could have an impact on project milestones.  ECF 60, Pl. Dep. 63:24-65:1, 66:23-67:25.

**STATEMENT NO. 14:**

Because the entire implementation plan was established before Greene became involved, but [sic] there were rarely if ever any significant decisions remaining to be made by the customer. Exhibit 1, ¶ 14.

**RESPONSE TO STATEMENT NO. 14**:

Tyler objects to the wording of Statement No. 14 is as vague and ambiguous. Subject to the foregoing objection and without waiving the same, Tyler disputes Statement No. 14.  Plaintiff testified during her deposition that as part of her job duties she would make recommendations that could have an impact on whether a client required additional training before "going live"—i.e., an adjustment to the project plan.  ECF 60, Pl. Dep. 71:12-74:14.

US_ACTIVE-153384417.2

**STATEMENT NO. 15:**

If a client appeared not to be meeting a deadline, Greene would communicate that to my [sic] project manager and the project manager would then work with the customer to determine whether and how to alter the schedule. Exhibit 1, ¶ 15.

**RESPONSE TO STATEMENT NO. 15:**

Partially disputed.  Tyler admits that Plaintiff would make recommendations to her project manager based on Plaintiff's assessment of the status of an implementation.  Tyler disputes that the project manager and not Plaintiff would work with the client to determine whether or how to alter the schedule.  As Plaintiff testified, she would recommend that a client complete additional training and the content of the training the client needed.  ECF 60, Pl. Dep. 71:12-74:14.

**STATEMENT NO. 16:**

Greene never made any recommendations to Tyler customers about the possibility of purchasing additional training hours. Exhibit 1, ¶ 16.

**RESPONSE TO STATEMENT NO. 16:**

Tyler objects based on relevance.  Whether Plaintiff made a recommendation to Tyler's customers about purchasing additional training hours does not negate Plaintiff's exercise of discretion and independent judgment.  Subject to the foregoing and without waiving the same, disputed.  Plaintiff testified that she would make a

11

recommendation regarding purchasing hours, but would alert her project manager first.  *See* ECF 60, Pl. Dep. 110:11-14 (Q: Did you ever recommend to the client that they might need more hours? A: Not unless I spoke to the project manager first, no.).

**STATEMENT NO. 17:**

Greene would typically inform the project manager when a customer had a dozen or fewer purchased training hours remaining and then the project manager would make a decision about recommending additional training to the customer. Exhibit 1, ¶ 17.

**RESPONSE TO STATEMENT NO. 17:**

Disputed for the reasons set for in Tyler's response to Statement No. 16, based on Plaintiff's deposition testimony.

**STATEMENT NO. 18:**

 Greene was responsible for ensuring that the customer employees that she trained clearly understood what the project manager had already gone over with them and remind them of their objectives and milestones. Exhibit 1, ¶ 18.

**RESPONSE TO STATEMENT NO. 18:**

Partially disputed.  Tyler does not dispute that Plaintiff was responsible for ensuring that the customer's employees who she trained clearly understood the implementation objectives and that Plaintiff was responsible for reminding the

US_ACTIVE-153384417.2

customer's employees of implementation objectives and milestones.  Tyler disputes that the project manager communicated with all of the customer's employees who were trained on the software.  During her deposition, Plaintiff testified that the project manager would communicate with the client's project team that consisted of "a few people" regarding objectives, not that the project manager communicated with all of the individuals who were trained on Tyler's software.  ECF 60, Pl. Dep. 99:14-100:10.

## STATEMENT NO. 19:

Greene was responsible for delegating tasks (i.e., training activities) to the customer's employees and reminding them of pre-established deadlines. When doing so, Greene was always merely reiterating what the project manager had already gone over with the customer. Exhibit 1, ¶ 19.

## RESPONSE TO STATEMENT NO. 19:

Partially disputed.  Tyler does not dispute that Plaintiff was responsible for delegating tasks to Tyler's customers' employees and reminding them of pre-established deadlines.  However, Tyler disputes that when doing so Plaintiff was "merely reiterating what the project manager had already gone over with the customer."  As Plaintiff's resume states, she would "build, lead, and direct project teams to meet project objectives."  ECF 60, Pl. Dep., Ex. 2.

13

**STATEMENT NO. 20:**

Weekly or bi-weekly client calls, which ranged from 30 minutes to an hour, took up approximately 20% of Greene's typical workweek. Exhibit 1, ¶20.

**RESPONSE TO STATEMENT NO. 20:**

Undisputed.

**STATEMENT NO. 21:**

At no point in her employment did Greene ever recommend that a customer have her come back on-site for additional training. Exhibit 1, ¶21.

**RESPONSE TO STATEMENT NO. 21:**

Disputed.  During her deposition, Plaintiff provided an example of a client whose employees had a difficult time grasping the software.  As a result, Plaintiff recommended that the client's "go live" date be delayed so Plaintiff could conduct additional on-site training with the client, which she then did.  ECF 60, Pl. Dep. 71:12-74:14.

**STATEMENT NO. 22:**

Greene can recall only one instance in which a client requested additional on-site training—the City of Coppell, Texas—and when that occurred she directed the customer to her project manager. Exhibit 1, ¶22.

US_ACTIVE-153384417.2

**RESPONSE TO STATEMENT NO. 22:**

Tyler objects to Statement No. 22 based on relevance.  Whether or not Plaintiff could not recall multiple instances does not mean that a client did not request additional on-site training on more than one occasion and that it occurred as part of Plaintiff's job duties.  Subject to the foregoing and without waiving the same, disputed.  As discussed in Tyler's response Statement No. 21, Plaintiff testified at her deposition about an instance where she recommended a client conduct additional training and then Plaintiff provided additional on-site training.  ECF 60, Pl. Dep. 71:12-74:14.

**STATEMENT NO. 23:**

Greene cannot recall a single instance of ever making a recommendation to a customer about purchasing timeclocks. To her knowledge, that would be the job of Tyler salespeople and not implementation consultants. Exhibit 1, ¶23.

**RESPONSE TO STATEMENT NO. 23:**

Tyler objects based on relevance.  Whether or not Plaintiff can recall whether she recommended that a customer purchase timeclocks is irrelevant to whether or not Plaintiff performed work related to Tyler's clients' business operations or whether she exercised discretion and independent judgment.

US_ACTIVE-153384417.2

**STATEMENT NO. 24:**

Greene never made any recommendations to customers about making any changes to their payroll practices. Exhibit 1, ¶24.

**RESPONSE TO STATEMENT NO. 24:**

Tyler objects to the phrase "payroll practices" as vague and ambiguous. Subject to the foregoing objection and without waiving the same, Tyler disputes Statement No. 24.  The video training that Plaintiff submitted in support of her motion for summary judgment demonstrates that Plaintiff made recommendations to Tyler's clients regarding how they should use the ExecuTime software as part of their payroll practices.  *See* ECF 57-3, Remote Timeclock Training Video. Moreover, Plaintiff had to understand clients' payroll practices to know how to align those practices with the configuration of the ExecuTime software and the client's use of the ExecuTime software.  *See* ECF 60, Pl. Dep. 83:21-85:10.

**STATEMENT NO. 25:**

Greene never made any recommendations to customers on how to manage their information databases and Greene did not analyze or inspect ExecuTime software for quality issues. Exhibit 1, ¶25.

US_ACTIVE-153384417.2

**RESPONSE TO STATEMENT NO. 25:**

Tyler objects to the phrases "manage their information databases," "analyze or inspect," and "quality issues" as vague and ambiguous.  Subject to the foregoing objection and without waiving the same, Tyler disputes Statement No. 24.  The video training that Plaintiff submitted in support of her motion for summary judgment demonstrates that Plaintiff made recommendations to Tyler's clients regarding how they should use the ExecuTime software, which used Tyler's clients' information databases.  *See* ECF 57-3, Remote Timeclock Training Video.  In addition, Plaintiff testified that when she performed troubleshooting, she would work with a client to identify the nature of the issue, including whether or not it involved a software defect, a training issue, or a technical issue.  ECF 60, Pl. Dep. 135:5-136:13.  Moreover, Plaintiff had to understand clients' payroll practices to know how to align those practices with the configuration of the ExecuTime software and the client's use of the ExecuTime software.  *See* ECF 60, Pl. Dep. 83:21-85:10.

**STATEMENT NO. 26:**

Greene showed Tyler's customers how to create the files in ExecuTime that they would need to then import into their payroll database. Exhibit 1, ¶26.

**RESPONSE TO STATEMENT NO. 26:**

Undisputed.

17

**STATEMENT NO. 27:**

But it was the customer's payroll vendor—sometimes another Tyler department, and sometimes not—who would show the customer how to do the actual importing and set up. Exhibit 1, ¶27.

**RESPONSE TO STATEMENT NO. 27:**

Tyler objects to this statement as irrelevant. The job duties of other Tyler employees or third parties are irrelevant to whether or not Plaintiff exercised discretion and independent judgment, and whether Plaintiff performed duties related to the business operations of Tyler's clients.

**STATEMENT NO. 28:**

During training sessions, Greene would use "dummy" information (e.g., names like "Jeff Hourly" and "Sally Supervisor") to show the customers' employees how various types of information could be inputted into the ExecuTime software, and how to access its various functionalities. That means, essentially, that Greene would explain how to change the "settings" on the software so that it would do what the customer needed. Exhibit 1, ¶ 28.

**RESPONSE TO STATEMENT NO. 28:**

Partially disputed. Tyler does not dispute that Plaintiff would use template examples to show customers how to input information into the software and how to

18

access the software's various functionalities.  Tyler disputes that Plaintiff's training duties were limited to explaining how to change settings on the software.  As Plaintiff testified at her deposition, she would also often assist with troubleshooting issues identified by a client during a training.   ECF 60, Pl. Dep. 82:3-7, 83:2-12, 105:17-21.  Plaintiff also testified that she would pose questions to certain attendees during trainings.  *Id.* at 125:18-25.   In addition, during the video training that Plaintiff submitted as evidence in support of her motion for summary judgment, Plaintiff answered several questions from the client regarding software features, including whether a certain feature was available or if Tyler could customize the software for the client's needs.  Plaintiff would talk through the issues with the client and if she was not able to answer the questions, Plaintiff promised to conduct additional research and report back to the client.  *See* ECF 57-3, Remote Timeclock Training Video.

## STATEMENT NO. 29:

Which functionalities the employees needed to understand how to access and use was based on specifications determined before Greene became involved in the implementation process. Exhibit 1, ¶29.

US_ACTIVE-153384417.2

**RESPONSE TO STATEMENT NO. 29:**

Disputed.  Plaintiff testified at her deposition that clients would relay requests for certain functionalities after Plaintiff conducted client training and that the clients would communicate their decisions to her.  ECF 60, Pl. Dep. 83:21-85:10.

**STATEMENT NO. 30:**

The video of a Hendersonville, TN, training session that was attached as an exhibit to Greene's Motion for Summary Judgment is representative of a typical remote timeclock training session that she performed throughout her employment as an implementation consultant. Exhibit 1, ¶30.

**RESPONSE TO STATEMENT NO. 30:**

Partially disputed.  Tyler does not dispute that Plaintiff attached a video of her performing certain of her job duties as an implementation consultant, but does not agree that the depiction is necessarily representative of every training Plaintiff provided to Tyler's clients.  As Plaintiff testified, the trainings varied in content and form, and certain trainings were remote versus in-person and involved different users (e.g., power users, end users).  ECF 60, Pl. Dep. 80:19–22, 123:19–124:3.   In addition, Plaintiff testified that each training contained a unique question and answer portion.  *Id*. at 125:18–126:10.

US_ACTIVE-153384417.2

**STATEMENT NO. 31:**

Neither Tyler's current general counsel nor its current CEO (and former general counsel) were able to identify any concrete information about the information that Tyler provided to Mr. McKeeby, the nature of his investigation, or the substance of his advice, other than that he said the implementation consultants were exempt. Dkt. 35 (30(b)(6) Deposition of Abby Diaz) at 17:24 to 18:4, 35:12–22; Dkt. 48 (Deposition of Lynn Moore) at 16:10 to 22:21. Neither could identify any specific documents memorializing or even relating to McKeeby's advice or investigation.  Dkt. 35 at 19:19-24; Dkt. 48 at 14:24 to 16:9.

**RESPONSE TO STATEMENT NO. 31:**

Disputed.  Both Mr. Moore and Ms. Diaz identified information relating to the advice Mr. McKeeby provided regarding the classification of the implementation consultant position.  ECF 48, Moore Dep. 10:18-22 ("We talked specifically about the case.  We talked specifically about the exemption and non-exemption.  We talked specifically about our classifications within Tyler in that context."); ECF 35, Diaz Dep. 16:3-24 (discussing the team that investigated the exemption issue), 17:17-23 (discussing actions taken to investigate the exemption issue); 18:11-20 (identifying three different areas of information that were provided and discussed as part of the investigation into the exemption issue).

US_ACTIVE-153384417.2

Respectfully submitted this 20th day of May, 2020.

**DENTONS US LLP**

*/s/ Paulo B. McKeeby*
R. Daniel Beale
Georgia Bar No. 043880
dan.beale@dentons.com
Maxwell R. Jones
Georgia Bar No. 451289
max.jones@dentons.com

303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308
Telephone: +1.404.527.4000
Facsimile: +1.404.527.4198

**REED SMITH LLP**

Paulo B. McKeeby
Texas Bar No. 00784571
pmckeeby@reedsmith.com
Amanda E. Brown
Texas Bar No. 24087839
aebrown@reedsmith.com

2501 N. Harwood St., Suite 1700
Dallas, TX 75201
Telephone: +1.469.680.4200
Facsimile: +1.469.680.4299

**COUNSEL FOR DEFENDANT**

22

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 20, 2020, I filed a copy of the foregoing document using the Court's CM/ECF system, which will send a Notice of Electronic Filing to all registered attorneys.


*/s/ Paulo B. McKeeby*
Paulo B. McKeeby