The following is the PDF of an official transcript. Official transcripts may only be filed in CM/ECF by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days. You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

UNITED STATES DISTRICT COURT
CERTIFIED OFFICIAL TRANSCRIPT

1           IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF GEORGIA
2                    ATLANTA DIVISION

3    SUZANNE GREENE,                    :
                                        :
4            PLAINTIFF,                 :
                                        :
5    vs.                                :   DOCKET NUMBER
                                        :   1:19-CV-1338-AT
6    TYLER TECHNOLOGIES, INC.,          :
                                        :
7            DEFENDANT.                 :

8

9        **TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS**

10         **BEFORE THE HONORABLE AMY TOTENBERG**

11            **UNITED STATES DISTRICT JUDGE**

12               **OCTOBER 08, 2019**

13                  **4:36 P.M.**

14

15

16

17

18

19

20    *MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED*

21               *TRANSCRIPT PRODUCED BY:*

22

    *OFFICIAL COURT REPORTER:*        *SHANNON R. WELCH, RMR, CRR*
23                                    *2394 UNITED STATES COURTHOUSE*
                                      *75 TED TURNER DRIVE, SOUTHWEST*
24                                    *ATLANTA, GEORGIA  30303*
                                      *(404) 215-1383*
25

```
 1              A P P E A R A N C E S   O F   C O U N S E L

 2

 3   FOR THE PLAINTIFF:

 4
         MATTHEW W. HERRINGTON
 5       CHARLES BRIDGERS
         DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN
 6

 7   FOR THE DEFENDANT:

 8

 9       PAULO B. MCKEEBY
         REEDSMITH
10
         ROBERT DANIEL BEALE
11       DENTONS US LLP - GA

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
CERTIFIED OFFICIAL TRANSCRIPT

**P R O C E E D I N G S**

**(Atlanta, Fulton County, Georgia; October 8, 2019.)**

COURTROOM DEPUTY CLERK:  Okay.  Do we have representatives from both sides on now?

MR. HERRINGTON:  We do.

COURTROOM DEPUTY CLERK:  All right.  Excellent.

This is the teleconference in Greene vs. Tyler Technologies, Civil Action Number 19-CV-1338.

We are taking this down with a court reporter.  So if you would please identify yourself by name before you speak.

Beginning with plaintiff, would counsel identify themself for the record.

MR. HERRINGTON:  This is Matthew Herrington for Plaintiff Greene.  With me is Charles Bridgers.  He is not counsel of record on the case.

COURTROOM DEPUTY CLERK:  Thank you.

Defendants?

MR. McKEEBY:  This is Paulo McKeeby for Defendant Tyler.  And I'm here with Dan Beale, local counsel in the Atlanta office of Dentons law firm.

COURTROOM DEPUTY CLERK:  Okay.  Thank you very much.

Judge?

THE COURT:  Okay.  Good afternoon.

All right.  Well, we've got two different discovery statements as to disputes.  So we'll just walk ourselves

1   through them.

2          And the depositions are beginning tomorrow; correct?

3          MR. McKEEBY:  Correct.

4          THE COURT:  All right.  So the first issue in

5   Document 29 is one relating to the deposition of Mr. McKeeby

6   himself.

7          And as I understand it, the defendant is objecting to

8   the deposition as a whole; is that correct?

9          MR. McKEEBY:  That is correct, Your Honor.

10         THE COURT:  All right.  And the defendant has

11   suggested there were alternative means of getting this

12   information as to reliance on advice of counsel as a part of

13   the good faith defense.  And one of the individuals it

14   suggests -- has two different suggestions, whether the 30(b)(6)

15   corporate representative or the general counsel for the

16   company.  I don't know if those are one and the same or not.

17         MR. McKEEBY:  Your Honor, it is actually the general

18   counsel -- the current general counsel has been identified as

19   our corporate representative or I have identified him as our

20   corporate representative.

21         THE COURT:  You are going to have to speak a lot more

22   slowly because --

23         COURT REPORTER:  I don't know who is speaking.

24         THE COURT:  And you are going to have to identify who

25   is speaking so that the court reporter can put your name down.

1            MR. McKEEBY:  I'm sorry.  This is Mr. McKeeby.

2            And we have identified as a potential -- well, our

3    corporate representative on that topic to be current general

4    counsel to testify about the advice that I have provided or the

5    company's recollection as to the advice I have provided over

6    the years.

7            It was actually primarily -- that advice was

8    primarily provided to the previous general counsel who is still

9    with the company who would be a fact witness who could also be

10   deposed if that is counsel for plaintiff's preference.

11           But we're prepared tomorrow to put our general

12   counsel up as our corporate representative on that topic.

13           THE COURT:  And he is being deposed first as the

14   corporate representative?

15           MR. McKEEBY:  She is being deposed.

16           THE COURT:  She is.

17           MR. McKEEBY:  Correct.  We haven't really discussed

18   an order with plaintiff's counsel.  We are producing another

19   corporate representative to testify about other topics as to

20   plaintiff's job duties and other matters.  So there will be two

21   witnesses produced.

22           My thought was to produce the former witness first

23   and then the general counsel at the -- after that deposition.

24   But I'm flexible on that.

25           THE COURT:  When did the general counsel become --

1    take that position?

2           MR. McKEEBY:  I would say she has been general

3    counsel for probably about five years.

4           THE COURT:  Okay.  And your advice though was

5    principally given to the prior -- the prior general counsel?

6           MR. McKEEBY:  That is correct.

7           THE COURT:  And --

8           MR. McKEEBY:  Who is --

9           THE COURT:  -- what function does that individual

10   play now?

11          MR. McKEEBY:  He is the CEO.

12          THE COURT:  And did you ever give your advice in

13   writing?

14          MR. McKEEBY:  No.  I have looked -- or at least I

15   don't think so.  I have looked at my files.  I recently changed

16   law firms.  And I have gone through and looked at the files

17   that were sent over on previous litigation and have not

18   identified any email communications or memorandums where I

19   provided advice regarding this issue.

20          So I'm confident that that -- I have also asked the

21   client if he has any recollection -- the now CEO, who I

22   mentioned, if he has any recollection of any memorandum or

23   email memorandums or anything like that on this issue.  And he

24   does not.  And my review of the files that were sent over

25   confirms that.

1          THE COURT:  And did the current general counsel look

2    through the company's files?

3          MR. McKEEBY:  I beg your pardon?

4          THE COURT:  Did the current general counsel review

5    the company's files to see if there was any such advice?

6          MR. McKEEBY:  I'm pretty sure the answer is yes.  I

7    have to be a little bit equivocal because I know she did talk

8    to other HR individuals to see if they had any documentation.

9    So she did perform that exercise.

10         I don't know that she looked at her own files.  But I

11   can tell you that I am very confident had there been anything

12   like that it would have come from me and I would know about

13   that.

14         THE COURT:  Well, I'm not in any way in a position to

15   dispute what you are saying.  But being a busy person, you

16   know, you can -- it is hard necessarily to remember every piece

17   of advice you have ever given in writing.

18         I certainly don't.  I don't remember the orders I

19   have issued at points.

20         So I think that is a stretch.  But -- and I don't --

21   especially when you have changed law firms, in fact.

22         So let me find out from Mr. Herrington why would it

23   not be sufficient at least at this juncture for you to be able

24   to take the deposition of the current general counsel and the

25   former general counsel both?

1          MR. HERRINGTON:  Well, Your Honor, to start with

2     simply as a general principle, a rule that you can't depose a

3     party's lawyer about advice you got from them and basically you

4     have to depend on the parties' recollection of the advice that

5     under the good faith defenses I think is not a tenable rule.

6     It is just in the abstract subject to abuse.  But -- and I'm

7     certainly not making any accusations here.

8          THE COURT:  All right.  Let me just say to you though

9     I understand your point of view.  But on the other hand, you

10    know, it would seem to me if the client doesn't remember much

11    about it, it is hardly much of a defense either.  If they

12    haven't really relied on it and they can't tell you anything

13    about it, then why do I -- why do you -- I'm not sure it is

14    much of a defense anyway.

15         MR. HERRINGTON:  That is true, Your Honor.  I simply

16    can't take it for granted that -- you know, I would like to

17    have good faith knocked out on summary judgment.  And I need to

18    make sure I get enough evidence to guarantee that I can do

19    that.

20         And just as an example, I deposed counsel in an FLSA

21    case on a good faith defense.  It was previous counsel.  But

22    still --

23         THE COURT:  In this case?

24         MR. HERRINGTON:  No.  No.  In a related -- well,

25    another FLSA case in this district earlier this summer.  It is

1    on summary judgment before Judge Brown now.

2          The version of the advice given by the CEO of that

3    company and the actual lawyer, a lawyer at FordHarrison --

4    their versions of the advice given were radically, radically

5    different.

6          You know, here there is no writing to confirm any of

7    this.  Even if we assume everyone is operating in good faith,

8    recollections may be different.  And there is also the fact

9    that this is an affirmative defense.  And not only have they

10   raised good faith as an affirmative defense, they are

11   explicitly relying on Mr. McKeeby's advice as an affirmative

12   defense.  And they knew that he was a potential fact witness

13   when the case was filed and when he undertook this

14   representation.

15         And under these circumstances, I just can't see how

16   it could possibly be fair to plaintiff to not -- not put him on

17   the spot and ask him what did you tell these people that they

18   could do or not do.

19         THE COURT:  Well, let me ask counsel:  Why did you

20   put yourself in the position of being a potential witness here?

21   I mean, you have -- it is a large law firm.  Lots of people

22   capable of representing the defendant here.

23         Hasn't it created the very conflict that you are

24   concerned about?

25         MR. McKEEBY:  I beg your pardon?

1          THE COURT:  Hasn't this created the very conflict you

2     are concerned about?

3          MR. McKEEBY:  No, Your Honor.  Because I don't think

4     there is a conflict because I'm not a witness.  I don't intend

5     to testify.  And as I think Your Honor suggested, what is

6     relevant here is the good faith of the company, the good faith

7     of the client, and what they base their decision with respect

8     to classification of these individuals.

9          What my testimony about what I recall advising the

10    client ten years ago in a separate piece of litigation at the

11    end of the day isn't material to the client's good faith.  So

12    the fact that, you know, what I actually advised the client

13    isn't the issue.  It is what the client recalls and what the

14    client remembers and what the client based its decision to

15    maintain these folks in their current classification that is

16    relevant to good faith.

17         And you are right, Your Honor.  And if the

18    corporation and the corporate representative isn't able to

19    provide particularly compelling testimony, well, then that's

20    going to be to the detriment of our good faith defense either

21    at summary judgment or at trial.

22         But that doesn't necessitate a deposition of a

23    lawyer -- of the lawyer in the case when there's -- the

24    information is available through other sources.

25         MR. HERRINGTON:  Your Honor, this is Matthew

1   Herrington.  Could I respond just one moment?

2       THE COURT:  Yes.

3       MR. HERRINGTON:  Briefly, Mr. McKeeby is wrong that

4   it is the defendant's understanding that is what is important.

5   Good faith under the FLSA has subjective and objective

6   components.  To do the analysis of whether they acted with

7   objective good faith requires understanding what information

8   was given to Mr. McKeeby, what information he based his

9   opinions on, whether it was complete or not, and then -- you

10  know, and then what was told to them and whether they

11  interpreted that in a reasonable manner.

12      But it absolutely does not just rely on what the

13  defendant subjectively understood.

14      THE COURT:  Well, I'm looking at Judge Brown's

15  decision again as we talk.  So just wait one moment.

16              **(There was a brief pause in the proceedings.)**

17      THE COURT:  I'm going to put a pin in the decision

18  and let me find out some more about some other matters.

19      All right.  So basically, Mr. McKeeby, you gave the

20  advice ten years ago you are saying?

21      MR. McKEEBY:  I think that is approximately right.

22  There was another lawsuit that counsel for plaintiff is aware

23  of and has raised to the Court's attention that was filed in

24  Texas and was settled, I think, in 2011.  And it was in the

25  context of that case where I provided the advice.

1      THE COURT:  All right.  And are you particularly

2  employment counsel for the firm?  Is that the way you have

3  served?

4      MR. McKEEBY:  Yes, Your Honor.

5      THE COURT:  Okay.  So let me just ask you:  What is

6  your response to the proper point, it seems to me, that is

7  raised by plaintiff's counsel as to the objective prong of the

8  good faith test?

9      MR. McKEEBY:  Well, I guess I don't -- I don't -- I

10  mean, I don't understand how it applies in this case.  I don't

11  understand the argument.  Because I mean, I guess the point is

12  that they have -- their position is that I have to have been

13  right about my advice.  I mean, that goes to the merits of the

14  case.

15      THE COURT:  No, I don't think it necessarily means

16  that at all.  It may mean you gave them one piece of advice,

17  and they chose to hear what they wanted to hear.  It could be

18  that instead.  So they rely on -- they are really actually not

19  relying on advice of counsel.  I don't know.

20      I mean, the point is that we're having to find out

21  solely about this reliance on advice of counsel through your

22  client.  And now we find out it is supposedly ten years ago but

23  now they are perpetuating the advice in their own mind five

24  years or -- in the last five years or last two or three years.

25  And they are saying, but I'm relying on advice of counsel, and

1   it is an affirmative defense, and we don't really know what

2   they are relying on at that point when it is that old.

3            MR. McKEEBY:  Well, I think what they would be

4   relying on is previous communications that I had with them on

5   this issue and their recollection of what I said about the

6   classification of these individuals as exempt.

7            And yes, that happened some time ago.  But that is

8   the truth.  And that is in part, again -- that is not the

9   exclusive basis for the good faith defense.  But that is in

10  part what truthful testimony would be as to why these folks are

11  in exempt classification.

12           But I think all the witness would say in deposition

13  or at trial is, look, this is an issue that has come up before

14  and it came up before in the context of this lawsuit and the

15  advice that we received from outside counsel was that these

16  people were properly classified.

17           I don't think -- I don't think either the client or

18  myself could be more specific than that, quite frankly.

19           THE COURT:  Well, wouldn't that be -- if that is all

20  that any of you have to say, wouldn't that be then a defense in

21  every FLSA case on good faith?  If all we just had to say was,

22  oh, counsel advised me to do this, without being able to

23  explore it?

24           What is the meaning of the Eleventh Circuit's

25  decision in *Cox* if you can't -- if basically all you get to do

1    is rely on advice of counsel as an affirmative defense and no

2    one gets to actually meaningfully explore what that was all

3    about?

4         MR. McKEEBY:  Well, I mean, first of all, the advice

5    has to actually have occurred.  You have to be truthful about

6    it.  And, second, here we're offering them the ability to

7    adequately explore that advice through the deposition of a

8    corporate representative on the topic, who happens to be the

9    general counsel.  Or if they prefer, they can depose the

10   current CEO, who was the individual previously as general

11   counsel who I provided the advice.

12        I mean, again, the case law contemplates counsel's

13   deposition only in the context of discovery that is not

14   available from other sources.  And here there are two other

15   potential sources for the evidence.  So there is simply no need

16   to take my deposition.

17        This notion that I'm somehow a witness in the case

18   and should be subject to disqualification, which, quite

19   frankly, I think what this is really all about is just not --

20   it is just not accurate.  I'm not going to be a witness.  I'm

21   not going to take the stand.

22        And ultimately the advice -- the advice that I gave

23   is -- my recollection of that advice is not relevant.  We're

24   not disputing that there -- that by asserting good faith and by

25   basing good faith in part on my advice that we're not disputing

1    that there is a limited waiver of the attorney-client

2    privilege.

3           So he is going to get to explore those communications

4    unfettered with, again, either the corporate representative or

5    the previous general counsel or both if he chooses.  And he

6    won't be met with objections as in some of the case law that he

7    cited to the Court about attorney-client privilege.  I don't

8    intend to object as to questions relating to my advice to the

9    client about the classification of this position.

10          THE COURT:  All right.  Well, I would just simply say

11   that the *Floyd vs. SunTrust Bank's* case that the defendant

12   cited doesn't seem exactly on point because really all that was

13   at issue there was the authentication -- some authentication

14   issues.  So it really was pretty obvious the others could

15   authenticate it.

16          But at the same time, I'm not sure on this record at

17   this juncture that I know why plaintiff is contending that you

18   are -- that you are going to be prejudiced when you haven't

19   taken the deposition yet of the general counsel or the former

20   general counsel.

21          And you may well be.  But I don't know that I know

22   that until you have taken their depositions.

23          MR. HERRINGTON:  Your Honor, this is Mr. Herrington.

24   If I hadn't -- if I had -- you know, in the *Hurst vs.*

25   *Youngelson* case that I handled this summer and just filed a

1    summary judgment motion on it on a day or two ago -- if I had

2    taken the deposition of the CEO -- and he gave me lots of

3    advice.  He couldn't stop talking actually.  But if I hadn't

4    then moved on to depose the attorney, we would have not had a

5    clear picture of the case at all.

6              THE COURT:  All right.

7              MR. HERRINGTON:  And I -- nothing that an officer of

8    the company says is going to convince me that, oh, well, I

9    don't need to bother checking with Mr. McKeeby to see if they

10   are accurate.

11             THE COURT:  Well, it may not convince you, but it may

12   convince me, frankly.

13             I'm going to say that, you know, it is -- two things.

14   One, that Mr. Herrington's notion that he's -- that it won't

15   convince him, I think I can't completely accept that.  I mean,

16   you've got to look at the facts and see what you get.  And you

17   can move then -- if the facts are that you are not getting

18   straight answers or that you think that there is likely

19   conflict, you can raise that to my attention and I will

20   certainly consider allowing you at that point to take

21   Mr. McKeeby's deposition.

22             And as to Mr. McKeeby's statement that I'm not a

23   witness and I will not be a witness, I don't know that that is

24   true.  And you are going to have to consider that it is a

25   possibility you will be a witness.  I don't know that it is --

1    I can't promise you that that is not so either.

2            So yes, I will say that Mr. Herrington cannot proceed

3    with Mr. McKeeby's deposition tomorrow.  But you can -- I will

4    give you leave to file a motion and to show me based on actual

5    testimony why it is necessary.

6            But I would suggest you not just be headstrong and

7    say nothing will ever convince you.  We've had this

8    conversation, and that is not really acceptable, and it is

9    really not acceptable for Mr. McKeeby just to decide, well, I'm

10   not a witness and that is it.

11           And I'm not satisfied, frankly, with what I've been

12   told about the search that the company has done for any

13   information as to the actual advice.  And you are going to need

14   very possibly to do more of a search than what I heard about.

15   That is a lot of assumptions about the search, not anything

16   that was actually reflective of what precisely occurred.

17           I'm going to assume though that -- Mr. Herrington,

18   that you can fully explore that with the representatives that

19   you're going to be deposing in the next day.

20           All right.  So that is my resolution of that first

21   issue.

22           The next set of issues comes from the other

23   consolidated joint discovery statement, which is at Document

24   28.  I understand -- and this sort of goes to a number of these

25   different disputes.  I understand why the other litigation may

1  be relevant, the -- in the *Beall* case in Texas.  But I don't

2  understand why you need -- the plaintiff needs to know the

3  terms of settlement.  I can understand why you want the

4  identities of the parties.

5       But why is it relevant what they -- how much money

6  that they may have won as -- obtained as a term of settlement?

7       MR. HERRINGTON:  Your Honor, this is Mr. Herrington.

8  Very simply, paying some go-away money, litigation costs, or

9  something, you know, really miniscule is not the same as paying

10  a multimillion dollar settlement.  And --

11       THE COURT:  Wait a second.  You know, there are

12  limited damages in FLSA cases.  So it is not like we're talking

13  about a case where there's endless possibilities of damages.

14  So I'm taking that into account.

15       And, of course, in a collective action, you know who

16  your -- who your potential -- who you're potentially paying off

17  too.

18       MR. HERRINGTON:  I'm sorry.  I didn't understand the

19  last part.

20       THE COURT:  Well, there are opt-ins in a collective

21  action; right?  It is not just simply a situation where you are

22  sending out a large -- that you are sending out a huge sum of

23  money to be distributed by the plaintiff's representative as

24  they see fit; right?

25       MR. HERRINGTON:  Sure.  Sure.  It wouldn't be the

1   lump sum number that is actually -- that is actually relevant.

2   It would be, you know, each individual value or something close

3   to that.

4          THE COURT:  But why does that matter?  Why is that --

5   I understand why you would have -- why it is relevant to know

6   anyone who they settled with in this FLSA case and be able to

7   understand what jobs they have.  I can understand that because

8   it may be relevant to the issues in this case and also good

9   faith as well.

10         But why -- why does the money make a difference?  Why

11  is it admissible even?

12         MR. HERRINGTON:  Well, their perception that they

13  were in a legally perilous position claiming the exemption in

14  that case.

15         THE COURT:  Well, I don't know how I would tell the

16  difference between or a jury would tell the difference between

17  2000 and 4000 or 2000 and 20,000.  All these sums mean nothing.

18         Well, I'm not going to allow you to get the

19  settlement terms, at least at this time.  I don't know that

20  that makes any difference.  But I do think -- I mean, that is

21  sort of -- it just doesn't seem to me to show what you are

22  saying it is.

23         Maybe at a later time.  Again, you can renew it.  And

24  there is something -- some information you will be able to

25  bring to my attention that would make it more likely.

1      But I think the fact of settlement is potentially

2  relevant in terms of their knowledge and the nature of the --

3  nature of the claims that were asserted.  And even though the

4  defendant claims that none of -- the previous litigation is not

5  relevant, I think it is if it is -- since these are all claims.

6  And it appears that some of the individuals at least had

7  comparable positions with the company.

8      So with respect to Topic Designation 1 which is -- on

9  Page 1 of your Document 28, I will not require them to identify

10 the terms of settlement but I will require them to identify

11 every individual who they settled with and what the person's

12 position was that was -- the basis of the claims.

13     MR. McKEEBY:  Understood.

14     THE COURT:  That brings us to Topic Number 2 that is

15 on Page 4.

16     Is somebody trying to speak?  No.

17     The first part of it deals with the percentage of

18 plaintiff's work time devoted to FLSA exempt versus nonexempt

19 duties.  It seems to be perfectly relevant.  It may be that

20 defendant has objections.  You can reserve those objections.

21 But I think it is relevant.

22     MR. McKEEBY:  Your Honor, can I be heard briefly on

23 that?

24     THE COURT:  Who is talking?

25     MR. McKEEBY:  This Mr. McKeeby.  Sorry.

1          THE COURT:  Yes.

2          MR. McKEEBY:  The objection is the phrasing of the

3    question as to what is an exempt versus a nonexempt duty.  I

4    mean, I don't think it is fair to ask a lay witness, you know,

5    identify all of the duties that are nonexempt versus exempt.  I

6    think that it is fair to ask what particular duties involve the

7    exercise of discretion and independent judgment.

8          But to ask a lay witness essentially a legal question

9    as to what job duties qualify as exempt under the FLSA --

10   because it is more nuanced than simply a matter of having

11   discretion and judgment.  But that is certainly a component.

12         But I think that this may be one where the objection

13   is primarily geared towards the phrasing of the designation.  I

14   don't have any problem with producing a witness to talk very

15   specifically about the plaintiff's job duties.

16         But to ask her essentially a legal question, tell us

17   what is exempt and what is nonexempt, I don't think that is a

18   fair way to phrase the question.

19         THE COURT:  Mr. Herrington, was that your intention,

20   that you were going to ask what was exempt versus nonexempt, or

21   were you going to be asking about the duties and

22   characteristics of the duties?

23         MR. HERRINGTON:  Your Honor, I'm trying to ascertain

24   a complete list of what duties.  They have taken the position

25   constitute the factual basis for the exemption and then go

1    through that list and ask how much time the client is spending

2    on each of those duties to see what -- you know, assuming they

3    are correct, which will be determined later, as to each of

4    those duties, I need to know how much time she's actually

5    spending on them in her job.

6              I also just today found some case law that is

7    directly on point.  It is an unpublished decision from Kansas

8    in 2016.  But it is the only actual legal authority I can find

9    on point.

10             Defendant objects -- the case is *Waters vs. Union*

11   *Pacific Railroad*.  And it is 2016 U.S. Dist. LEXIS 114656.  And

12   the defendant objects Rule 30(b)(6) depositions are designed to

13   cover fact -- discover facts, not contentions or legal

14   theories.  Plaintiff responds that a deposing party is not

15   precluded from inquiring as to the opposing party's legal

16   positions.  Plaintiff is correct citing two cases, also

17   unpublished decisions, from the Northern District Court of

18   Illinois.

19             THE COURT:  All right.  I get the point.  But I

20   guess -- let's just --

21             All right.  Let me truncate this.  Are you expecting

22   to ask this question of exempt versus nonexempt duties to

23   people beyond the general counsel or somebody in human

24   resources?

25             MR. HERRINGTON:  Whoever they put up, Your Honor.

```
1              THE COURT:  Well, you know who they are putting up as
2    their corporate representative, don't you?
3              MR. HERRINGTON:  Yes.
4              THE COURT:  All right.  Isn't that the corporate
5    general counsel?
6              MR. HERRINGTON:  There is one who is general counsel
7    and one who is not is my understanding.
8              THE COURT:  And who is the other person?
9              MR. HERRINGTON:  A supervisor, I believe.
10             THE COURT:  Okay.
11             MR. McKEEBY:  Yes.  This is Mr. McKeeby.  So it is
12   the plaintiff's immediate supervisor, who is not a lawyer and,
13   frankly, not an HR person.
14             And I think if the question is phrased what is an
15   exempt duty under the FLSA, she is not going to know the
16   answer.  And I don't think I can prepare her to know the
17   answer.
18             If you ask what are her duties and what percentage of
19   time does she spend on each of those duties and which of those
20   duties require the utilization of judgment and discretion, she
21   is going to be able to answer those questions that way.
22             THE COURT:  Okay.  Well --
23             MR. HERRINGTON:  This is Mr. Herrington.
24             THE COURT:  Yes.
25             MR. HERRINGTON:  We simply want to frame our
```

1    questions in terms of the position the company is taking in

2    this litigation.

3            THE COURT:  Well, you may want to do what you --

4    well, let me say:  I think you can do that for the general

5    counsel, and I think you could do that for the director of

6    human resources.  But I don't think you can just do that for an

7    ordinary supervisor.

8            Instead, you are going to need to do it closer to the

9    way that Mr. McKeeby has said.  Otherwise, you are not going to

10   have useful testimony in the end.  And I'm just going to end up

11   not having something in front of me that is useful at summary

12   judgment or at -- or you are not going to have something useful

13   at trial, if you actually end up -- if you ended up going to

14   trial.  So that is the ruling.

15           If you end up with anyone else and you can't agree on

16   it, you tell me what their position is and what their knowledge

17   base is and I'll adjust it accordingly.  But I think it is

18   perfectly proper to ask a corporate representative because this

19   is their position, you've taken a position as a corporation

20   that this position is an exempt position.  And so it is fair to

21   say that they should be prepared to be able to identify the

22   duties in terms of that, what made you decide that it was

23   exempt and the percentage of duties and the nature of the

24   duties.

25           MR. HERRINGTON:  Thank you, Your Honor.

1          THE COURT:  So now we're on to Topic 3, the content

2    and circumstances of creation of all job descriptions for

3    implementation consultant or project manager positions that

4    ExecuTime and/or the company created, published, or transmitted

5    to third parties at any time from January 2016 through March of

6    2019.

7          I mean, the defendant seems to object because it says

8    it is overly broad in terms of the extent it seeks testimony

9    regarding job descriptions other than those which applied to

10   plaintiff.

11         But it seems to be dealing with two particular job

12   positions that may have some overlap.  So why is it -- it

13   doesn't seem so onerous to me.

14         Why are you telling me it is so onerous?

15         MR. McKEEBY:  So, Your Honor, you need a little bit

16   of context.  Tyler has kind of grown over the years.

17         THE COURT:  I'm sorry.  This is again Mr. McKeeby?

18         MR. McKEEBY:  Correct.  Sorry.

19         Tyler has grown over the years by acquiring companies

20   throughout the country that are in this space, and so they have

21   many separate, I guess, technically operating divisions.  They

22   are not separate entities.  They are separate corporations.

23   But they basically let them stand alone and continue to run

24   their businesses as they did.

25         I suspect that many, if not most, of those divisions

1  that utilize implementation consultants have their own

2  stand-alone job description that they may have used at some

3  point during the period between January 2016 and March of 2019.

4  And none of those job descriptions had anything to do with the

5  plaintiff.

6           Are the positions similar?  Perhaps.  But they are

7  not the plaintiff's job descriptions.  We're certainly willing

8  to produce a corporate representative to testify to all job

9  descriptions that related to plaintiff or her position.

10          But if there is a separate business line that is in

11  Seattle, Washington, that has their own job description for

12  people that are performing similar functions, that is not

13  relevant to the case.  And therefore we shouldn't have to

14  prepare a corporate representative to testify as to the

15  circumstances and creation of that job description.

16          It has no relevance, and it is overbroad in the sense

17  that the scope is outside of a job description that would be

18  applicable to the plaintiff.

19          MR. HERRINGTON:  Your Honor, Matthew Herrington.

20  We've asked Mr. McKeeby to have the defendant confirm if the

21  advice he gave was related solely to the type of implementation

22  consultant that our client worked as.  And it was not.  He

23  confirmed that.  They did not receive advice from Mr. McKeeby

24  apparently about a single type of implementation consultant.

25          My understanding is that the difference between

1    different implementation consultants is simply what type of

2    software they are working with rather than the scope of their

3    duties with respect to the company's customers.  I'm not

4    certain of that.  But that is my understanding.

5           And if they are receiving advice about implementation

6    consultants generally and not about one specific type of

7    implementation consultant based on one specific type of

8    software, then we need to ask about the job duties of all --

9    you know, of all the implementation consultants.

10          If they could get advice about implementation

11   consultants generally, then it is appropriate to ask about the

12   job duties of implementation consultants generally.

13          MR. McKEEBY:  Your Honor, this is Mr. McKeeby.  There

14   is a companywide job description for the position of

15   implementation consultant that has been produced in this case

16   and which our witness will be able to testify.

17          What I don't know is if there are separate one-off

18   job descriptions in some of these other divisions in other

19   parts of the country.  That is what I have not tracked down and

20   don't feel like that I should have to because it is not

21   particularly relevant to the plaintiff or her position.

22          Those job descriptions, to the extent they are out

23   there -- and I suspect that they would be -- did not apply to

24   the plaintiff.  And they don't relate -- the actual job

25   descriptions themselves aren't relevant to a good faith defense

1    based on advice I may or may not have given.

2        I just don't understand the connection there.  And in

3    this case, what should be relevant are the job descriptions of

4    what is relevant, the job descriptions that applied to the

5    plaintiff.  And beyond what should be required to have me track

6    down however many job descriptions that are out there and then

7    prepare a corporate representative to testify about the content

8    of those descriptions and the circumstances of their creation,

9    that is just frankly too much to ask for in a corporate

10   representative deposition.

11       THE COURT:  Well, is the corporate representative

12   going to know whether you considered all of those different job

13   descriptions when you determined that it was -- the job as a

14   whole was exempt?

15       MR. McKEEBY:  The corporate representative could know

16   that, yes --

17       THE COURT:  All right.

18       MR. McKEEBY:  -- because I could tell them.

19       THE COURT:  Well --

20       MR. McKEEBY:  The answer would be no.  But I --

21       MR. HERRINGTON:  Your Honor --

22       MR. McKEEBY:  -- I can have the corporate

23   representative prepared to testify on that topic.

24       MR. HERRINGTON:  Your Honor, this is Matthew

25   Herrington.  The company had not even acquired ExecuTime yet at

1   the time that Mr. McKeeby gave his advice, the type of software

2   that our client specifically worked on.  So if we limited it to

3   the job duties of plaintiff, then we can't even find out what

4   the job duties are of the people who he gave advice regarding.

5          THE COURT:  All right.

6          MR. HERRINGTON:  They have --

7          THE COURT:  All right.  All right.  I understand your

8   point.  I understand your point.  You don't have to keep on

9   going.

10          All right.  Any job that was a comparable job at the

11  time the advice was given, that job description has to be

12  provided.

13          MR. McKEEBY:  Okay, Your Honor.  A practical issue is

14  that I can certainly gather those documents.  I'm not going to

15  be able to do it prior to tomorrow.  So I guess I would like

16  some guidance and some -- as to what --

17          THE COURT:  Well, your representative -- your

18  corporate representative should be at least prepared to know

19  which -- which parts of the company had a comparable position

20  that would have been shared with you so that you could provide

21  this advice.

22          And if they -- if the plaintiff believes that he

23  needs an extra half an hour in order to -- later on to follow

24  up on that, you can do a phone deposition, a video deposition

25  of some sort in order for him to follow up on it.

1        MR. McKEEBY:  Okay.  I understand.

2        THE COURT:  All right.  The next one is under Roman

3   Numeral IV, the topic designation was the material terms of all

4   contracts between the company and any of its customers on whose

5   projects plaintiff performed any work.

6        So here is my question.  It appears that there were

7   approximately potentially 300 contracts at any time that the

8   plaintiff might have been servicing?

9        MR. McKEEBY:  Correct.  That is throughout her

10  career.

11       THE COURT:  And I'm sorry.  Who is speaking?  Who is

12  speaking again?

13       MR. HERRINGTON:  This is Matthew Herrington.  We

14  weren't even advised of that fact until the reply.

15       THE COURT:  So this is my question for you,

16  Mr. McKeeby:  Are you -- I don't know what is in these

17  contracts, and apparently the plaintiff does not either.  And I

18  can understand why the defendant is arguing they are not

19  relevant.  But at the same time, I can also well imagine that

20  some of the contracts or all of the contracts identified the

21  number of hours of services they are going to get -- that will

22  be provided to the client in training and support, that the

23  plaintiff might have been part of the -- one of the team

24  members providing.  And if she is on the team providing --

25  let's say it is General Motors as an example for the training

1    or some -- and there are three team members and she's one of

2    them.  Then it might have some relevance to the nature of her

3    work and what she was being -- what was the expectation as to

4    what she was doing.  But I don't know without knowing what is

5    in the contracts.

6                MR. McKEEBY:  Your Honor, this is Mr. McKeeby.

7    Again, we're talking about a corporate representative.  The

8    plaintiff has not even asked for the documents to be produced

9    in the case.

10               And what we're talking about here is preparing a

11   corporate representative to testify as to the material terms of

12   all contracts between the company and any of its customers on

13   whose projects plaintiff performed any work.

14               I'm not sure what I'm supposed to do to prepare a

15   corporate representative to testify to on that topic.  Do they

16   need to know the pricing of every one of those contracts?  Do

17   they need to know which suite of services that each client

18   purchased?

19               I'm just not sure what to do to prepare a corporate

20   representative to testify on that.  And that is why I think

21   that the question is -- as a topic designation is impermissibly

22   vague and potentially irrelevant.

23               THE COURT:  What are you --

24               MR. HERRINGTON:  Your Honor, this is --

25               THE COURT:  Yes.  What are you after, Mr. Herrington?

 1          MR. HERRINGTON:  I want to see the scope of the

 2    services that they were agreeing to provide -- to provide for

 3    their customers.  If -- you know, the administrative exemption

 4    depends on our client having been servicing the general

 5    business operations of -- of the company's customers.  If

 6    servicing the general business operations isn't within the

 7    scope of the contract, then that is a really good sign that our

 8    client was not involved in doing that exempt duty.

 9          And this is, you know, a can software program that

10    she's working on.  For all we know, every one of these 300

11    contracts is identical in the scope of the services provided.

12    We don't know that.

13          And we noted that in our response and didn't get a

14    reply about it in the reply, which makes me suspect that these

15    contracts may all be, you know, a template.  I don't know.

16          THE COURT:  I don't know that it proves your point

17    one way or the other though.

18          MR. McKEEBY:  Your Honor, this is Mr. McKeeby.  I

19    would be fine with allowing him to testify or rather question a

20    corporate representative about generally the types of contracts

21    that are out there.  They are not all the same, by the way.

22    But they fall into different categories.

23          And he can question the witness as to those

24    categories.  He can question the witness as to what generally

25    the contracts say.  But I just don't know what to do about a

1  request that a corporate representative memorize the, quote,

2  material terms, unquote, of every contract that she touched.

3  That I don't think I can -- I can do practically.  And I don't

4  think I should be required to do when I am not objecting to

5  questions generally about, hey, when Tyler contracts with its

6  clients, what do the contracts generally say?  What are the

7  payment terms?  And the witness will talk about what are those

8  different type of payment terms.

9          Here there are generally four types of contracts, and

10  here is what they say generally, without knowing particular

11  terms, which is what this topic designation's precise words ask

12  for.

13          THE COURT:  Well, Mr. McKeeby, let me ask you this:

14  What would be the problem with basically producing, without

15  names, five of the major types of contracts that you would have

16  used for some of the clients that the plaintiff would have

17  handled the work for?

18          MR. McKEEBY:  I don't have a problem with that.

19          THE COURT:  And then we could actually not -- you

20  don't have a problem with that.

21          MR. McKEEBY:  I don't have a problem with that.  I

22  don't have a problem with that.  Again, I don't know that that

23  can be done prior to 9:00 tomorrow morning.  But I don't have a

24  problem with that.

25          If we want to, you know, handle this issue similar to

1    the other one about reopening the deposition via telephone once

2    we have produced those five template contracts -- and these are

3    contracts, by the way, with government entities.  So I'm not

4    even sure there is a confidentiality issue.

5          But -- so I'm not sure that is the concern.  It is

6    just a matter of having to prepare a witness to be able to

7    testify as to each and every term.  So if we could do --

8          THE COURT:  Well, if you produce the five -- well, I

9    just don't -- it seems to me like this is not such a big issue.

10         MR. McKEEBY:  Neither do I.

11         THE COURT:  -- in terms of your being able to get

12   them there.  You know, he deposes the witness after lunch.  And

13   she gets to take a look at the five.  And she probably knows

14   what they are.

15         I mean, I've worked as a general counsel at one point

16   in my life.  And there is a basic template, as you said.  And

17   there's varieties of them.  But particularly for government

18   contracts, the government also has what it is going to sign and

19   not going to sign too.

20         MR. McKEEBY:  Okay.  This is Mr. McKeeby.  I'll make

21   inquiry into the feasibility of getting those contracts.  I

22   would much rather do it now than have to resume the deposition

23   myself.  So I intended to do that.  And so I will endeavor to

24   do so.

25         THE COURT:  All right.  Great.  I think that is

1  everything then.

2          Is there anything else that I missed?

3          MR. HERRINGTON:  Not from the plaintiff, Your Honor.

4          MR. McKEEBY:  Nor from defendant.

5          THE COURT:  All right.  Well, good luck tomorrow.

6  Thank you.

7          MR. HERRINGTON:  Thank you.

8          MR. McKEEBY:  Thank you, Your Honor.

9          THE COURT:  All right.  Take care.  Bye-bye.

10          **(The proceedings were thereby concluded at 5:25**

11          **P.M.)**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3    UNITED STATES OF AMERICA

 4    NORTHERN DISTRICT OF GEORGIA

 5

 6         I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

 7    the United States District Court, for the Northern District of

 8    Georgia, Atlanta Division, do hereby certify that the foregoing

 9    35 pages constitute a true transcript of proceedings had before

10    the said Court, held in the City of Atlanta, Georgia, in the

11    matter therein stated.

12         In testimony whereof, I hereunto set my hand on this, the

13    9th day of October, 2021.

14

15

16

17    _____
                     SHANNON R. WELCH, RMR, CRR
18                   OFFICIAL COURT REPORTER
                     UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25
```